**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Joint Administration Pending |
| Granite City Food & Brewery Ltd. | Case No. 19-43756 |
| Debtor. | Chapter 11 Cases |
| In re: | Joint Administration Pending |
| Granite City Restaurant Operations, Inc. | Case No. 19-43757 |
| Debtor. | Chapter 11 Cases |
| In re: | Joint Administration Pending |
| Granite City of Indiana, Inc. | Case No. 19-43758 |
| Debtor. | Chapter 11 Cases |
| In re: | Joint Administration Pending |
| Granite City of Maryland, Inc. | Case No. 19-43760 |
| Debtor. | Chapter 11 Cases |
| In re: | Joint Administration Pending |
| Granite City of Kansas Ltd. | Case No. 19-43759 |
| Debtor. | Chapter 11 Cases |

**NOTICE OF HEARING AND MOTION FOR AN EXPEDITED HEARING AND FOR AN ORDER (I) AUTHORIZING THE DEBTORS TO PAY PRE-PETITION WAGES, PAYROLL TAXES, AND EMPLOYEE BENEFITS; AND (II) AUTHORIZING PAYROLL PROVIDER AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH RELIEF**

12034004v6

TO:     THE PARTIES-IN-INTEREST AS SPECIFIED IN LOCAL RULE 9013-3.

1. The above-named Debtors ("Debtors"), through their undersigned attorneys, move the court for the relief requested below and give notice of hearing.

2. A hearing on this motion (the "Motion") will be held at 2:00 p.m. on Thursday, December 19, 2019, before the Honorable William J. Fisher, in Courtroom 2B, U.S. Courthouse, 316 North Robert Street, St. Paul, MN 55101.

3. Due to the request for expedited hearing, the Debtors will not object to the timeliness of any response that is filed and delivered to Debtors' counsel two (2) hours prior to the hearing. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4. This court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1. The petition commencing this case was filed on December 16, 2019 (the "Petition Date"). The case is now pending before this court.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This motion requests relief under 11 U.S.C. §§ 105(a), 363, 549, 1107 and 1108, and is filed pursuant to Local Rules 9013-1 through 9013-3. The Debtors seek an order authorizing the Debtors to pay pre-petition wages and related employee benefits and payroll taxes.

7. The Debtors, along with affiliated companies, own and operate Granite City and Cadillac Ranch restaurants in 13 states. The Debtors presently have approximately 2,200 employees.

8. Additional information about the Debtors' businesses and the events leading up

2

to the Petition Date can be found in the Declaration of Richard H. Lynch in Support of Chapter 11 Petitions and First Day Motions, filed on December 16, 2019.

9. On the Petition Date, the Debtors each filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' Chapter 11 cases. No creditors or other official committee has been appointed pursuant to Section 1102 of the Bankruptcy Code.

10. As of the Petition Date, the Debtors owed employees for unpaid gross wages, commissions, benefits, salaries, payroll taxes (including, but not limited to, employer matching), reimbursements, and 401(k) contributions (collectively, "Pre-Petition Wages"). Of this amount, the Debtors will owe approximately $159,651.12 for payroll taxes. The Debtors' payroll is paid in arrears. The payroll periods are every two weeks and conclude on the Tuesday one week prior to the payday. The payroll is made through direct deposit, checks and pay-cards (debit cards). The last payroll was paid on December 11, 2019 in the amount of approximately $2,082,145.35 in gross wages.[1] Debtors' employees have not been paid since December 11, 2019 (for services through December 3, 2019). The Debtors will only pay Pre-Petition Wages to or on behalf of any individual employee up to the $13,650.00 limit set forth in § 507(a)(4) of the Bankruptcy Code.[2]

11. The Debtors offer their employees various forms of compensation, including wages and salaries, as well as other benefits as described below, all of which are included in the

---

[1] With approximately 2,200 employees, this amount calculates to an average of $946.43 per employee.
[2] Only one employee has compensation that exceeds this amount: Richard H. Lynch, CEO. Mr. Lynch's gross compensation for a two-week pay period is $16,768.13. Mr. Lynch understands that the amount of prepetition wages he will be paid if this Motion is granted is $13,650.00. The next highest compensated employee is Nathan G. Hjelseth, the CFO, whose gross compensation for a two-week pay period is $9,621.61.

definition of Pre-Petition Wages:

    i.    <u>Wages and Salaries</u>.  The Debtors employ approximately 2,200 people in their operations.  Wage and salary payments are paid in arrears on a bi-weekly basis.  Employees were most recently paid on December 11, 2019, and the first post-petition payroll will be on December 24, 2019.  The Debtors estimate that they will owe their employees approximately $1,041,042.68 in the aggregate on account of Pre-Petition Wages and salaries.

    ii.    <u>Payroll Process</u>.  The Debtors use InfoSync for the purposes of administration and distribution of payroll ("Payroll Provider").  The Debtors provide wage and hour information to the Payroll Provider on a bi-weekly basis for calculation of net wages, taxes, and other withholdings.  The Debtors pay Payroll Provider in advance for services based on the prior months activity, which is then reconciled and additional amounts are paid or credited the next month.  Maintaining a functioning payroll process is imperative to the Debtors' operations.  The Debtors pay the Payroll Provider approximately $10,000.00 per month for its services.  The Debtors are current on such payments. Some amounts included in the next invoice will be on account of pre-petition services. To ensure continued service on this critical process, and timely payment of payroll, the Debtors seek authorization to pay any pre-petition amounts owed to the Payroll Provider.

    iii.    <u>Taxes, Withholdings, and Employee Funds</u>.  In the ordinary course of business, the Debtors' (or the Payroll Provider) withhold amounts from employee paychecks necessary to satisfy third-party requirements, including taxes, Social Security and Medicare; employee contributions toward benefit plans and other

4

benefits; and other deduction programs, including garnishment and child support or other similar orders. The Debtors' position is that such funds are not property of the bankruptcy estates, but are rather property of the Debtors' employees. Out of an abundance of caution, the Debtors request authorization to pay over to the appropriate third-party recipients of such funds (whether through the Debtors or the Payroll Provider) deducted on account of pre-petition obligations to employees, and to continue such practice in the ordinary course of business post-petition.

iv. <u>Insurance Plans and Related Programs</u>. The Debtors have established plans and policies to provide employees with health benefits, including medical, dental, and vision insurance, and other insurance benefits, including disability and life insurance, as well as flexible spending and health savings account plans. Employees pay a part of the cost of the medical plan through payroll deductions, and the Debtors cover the remaining share on a bi-weekly basis. It is difficult to determine the extent of the Debtors' pre-petition obligations under the insurance and related programs, but they estimate that the monthly cost to the Debtors under the insurance plans and related programs for December (month) to be approximately $128,162.00, and any future amounts will be subject to approval of the Debtor in Possession budget on a final basis.

v. <u>COBRA Coverage</u>. As of the Petition Date, some former employees have elected COBRA coverage under various benefit plans. These former employees contribute 100% of the cost of coverage, but the Debtors request authority to continue to offer this coverage without interruption until they discontinue

5

        coverage in accordance with applicable law, including any mandatory notice provisions.

  vi.    401(k) Plan. The Debtors offer 401(k) plans to eligible employees on the first of the month following one year of service. The Debtors offer a match contribution, which costs the Debtors approximately $1,212.00 per pay period. The Debtors had matching obligations owing as of the Petition Date. The Debtors seek authority, but not the obligation, to pay the pre-petition unpaid match amount, and otherwise continue the 401(k) program in the ordinary course of business.

  vii.    Paid Time Off ("PTO"). The Debtors' employment policies provide that full time nonexempt hourly employees accrue a certain number of hours of PTO each pay period depending on various factors including time in service and the number of hours worked during that time period. With the approval of a restaurant manager and consistent with the staffing needs of the restaurants, employees may use PTO to take paid days off.

12.    The Debtors will suffer irreversible and irreparable harm if they are not authorized to pay Pre-Petition Wages and related benefits and to honor policies including the PTO policy. If the wages are not paid, the Debtors' employees will suffer personal hardship, and in many cases, will be unable to pay their basic living expenses. Such a result would destroy employee morale and result in significant employee turnover, causing immediate damage to the Debtors' ongoing business operations.

13.    It is customary in this District to authorize Debtors to pay Pre-Petition Wages so long as the amount to be paid does not exceed the maximum amount allowed priority under 11 U.S.C. § 507(a)(4). Cause exists to hear this matter on an expedited basis due to the fact that the

Debtors' employees have not been paid since December 11, 2019 and to avoid a delay in payment. To avoid disruption of the Debtors' business, the Debtors should be authorized to make the payments sought in this Motion.

## **WAIVER OF STAY**

14. In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the Debtors require immediate relief to continue ordinary business operations for the benefit of all parties in interest. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

15. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

16. Pursuant to Local Rule 9013-2(a), this Motion is verified and accompanied by a memorandum of law, proposed order, and proof of service.

17. Pursuant to Local Rule 9013-2(c), the debtors give notice that they may, if necessary, call Richard H. Lynch, Chief Executive Officer of Debtors to testify on behalf of the Debtors about the factual matters raised in this Motion.

WHEREFORE, the Debtors respectfully request that the Court grant the Motion and authorize the payment of Pre-Petition Wages, employee benefits, and payroll taxes and for such other and further relief as the court may deem just and equitable.

12034004v6

                                                **BRIGGS AND MORGAN, P.A.**

/e/ James M. Jorissen

Dated: December 17, 2019       By: _____
                                                   James M. Jorissen, #262833
                                                   Karl J. Johnson, #391211
                                                   2200 IDS Center
                                                   80 South Eighth Street
                                                   Minneapolis, MN 55402
                                                   Telephone: 612-977-8400
                                                   Facsimile: 612-977-8650
                                                   jjorissen@briggs.com
                                                   kjohnson@briggs.com

                                                   **PROPOSED COUNSEL FOR THE DEBTORS**

## VERIFICATION

I, Richard H. Lynch, Chief Executive Officer of the Debtors named in the foregoing motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated this 16th day of December, 2019.

*[signature]*
Richard H. Lynch

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| In re: | Joint Administration Pending |
| Granite City Food & Brewery Ltd. | Case No. 19-43756 |
| Debtor. | Chapter 11 Cases |

---

| | |
|---|---|
| In re: | Joint Administration Pending |
| Granite City Restaurant Operations, Inc. | Case No. 19-43757 |
| Debtor. | Chapter 11 Cases |

---

| | |
|---|---|
| In re: | Joint Administration Pending |
| Granite City of Indiana, Inc. | Case No. 19-43758 |
| Debtor. | Chapter 11 Cases |

---

| | |
|---|---|
| In re: | Joint Administration Pending |
| Granite City of Maryland, Inc. | Case No. 19-43760 |
| Debtor. | Chapter 11 Cases |

---

| | |
|---|---|
| In re: | Joint Administration Pending |
| Granite City of Kansas Ltd. | Case No. 19-43759 |
| Debtor. | Chapter 11 Cases |

---

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTORS TO PAY PRE-PETITION WAGES, PAYROLL TAXES, AND EMPLOYEE BENEFITS; AND (II) AUTHORIZING PAYROLL PROVIDER AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH RELIEF**

---

12034004v6

The above-named Debtors (collectively, the "Debtors"), by and through their undersigned counsel, submits this memorandum of law in support of the accompanying motion in the above-entitled matter and in accordance with Local Rule 9013-2(a).

## FACTUAL BACKGROUND

The Debtors rely on the statement of facts set forth in the verified motion and the petition, and the Debtors' Declaration in Support of First Day Motions. The defined terms used in this Memorandum have the same meaning as in the accompanying motion.

## ARGUMENT

### I. THE DEBTORS' REQUEST FOR EXPEDITED RELIEF SHOULD BE GRANTED.

The Debtors request expedited relief. Bankruptcy Rule 9006(c) provides that the Court may reduce the notice period for a Motion "for cause shown." Cause exists here to grant the Motion on an expedited basis. As described in the motion, the Debtors' employees will suffer hardship and there will likely be substantial attrition in the workforce if employees are not timely paid and assured that the Debtors will honor benefits including prepetition accrued PTO. Indeed, some employees are believed to live paycheck to paycheck. Without employees, the Debtors will be unable to continue operations and will be forced to liquidate, as the Debtors will be unable to operate their restaurants. Liquidation following cessation of operations will strip the Debtors of their going-concern value, the loss of which – given the composition of assets extant in these Chapter 11 estates – would be inimical to the interests of the estates, their creditors and other stakeholders. Expedited relief authorizing payment of employees is thus necessary to avoid immediate and irreparable harm.

12034004v6

## II. THE DEBTOR SHOULD BE AUTHORIZED TO PAY PRE-PETITION WAGES AND RELATED BENEFITS.

Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, any claims by the Debtors' employees based on "wages, salaries, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date, and claims against the Debtors for contributions to employee benefit plans arising from services rendered within 180 days before the Petition Date, are afforded priority status to the extent of $13,650 per employee. 11 U.S.C. §§ 507(a)(4) and 507(a)(5). Accordingly, such amounts would normally be paid in full under a plan of reorganization, and the primary issue raised by the Motion is the *timing* of such payments. In an effort to (i) ensure that its operations continue, and (ii) maximize the going-concern of its business, the Debtors seek merely to fund pre-petition obligations owed to its employees (to the extent permitted by Section 507) at the beginning of the case rather than at the end of the case.

### A. *The Bankruptcy Code Allows for Payment of Certain Pre-Petition Claims*

The Bankruptcy Code does not prohibit a debtor from paying pre-petition claims in all instances and, in fact, authorizes debtors to do so in several circumstances upon court approval. *See, e.g.,* 11 U.S.C. §§ 363(b), 503(b)(9), 549 (2012). Courts routinely permit debtors to fund pre-petition wage and benefits claims. *See* 4 COLLIER ON BANKRUPTCY ¶ 507.06[1] at 507-31 (Rev. 16th ed. 2012) ("The ability to ensure that the employees receive their unpaid prepetition salary and do not miss a paycheck is critical to obtaining the stability necessary for the transition to operating as a debtor in possession."). Across jurisdictions, however, courts have relied on a range of rationales in granting motions seeking authority to pay pre-petition wages and benefits.

For example, courts in several jurisdictions have held that pre-petition wages and benefits can be paid pursuant to Section 363 of the Bankruptcy Code. Section 363 of the Bankruptcy Code allows a debtor, upon authorization by the court, to pay claims outside the ordinary course of business. While most businesses would consider the payment of wages, salaries, and benefits to be something undertaken in the ordinary course, courts have suggested that when such obligations accrue during the pre-petition period, funding such obligations does not fall within the ordinary course. *See, e.g., In re K-Mart Corp.,* 359 F.3d 866, 872 (7th Cir. 2004); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

Courts have also authorized the funding of pre-petition wages and benefits pursuant to Section 105(a) or Section 549 of the Bankruptcy Code based on the "Doctrine of Necessity." The Doctrine of Necessity acknowledges that, under certain scenarios, it is in the best interest of the estate to pay pre-petition creditors as a means of inducing them to continue working for, or doing business with the debtor. *Miltenberger v. Logansport,* 106 U.S. 286 (1882). Although it was devised long ago, the Doctrine of Necessity has proved to be resilient through several amendments to the Bankruptcy Code, and it is still cited today. *See, e.g., In re O & S Trucking, Inc.,* Case No. 12-61003, 2012 WL 2803738, at *2 (Bankr. W.D. Mo. June 29, 2012); *In re Payless Cashways, Inc.,* 268 B.R. 543 (Bankr. W.D. Mo. 2001); *In re Just For Feet,* 242 B.R. 821 (D. Del. 1999); *Ionosphere Clubs,* 98 B.R. at 175.

In the context of large corporate chapter 11 filings, including in this district, courts have approved payment of employee prepetition claims for compensation, benefits and expense reimbursements. *See, e.g., In re Archdiocese of Saint Paul and Minneapolis,* No. 15-30125 (RJK) (Bankr. D. Minn. Jan. 20, 2015) [ECF No. 47]; *In re SCICOM Data Servs., Ltd.,* No. 13-43894 (MER) (Bankr. D. Minn. Aug. 20, 2013) [ECF No. 19]; *In re Wagstaff Minn. Inc.,* No. 11-

4

43073 (KAC) (Bankr. D. Minn. May 5, 2011) [ECF No. 33]; *In re Duke & King Acquisition Corp.,* No. 10-38652 (GFK) (Bankr. D. Minn. Dec.8, 2010) [ECF No. 37]; *In re Schwing Am., Inc.,* No. 09-36760 (NCD) (Bankr. D. Minn. Oct. 2, 2009) [ECF No. 17]; *In re Genmar Holdings, Inc.,* No. 09-43537 (KAC) (Bankr. D. Minn. June 4, 2009) [ECF No. 25]; *In re Polaroid Corp.,* No. 08-46617 (GFK) (Bankr. D. Minn. Dec. 23, 2008) [ECF No. 22].

B.  *Regardless of the Rationale, the Payments at Issue Should Be Authorized*

The Court should authorize the Debtors to make the payments at issue in the Motion "outside the ordinary course" pursuant to Section 363. Funding the pre-petition claims of employees, like any other use of property outside the ordinary course of business, is appropriate in instances where the debtor can demonstrate a "business justification" for doing so.

> Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances. However, the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business, before the court may permit such disposition under section 363(b).

*In re Ionosphere Clubs, Inc.,* 98 B.R. at 175 (citations omitted); *see also Michigan Bureau of Workers' Disability Compensation v. Chateaugay Corp. (In re Chateaugay Corp.),* 80 B.R. 279, 281 (Bankr. S.D.N.Y. 1987) (court allowed debtor to continue payment of pre-petition wages and other benefits because it was consistent with debtor's "imperatives").

In the instant case, the Debtors have demonstrated that they have a significant and obvious business justification for the relief sought in the Motion. Specifically, the Debtors' funding of pre-petition wages and benefits will stabilize the Debtors' operations and maximize the going-concern value of the Debtors' business. If, on the other hand, the Debtors do not fund their pre-petition obligations to employees, there is a significant risk that the Debtors will have to

5

discontinue operations entirely. The Debtors' inability to continue generating revenue as a going concern would have a negative impact, to say the least, on all parties in interest.

The relief at issue should also be granted pursuant to the Doctrine of Necessity in the event that the Court analyzes the Motion under Section 105(a) or Section 549. Section 105(a) grants the Court authority to issue any order "necessary or appropriate to carry out the provisions" of the Code, and also provides a basis for authorizing the debtor to pay accrued pre-petition wages, salary, and benefits. *See In re Ionosphere Clubs, Inc.,* 98 B.R. at 175; *In re Quality Interiors, Inc.,* 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991). Bankruptcy Code Section 549(a)(2)(b) also recognizes that a court may authorize the payment of pre-petition debts. *In re Payless Cashways, Inc.,* 268 B.R. at 546; *Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.),* 37 B.R. 334, 336 n.3 (Bankr. W.D. Mo. 1984). In fact, the same justifications for payment of employee obligations support payment of independent representative commissions.

The above analysis holds true regardless of the decision issued by the United States Court of Appeals for the Seventh Circuit in *In re K-Mart Corp.,* 359 F.3d 866 (7th Cir. 2004). In the *K-Mart* case, the Seventh Circuit considered whether the bankruptcy court could authorize payments to fund the pre-petition claims of "critical vendors." Ultimately the Seventh Circuit determined that the bankruptcy court had not established its authority to do so. The Seventh Circuit acknowledged, however, that Section 363(b) might provide a basis for authorizing such payments under the right circumstances. *In re K-Mart Corp.,* 359 F.3d at 872. The Seventh Circuit also indicated that, in order to justify the payment of pre-petition claims, the debtor should be required to show that (i) it would suffer damage if such payments were not made, and (ii) that other creditors would not suffer harm as a result of the proposed payments. *Id.* The Debtors have made such a showing in this case.

Moreover, the interests of the estate and its creditors are different with respect to employees than they are with respect to "critical vendors."

> A central purpose of chapter 11 is to realize on a debtor's going concern value. That going-concern value is dependent in part upon the continuity and performance of the debtor's work force—something particularly true in the case at bar. The continuity and performance of a debtor's work force is, in turn, typically dependent on timely payment of wages and benefits. As claims based on prepetition wages and benefit programs almost always—as is true of the Prepetition Employee Obligations—are entitled to priority payment under section 507(a) of the Code, unsecured creditors are not disadvantaged by early—timely—satisfaction of those claims.

*In re Tusa-Expo Holdings, Inc.,* Case No. 08–45057, 2008 WL 4857954, at *4 (Bankr. N.D. Tex. Nov. 7, 2008). Like the debtor in *Tusa-Expo Holdings,* the Debtors' future is dependent on the continued support of its employees. Accordingly, the Debtors respectfully ask the Court to grant their Motion on an expedited basis and allow the Debtors to fund their Pre-Petition Wage obligations to employees.

In this case, the employees are critical to the Debtors and their ability to continue business operations without interruption and to maximize the value of their assets. If payment of wages and benefits are postponed to when a plan is confirmed, the Debtors' going-concern value will be threatened by employee losses and a severe disruption. To the extent the Debtors' operations suffer, creditors also suffer and estate assets diminish. It is in the best interest of creditors that wages and benefits be paid to employees to maintain their good will. The issue is really one of timing of payment, and creditors are not harmed; rather, they will benefit by payment of the Pre-Petition Wages as the Debtors propose in the Motion.

## **CONCLUSION**

The Debtors have a compelling business justification for funding the pre-petition obligations owed to its employees, and the funding of such obligations is necessary to avoid

7

immediate and irreparable harm. Further, granting the relief requested will not prejudice any creditor or other party in interest. For these reasons, and others set forth above, the Debtors respectfully ask the Court to grant the relief requested in the Motion on an expedited basis.

**BRIGGS AND MORGAN, P.A.**

Dated: December 17, 2019

/e/ James M. Jorissen
By: _____
James M. Jorissen, #262833
Karl J. Johnson, #391211
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-977-8400
Facsimile: 612-977-8650
jjorissen@briggs.com
kjohnson@briggs.com

**PROPOSED COUNSEL FOR THE DEBTORS**

8

12034004v6

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Joint Administration Pending |
| Granite City Food & Brewery Ltd. | Case No. 19-43756 |
| Debtor. | Chapter 11 Cases |
| In re: | Joint Administration Pending |
| Granite City Restaurant Operations, Inc. | Case No. 19-43757 |
| Debtor. | Chapter 11 Cases |
| In re: | Joint Administration Pending |
| Granite City of Indiana, Inc. | Case No. 19-43758 |
| Debtor. | Chapter 11 Cases |
| In re: | Joint Administration Pending |
| Granite City of Maryland, Inc. | Case No. 19-43760 |
| Debtor. | Chapter 11 Cases |
| In re: | Joint Administration Pending |
| Granite City of Kansas Ltd. | Case No. 19-43759 |
| Debtor. | Chapter 11 Cases |

**ORDER**

This case is before the court on Debtors' Motion for Expedited Relief and an Order (I) Authorizing Debtor to pay Pre-Petition Wages, Payroll Taxes, and Employee Benefits; and (II)

Authorizing Payroll Provider and Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief (the "Motion"). Based on the motion, and this court having determined that it is in the best interests of Debtors' estate to grant the Motion, and it appearing that due and proper notice of this action was given,

**IT IS HEREBY ORDERED:**

1. The Debtors' Motion is granted.

2. The Debtors' request for expedited relief is granted.

3. The Debtors are authorized, but not required, to pay or cause to be paid, in their sole discretion, all amounts required under or related to outstanding prepetition wages (including expenses) earned within 180 days before the petition date, up to a maximum of $13,650.00 per employee, and to honor, but not cash out, paid time off accrued by their employees.

4. The Debtors are authorized, but not required, to continue to pay and honor, in their sole discretion, obligations arising under or related to their plans, practices, programs and policies for its employees as set forth in the Motion including, without limitation, those giving rise to the Pre-Petition Wages, as such plans, practices, programs and policies were in effect as of the Petition Date.

5. The Debtors are authorized to pay, in their sole discretion, pre-petition amounts owing in the ordinary course of business to third parties in connection with administering and maintaining their employee benefit programs, including the Payroll Provider.

6. The Debtors' Payroll Provider, and all applicable banks and other financial institutions, are authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or automated clearing house transfers evidencing amounts paid by the Debtors under this Order whether presented prior to or after the Petition Date to the extent the Debtors have good funds standing to their credit with such bank or other financial institution. The Payroll Provider and such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquire and without liability for following the Debtors' instructions.

7. Nothing in the Motion or this Order, nor any payments made pursuant to this Order, shall be deemed to be, or constitute, (a) an admission as to the validity or priority of any claim against the Debtors, (b) an assumption or post-petition reaffirmation of any agreement,

2

plan, practice, program, policy, executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, (c) a grant of third-party beneficiary status of any additional rights on any third party, or (d) a waiver of any rights, claims or defenses of the Debtors.

8. Nothing in the Motion or this Order shall impair the ability of the Debtors to contest the validity or amount of any payment made pursuant to this Order.

9. Nothing in the Motion or this Order shall be construed as impairing the Debtors' right to contest the validity or amount of any Pre-Petition Wages, including payroll taxes that may be due to any taxing authority.

10. Notwithstanding anything to the contrary herein, (a) any payments made or authorization contained hereunder, shall be subject to the requirements imposed on the Debtors pursuant to any interim or final order authorizing, among other things, the Debtors' entry into the postpetition financing facility and use of cash collateral (the "DIP Orders"), including any budgets governing or relating to the postpetition financing, and (b) to the extent there is any inconsistency between the terms of the DIP Orders and any action taken or proposed to be taken hereunder, the terms of the DIP Orders shall control.

11. Notwithstanding Bankruptcy Rule 6003 and the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12. This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____              _____
                                    United States Bankruptcy Judge

3