**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re:<br><br>GRANITE CITY FOOD & BREWERY LTD.,<br><br>Debtor. | Joint Administration Pending<br><br>Case No. 19-43756<br><br>Chapter 11 Case |

**PACA TRUST CREDITORS' LIMITED OBJECTION TO
DEBTORS' MOTIONS (A) FOR AN ORDER AUTHORIZING DEBTORS TO PAY THE
PREPETITION SECTION 503(b)(9) AND PACA CLAIMS OF CERTAIN CRITICAL
VENDORS AND (B) FOR INTERIM AND FINAL ORDERS (I) GRANTING
EXPEDITED HEARING, (II) APPROVING POSTPETITION FINANCING, (III)
GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE STATUS, (IV) AUTHORIZING USE OF CASH COLLATERAL, (V)
GRANTING ADEQUATE PROTECTION, (VI) MODIFYING AUTOMATIC STAY,
AND (VII) GRANTING RELATED RELIEF**

**COME NOW**, Bix Produce Company LLC ("Bix"), Coastal Sunbelt Produce LLC ("Coastal"), Get Fresh Produce, Inc. ("Get Fresh") and Piazza Produce, LLC ("Piazza") (Bix, Coastal, Get Fresh and Piazza collectively, "PACA Trust Creditors"), by and through undersigned counsel, and hereby enter a limited objection (the "Objection") to the motions filed by debtors Granite City Food & Brewery Ltd., Granite City Restaurant Operations, Inc., Granite City of Indiana, Inc., Granite City of Maryland, Inc. and Granit City of Kansas Ltd. (collectively, "Debtors") for (A) an Order Authorizing Debtors to Pay the Prepetition Section 503(b)(9) and PACA Claims of Certain Critical Vendors (Docket No. 9) (the "PACA Motion") and (B) Interim and Final Orders (I) Granting Expedited Hearing, (II) Approving Postpetition Financing, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Authorizing Use of Cash Collateral, (V) Granting Adequate Protection, (VI) Modifying Automatic Stay, and (VII) Granting Related Relief (Docket No. 19) (the "Cash Collateral Motion") (the PACA Motion and the Cash Collateral Motion collectively, the "Motions"). For the reasons set forth below, PACA

- 1 -

Trust Creditors object to the relief requested in the Motions as contravening their rights to be paid from non-bankruptcy estate trust assets under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA"). In support of their Objection, PACA Trust Creditors respectfully state as follows:

## I.     BACKGROUND

1. On December 16, 2019 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court (Docket No. 1).

2. Debtors are continuing in possession of their businesses and property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. Prior to the Petition Date, Debtors were purchasers of wholesale quantities of produce subject to licensure under the provisions of PACA as dealers.

4. Pre-petition, PACA Trust Creditors sold and delivered to Debtors in interstate commerce wholesale quantities of produce having the aggregate principal value of approximately $142,515.40, all of which was accepted by Debtors and remains due and owing, in the following approximate principal amounts (some of the PACA Trust Creditors are still determining the exact total due from Debtors):

| | |
|---|---|
| Bix: | $79,409.00 |
| Coastal: | $20,785.00 |
| Get Fresh: | $30,312.80 |
| Piazza: | $12,008.60 |

The total principal amount due set forth above does not include interest or attorneys' fees each of the PACA Trust Creditors has a contractual right to recover.

5.  Each of the PACA Trust Creditors is a PACA licensee who has preserved its respective rights as a beneficiary of the statutory trust created under PACA by placing specified language on its invoices to Debtors as authorized by 7 U.S.C. § 499e(c)(4).

6.  On December 18, 2019, Debtors filed the PACA Motion which acknowledges that *bona fide* PACA trust creditors' claims extend to the "qualifying inventory and proceeds that trumps the claims and even the liens of the buyer's creditors – secured, unsecured, priority, it matters not," Memorandum of Law in Support of PACA Motion at p. 3, and that an "equitable interest of the PACA trust beneficiary in the trust res is not included in the bankruptcy estate." *Id*. Therefore, Debtors conclude that "paying PACA claimants will not prejudice the other creditors."

7.  Yet, the PACA Motion pays mere lip-service to PACA's statutory requirements, as it asks this Court to enter an order (the "PACA Order") which: (1) authorizes, but does not direct, Debtors to pay PACA trust claims; (2) places payments to PACA trust creditors on par with payments to Critical Vendors and others holding Section 503(b)(9) administrative expense claims; (3) limits payment to all such creditors in the amount of $1,076,613.00; (4) subjects such payments to Debtors' business judgment; and (5) is subordinate to the order sought by the Cash Collateral Motion, including any budgets governing or related to postpetition financing.

8.  On December 18, 2019, Debtors also filed the Cash Collateral Motion which seeks entry of an order (the "Cash Collateral Order") which also purports to prime the interests of PACA Trust creditors in that it: (1) grants the DIP Lender a super-priority blanket lien over all of the Collateral (as that term is defined in the Cash Collateral Motion), which includes PACA trust assets in the Debtors' possession; and (2) authorizes the continued use of cash collateral; yet (3) provides no adequate protection for PACA Trust Creditors, and other similarly situated PACA trust beneficiaries.

## II. OBJECTIONS

9. PACA Trust Creditors object to the PACA Motion on the grounds that it seeks to condition payment to the PACA Trust Creditors, and other similarly situated PACA trust beneficiaries, on a variety of factors which are irrelevant in light of PACA's prompt payment requirements.

10. PACA Trust Creditors object to the Cash Collateral Motion on the grounds that it is substantively prejudicial to their rights and those of similarly situated PACA trust beneficiaries because it seeks to impermissibly subordinate PACA Trust Creditors' statutory trust rights to a proposed super-priority blanket lien in favor of the DIP Lender without providing adequate protection to PACA Creditors and other similarly situated parties in interest holding valid PACA trust claims against Debtors.

11. PACA Creditors further object to the Cash Collateral Motion on the grounds that it seeks authorization to continue using cash collateral, including paying such funds to its DIP Lender, without providing any adequate assurances to PACA Creditors pursuant to 11 U.S.C. § 363(e).

12. The provisions of the PACA Order and Cash Collateral Order are contrary to the jurisprudence cited in Debtors' PACA Motion and are at odds with the large body of case law which entitles PACA Trust Creditors to full and prompt payment of their claims.

13. For the reasons set forth below, it is respectfully submitted that the PACA Order should authorize and direct Debtors to make prompt payment of all valid PACA trust claims in the full amount of the debt owed without condition.

14. It is further respectfully submitted that Cash Collateral Order should provide that the claims of valid PACA trust creditors prime the liens of the DIP Lender to the Collateral. In addition, it is respectfully requested that Debtors be required to segregate no less than $500,000.00 to be used

exclusively to pay the claims of parties holding valid PACA trust claims as adequate assurance for Debtors' continued use of cash collateral.

### III. ARGUMENT

#### A. History and Impact of PACA

15. PACA is a remedial statute designed to protect sellers of perishable commodities who, without the statute, would lack any way to secure themselves against non-payment by their customers. H. Rep. No. 543, 98th Cong., 1st Sess. 3 (1983), reprinted in 1984 *U.S. Code Cong & Admin News* ("*USCCAN*") 405, 407. As a remedial statute, PACA "should be given a liberal construction to effectuate its statutory purpose." *Hull Company v. Hauser Foods, Inc.*, 924 F.3d 777, 781 (8th Cir. 1991).

16. In the early 1980's, "Congress determined that the increase in non-payment and delinquent payment by produce dealers threatened the financial stability of produce growers." *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990). To remedy this problem, Congress amended PACA in 1984 by creating a statutory trust in Section 499e to "increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 *U.S. Code Cong & Admin News* 405, 406. The trust provisions require a produce receiver to hold in trust as a fiduciary its produce-related assets, which includes the produce itself, products derived therefrom, <u>as well as any receivables or proceeds from the sale thereof</u>, until full payment is made to the seller. 7 U.S.C. § 499e(c)(2) (emphasis added); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998); *In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.*, 986 F.2d 1010 (6th Cir. 1993).

17. Failure to maintain the trust and make full payment promptly to the trust beneficiaries is unlawful. 7 U.S.C. § 499b(4). Produce dealers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 CFR § 46.46(d)(1). Dissipation of trust assets, defined as the diversion of trust assets or the <u>impairment of a seller's right to obtain payment</u> (7 CFR § 46.46[a][2]), is forbidden. 7 CFR § 46.46(d)(1) (emphasis added).

18. The scope of the PACA trust is broad. Section 499e(c)(2) defines the *corpus* of the trust as all produce, including all inventories of food or other products derived from produce, and <u>receivables or proceeds from the sale of produce or its products</u>. 7 U.S.C. § 499e(c)(2) (emphasis added). The trust also extends to all inventory purchased from a commingled account, *Sanzone-Palmisano Co.* 986 F.2d at 1010, and to any other assets acquired with PACA trust funds. *In re Kornblum & Co., Inc.*, 81 F.3d at 280; *In re Atlantic Tropical Market Corp.*, 118 B.R. 139 (Bankr. S.D. Fla. 1990).

19. Assets purchased with funds held in an account containing comingled proceeds from the sale of produce and non-produce items are routinely held to be trust assets. *A & J Produce Corp. v. Bronx Overall Economic Development Corp.*, 542 F.3d 54 (2d Cir. 2008) (commercial real property impressed with PACA trust); *In re Kornblum & Co., Inc.*, 81 F.3d at 287 (proceeds from the sale of membership interests and leases on real property are PACA trust assets); *Chiquita Fresh N. Am., LLC v. Long Island Banana Corp.*, 198 F.Supp.3d 171 (E.D.N.Y. 2016) (real property proceeds subject to the PACA trust); *American Fruit & Vegetable Co., Inc. v. Ithaca Produce, Inc.*, 848 F.Supp.2d 375 (W.D.N.Y. 2011) (residential real property subject to PACA trust); *Movsovitz & Sons of Fla., Inc. v. Doral Bank,* 2010 U.S. Dist. LEXIS 48612 (D.P.R. May 17, 2010)

(proceeds from the sale of real property impressed with PACA trust under *Kornblum* standard); *Tony Vitrano Co. v. National Produce Co.*, 815 F.Supp. 23 (D.D.C. 1993) (proceeds from sale of real property, paid for with PACA trust funds, are PACA trust assets); *Mid-Valley Produce Corp. v. 4-XXX Produce Corp.*, 833 F.Supp. 193 (E.D.N.Y. 1993) (use of PACA trust funds to pay mortgage on home resulted in imposition of constructive trust on home for benefit of PACA creditors); *In re Atlantic Tropical Market Corp.*, 118 B.R. at 142 ("[A]ny assets purchased while the fund is in existence will be assumed to be purchased with trust fund assets and will therefore become part of the trust fund assets."); *In re Al Nagelberg & Co., Inc.*, 84 B.R. 19, 21 (S.D.N.Y. Bankr. 1988) (payments to co-op impressed with the PACA trust); *Consumers Produce Co. v. Fredericktown Produce Co.*, 2015 U.S. Dist. LEXIS 19869 (W.D. Pa. Feb. 19, 2015) (insurance policy proceeds subject to the PACA trust); *Sam Wang Produce, Inc. v. EE Mart FC, LLC,* 2010 U.S. Dist. LEXIS 13608 (E.D.Va., Feb. 16, 2010) (use of PACA trust funds to pay insurance premiums entitled PACA creditors to proceeds from insurance policy); *Atlantic Coast Produce, Inc., v. McDonald Farms, Inc.*, 2005 U.S. Dist. LEXIS 14993**12-13 (W.D. Va. 2005) ("If the buyer fails to prove [particular assets] did not derive from produce proceeds, a PACA beneficiary may recover any of the buyer's assets, up to the amount owed, ahead of other creditors."); *Hereford Haven v. Stevens,* 1999 U.S. Dist. LEXIS 3116 (N.D. Tex. Mar. 12, 1999) (business property, vehicles, and all business equipment are PACA trust assets because paid for with commingled PACA trust funds).

20.     Moreover, there is a presumption that the assets of a PACA trustee are subject to the PACA trust. *J.A. Besteman Co. v. Carter's, Inc.*, 439 F. Supp. 2d 774, 778 (W.D.Mich. 2006); *Tony Vitrano Co.*, 815 F.Supp. at 23.  It is not the obligation of the PACA trust beneficiary to trace assets and show that they are impressed with the PACA trust. *J.A. Besteman Company*, 439 F. Supp. 2d at 777.  Rather, the party alleging that assets acquired with commingled funds are not part of the

PACA trust has the very difficult burden of proving that the assets are free of the trust. *Sanzone-Palmisano*, 986 F.2d at 1014; see also, *A & J Produce Corp.*, 542 F.3d at 58. It makes no difference if "the buyer sells other commodities in addition to produce and commingles the proceeds from the sale of all commodities." *Sanzone-Palmisano*, 986 F.2d at 1014.

21. Based on this law, when a produce buyer files for bankruptcy protection, the PACA trust assets are not part of the debtor's estate. 11 U.S.C. § 541(d); 49 Fed. Reg. 45735, 45738; *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29, 32 (Bankr. D. Del. 1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bkrtcy. C.D. Ill. 1997); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993). Therefore, so long as PACA creditors remain unpaid, Debtor, as the PACA trustee, has a fiduciary duty to the PACA creditors to ensure that sufficient assets are made available to pay all sums owing under the PACA trust, even before payment to secured lien holders such as the DIP Lender. 7 U.S.C. § 499e(c)(1); *A & J Produce Corp.*, 542 F.3d at 58.

22. PACA's trust provisions provide that unpaid produce sellers "are placed first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy." *Frio Ice, S.A.*, 918 F.2d 154; see also, *In re Kornblum & Co.*, 81 F.3d 280; *Sanzone-Palmisano Company*, 986 F.2d 1010. "It is clear from the terms of the PACA amendments and from the supporting legislative history that Congress intended to create a *priority* status for unpaid produce claimants, priming even the administrative claims which normally stand first in line in a bankruptcy distribution." *In re Fresh Approach, Inc.*, 51 B.R. 412, 420 (Bankr. N.D. Tex. 1985) (emphasis in original). "Allowing a defunct PACA trustee to pay other creditors with PACA funds before the seller is paid in full would frustrate [the purpose of PACA], and would be contrary to the language

of PACA and its accompanying regulations." *C.H. Robinson Company v. Alanco Corp.*, 239 F.3d 483, 488 (2d Cir. 2001).

23.     As a result, PACA Creditors are entitled to immediate turnover of trust funds upon the commencement of the bankruptcy. *In re Kelly Food Products, Inc.*, 204 B.R. 18; *In re W.L. Bradley Co., Inc.*, 75 B.R. 505 (Bankr. E.D.Pa 1987). Unpaid produce suppliers are entitled to immediate relief, either by the segregation of trust assets, *Frio Ice, S.A.* 918 F.2d at 156; *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364 (N.D.Cal. 1990); *J.R. Brooks & Son v. Norman's Country Market*, 98 B.R. 47, 50 (N.D.Fla. 1989), or by immediate payment. *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Debtors required to immediately pay trust assets to the PACA trust creditors).

24.     Furthermore, Debtor cannot delay payment of PACA claims by shunting them off to a plan of reorganization. See, *In re W.L Bradley Company, Inc.*, 75 B.R. at 514; *In re Fresh Approach, Inc.*, 51 B.R. 412; *In re Monterey House, Inc.*, 71 B.R. 244 (Bankr. S.D. Tex. 1986). In *Bradley*, the court explained its decision by recalling Congress' intent in enacting the PACA:

> It must be remembered that PACA was not enacted to protect those in Debtor's shoes, but rather to prevent the chaos and disruption in the flow of perishable agricultural commodities sure to result from an industry-wide proliferation of unpaid obligations. While in isolation this may seem a harsh course to follow, in the macroeconomic sense PACA serves to ensure continuity of payment and therefore survival of the industry. Congress has plainly decided it would be less disastrous to risk the liquidation of a single purchaser than to threaten the entire production chain with insolvency.

*In re W.L Bradley Company, Inc.*, 75 B.R. at 514.

25.     Where, as here, Debtors are continuing operations and using cash collateral belonging to PACA Trust Creditors, steps must be taken to ensure that the rights of PACA trust creditors are adequately protected.

### B.     The PACA Order and Interim DIP Order

**Are Insufficient to Protection PACA Trust Creditors' Statutory Rights**

26. The legislative history of PACA, and the cases interpreting the statute, make clear that the claims of secured creditors cannot trump the claims of valid PACA trust creditors. 49 Fed. Reg. 45735, 45738 (1984) ("While the regulations do not prohibit a buyer or receiver from granting a secured interest in trust assets, they make it clear that the secured interest is secondary and specifically voidable in order to satisfy debts to unpaid suppliers, sellers, or agents in perishable agricultural commodity transactions"); 7 U.S.C. § 499e(c)(1); *A & J Produce Corp.*, 542 F.3d at 58; *Nickey Gregory Co., LLC v. Agricap, LLC,* 597 F.3d 591, 594 (4th Cir. 2010); *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003); *Endico Potatoes v. CIT Group/Factoring*, 67 F.3d 1063, 1067 (2d Cir. 1995); *Tom Lange Co. v. Lombardo Fruit & Produce (In re Lombardo Fruit & Produce Co.)*, 12 F.3d 806, 809 (8th Cir. 1993) (trust requires debtor to use proceeds from sale of produce to pay suppliers before paying secured creditors). The Cash Collateral Motion ignores this jurisprudence and attempts to subordinate PACA Trust Creditors' interests in their PACA trust assets to the rights of the DIP Lender. But, the proposed adequate protection lien and superpriority claim granted to the DIP Lender cannot prime the interests of PACA Creditors. 7 U.S.C. § 499e(c)(1). Such an outcome would be contrary to the stated purpose of PACA, a statute coequal with the Bankruptcy Code, and must not be permitted.

27. PACA Trust Creditors further object to the Cash Collateral Motion to the extent it seeks to authorize Debtors to continue using cash collateral, itself a PACA trust asset[1], including payment to the DIP Lender, without any adequate assurance as required by 11 U.S.C. § 363(e).

---

[1] 7 U.S.C. § 499e(c)(2); *Sanzone-Palmisano Co.* 986 F.2d at 1010.

28. In response to this objection, Debtors will likely contend that the proposed PACA Order provides all of the adequate protection due PACA Trust Creditors; however, it is respectfully submitted that the PACA Order is insufficient to protect PACA Trust Creditors' statutory rights. Not only does the PACA Order make payment of PACA claims optional at Debtors' sole discretion (the PACA order authorizes, but does not direct payment), but it provides for no source of funds from which those payments shall be made. Should Debtors face cash flow problems it is unclear where the funds will come from to pay pre-petition PACA claims in the ordinary course of business as Debtors continue to incur post-petition operating costs. If PACA Trust Creditors' rights to their PACA trust assets are subordinated to the DIP Lender's lien and super-priority claim, they will be left with no source of recovery for their trust claims. Therefore, PACA Trust Creditors ask that no less than $500,000.00 be set aside to pay valid PACA trust claims.

29. In addition, PACA entitles unpaid produce suppliers to recover all "sums owing" in connection with the produce transactions. 7 U.S.C. § 499e(c)(2). The "sums owing" provision is considered unambiguous and requires the payment of both the cost of the produce itself and "sums owing" to the supplier in connection with the produce transaction. *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 709 (2d Cir. 2007); *Middle Mt. Land & Produce, Inc.*, 307 F.3d 1220, 1223 (9th Cir. 2002); *Pac. Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 285 (3rd Cir. 2006); *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004). These expenses include accrued interest and attorneys' fees. *Coosemans Specialties, Inc.*, 485 F.3d 705; *Country Best*, 361 F.at 632; *Allens, Inc. v. D&E Farms, Inc. (In re Veg Liquidation, Inc.),* 516 B.R. 545 (Bankr. W.D. Ark. 2014); *J.C. Produce, Inc. v. Paragon Steak-house Restaurants, Inc.,* 70 F. Supp. 2d 1119, 1123 (E.D. Cal. 1999); *E. Armata, Inc. v. Platinum Funding*, 887 F. Supp. 590, 594-595 (E.D.N.Y. 1995). Therefore, any order which directs the segregation of funds to pay

PACA claims should take into consideration the full amount of a PACA claim, which includes not just the principal amount due, but also any "sums owing" in connection with the underlying transactions. Thus, PACA Trust Creditors propose that Debtors be required to set aside no less than $500,000.00 as adequate assurance for the PACA Trust Creditors and similarly situated PACA trust beneficiaries.

30. PACA Trust Creditors have established the validity, priority, and extent of their interests. It is now the burden of the Debtors to demonstrate how they will adequately protect those interests. See, 11 U.S.C. § 363(p).

## IV.   CONCLUSION

31. Based on the controlling law and argument set forth above, PACA Trust Creditors respectfully request that: (1) the PACA Order be modified to authorize and direct payment in full of all valid PACA trust claims, without condition; (2) the interim and final Cash Collateral Orders provide that the claims of valid PACA trust creditors prime the liens of the DIP Lender to the Collateral, as that term is defined in the Cash Collateral Motion; (3) Debtors be required to segregate no less than $500,000.00 to be used exclusively to pay the claims of parties holding valid PACA trust claims; and (4) PACA Trust Creditors be awarded such other and further relief as the Court deems just and proper.

Dated:  December 19, 2019 /e/Ryan T. Murphy
Clinton E. Cutler (#0158094)
Ryan T. Murphy (#0311972)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000
ccutler@fredlaw.com
**rmurphy@fredlaw.com**

and

Blake Surbey (pro hac vice pending)
**MCCARRON & DEISS**
4530 Wisconsin Avenue, N.W., Suite 301
Washington, DC 20016
F: (202) 364-0400
**Email: bsurvey@mccarronlaw.com**

**ATTORNEYS FOR PACA TRUST CREDITORS**