# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

| | |
|---|---|
| In re: | Jointly Administered under 19-43756 (WJF) |
| | |
| Granite City Food & Brewery Ltd. | 19-43756 |
| Granite City Restaurant Operations, Inc. | 19-43757 |
| Granite City of Indiana, Inc. | 19-43758 |
| Granite City of Kansas Ltd. | 19-43759 |
| Granite City of Maryland, Inc. | 19-43760 |
| | |
| Debtors. | Chapter 11 Cases |

---

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING (II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED CREDIT PARTIES; (IV) MODIFYING THE AUTOMATIC STAY; (V) AUTHORIZING THE DEBTORS TO ENTER INTO AGREEMENTS WITH JMB CAPITAL PARTNERS LENDING, LLC; (VI) AUTHORIZING USE OF CASH COLLATERAL; (VII) <u>SCHEDULING A FINAL HEARING AND (VIII) GRANTING RELATED RELIEF</u>**

THIS MATTER having come before the Court upon the motion (the "**Motion**")[1] of the above-captioned debtors (the "**Debtors**" or the "**Borrowers**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101 *et seq.*, as amended, the "**Bankruptcy Code**"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2002-1 and 4001-2, seeking entry of an interim order (the "**Interim Order**") and a final order (the "**Final Order**") granting *inter alia*:

---

[1] Unless stated otherwise, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Credit Agreement (as defined below), as applicable.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *12/20/2019*
Lori Vosejpka, Clerk, by WM

i.        authority, pursuant to sections 105, 363, and 364(c) and 364(d) of the Bankruptcy Code, for each of the Debtors, jointly and severally, to obtain senior secured postpetition financing ("**DIP Facility**") in an aggregate principal amount of up to $5,000,000 (the "**Delayed Draw Commitment**") (of which (x) upon entry of this Interim Order and satisfaction or waiver of the borrowing conditions set forth in the DIP Loan Documents (as defined below), $4,000,000 (the "**Interim Advance**") shall be made available to the Debtors and may be drawn in a single draw on the Closing Date and the Additional Term Loan Obligations (as defined below) shall be rolled up into the DIP Facility and  (y) subject to entry of the Final Order, the balance shall be made available to the Debtors upon entry of the Final Order in amount set forth in the DIP Credit Agreement (as defined below));

ii.        authority (a) for the Debtors to enter into that certain Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement, among the Debtors as Borrowers, the Guarantors party thereto, as Guarantors and JMB Capital Partners Lending, LLC, as Lender (the "**DIP Lender**") in substantially the same form as filed with the Court as Docket No. 47 (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**DIP Credit Agreement**" and, together with any ancillary, collateral or related documents and agreements, the "**DIP Loan Documents**");

iii.        authority for the Debtors to use the DIP Facility and the proceeds thereof in accordance with the DIP Loan Documents to (a) fund the postpetition working capital needs of the Debtors during the pendency of the Chapter 11 Cases, (b) pay fees, costs and expenses of the DIP Facility on the terms and conditions described in the DIP Loan Documents,  (c) roll-up of outstanding Additional Term Loan Obligations held by the Prepetition Secured Parties that become the DIP Lender into DIP Obligations (the "**Roll-Up Loan**"), subject to the rights preserved in

2

paragraph 16 of this Interim Order, and (d) pay the allowed administrative costs and expenses of the Chapter 11 Cases, in each case, solely in accordance with the DIP Loan Documents, this Interim Order and the Final Order;

iv.          authority for the Debtors to grant to the DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected security interests, liens and superpriority claims, including allowed superpriority administrative expense claims pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code, subject only to the Carve-Out and liens pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code in the Collateral (as defined below) (and all proceeds thereof), including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, ("**Cash Collateral**"), to secure all DIP Obligations (as defined below), as more fully set forth in this Interim Order, subject only to the Carve-Out (as defined below);

v.          authority for the Debtors to grant the Prepetition Secured Parties (as defined below) valid, enforceable, non-avoidable, automatically and fully perfected security interests, liens and superpriority claims, including allowed superpriority administrative expense claims pursuant to section 507(b) of the Bankruptcy Code, subject only to the Carve-Out, and liens pursuant to sections 361, 362, 363(c)(2) and 363(e) of the Bankruptcy Code in the Collateral to secure any diminution in value of the Prepetition Collateral, as more fully set forth in this Interim Order, subject only to the Carve-Out and senior lien and superpriority claims of the DIP Lender;

vi.          subject to and only effective upon entry of the Final Order, waiver by the Debtors of all rights to surcharge against the collateral of the DIP Lender and the Prepetition Secured Parties pursuant to section 506(c) of the Bankruptcy Code;

3

    vii.      subject to and only effective upon entry of the Final Order, waiver of the equitable doctrine of marshaling or any other similar doctrine with respect to any collateral of the DIP Lender and the Prepetition Secured Parties;

    viii.      modification of the automatic stay to the extent hereinafter set forth and waiving the 14-day stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h);

    ix.      the scheduling of a final hearing (the "**<u>Final Hearing</u>**") on the Motion for January 22, 2020 to consider entry of the Final Order *inter alia,* authorizing borrowings under the DIP Facility on a final basis and approving notice procedures with respect thereto; and

    x.      related relief.

The Court having considered the Motion, the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on December 19, 2019 (the "**<u>Interim Hearing</u>**") and having found that due and proper notice (the "**<u>Notice</u>**") of the Motion and the Interim Hearing having been served by the Debtors in accordance with Bankruptcy Rule 4001 and 9006 and Local Rule 2002-1 on (1) counsel for the Citizens Secured Parties; (2) the Office of the United States Trustee for the District of Minnesota; (3) counsel for the DIP Lender; (4) the parties included on the Debtors' consolidated list of unsecured creditors; (5) the Internal Revenue Service; and (6) the United States Attorney for the District of Minnesota; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid potential immediate and irreparable harm to the Debtors and their estates and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses

and represents a sound exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED UPON THE MOTION, THE REPRESENTATIONS OF COUNSEL AND EVIDENCE SUBMITTED DURING THE INTERIM HEARING**:[2]

A.      *Petition Date*.  On December 16, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota (the "**Court**") commencing these Chapter 11 Cases.

B.      *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      *Notice*.  Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors to certain parties in interest, including on (1) counsel for the Citizens Secured Parties (as defined below); (2) the Office of the United States Trustee for the District of Minnesota; (3) counsel for the DIP Lender; (4) the parties included on the Debtors' consolidated list of unsecured creditors; (5) the Internal Revenue Service; (6) the United States Attorney for the District of Minnesota; and (7) any party that has requested notice pursuant to Bankruptcy Rule 2002.

D.      *Jurisdiction and Venue*.  This Court has core jurisdiction over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion

---

[2]     To the extent, any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.

constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and

proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    _No Credit Available on More Favorable Terms_.  The Debtors are unable to procure

financing in the form of unsecured credit allowable as an administrative expense under §§ 364(a),

364(b), or 503(b)(1) of the Bankruptcy Code and have been unable to procure the necessary

financing on terms more favorable, taken as a whole, than the financing offered by DIP Lender

pursuant to the DIP Loan Documents.

F.    _Best Interests of Estates_.  It is in the best interests of the Debtors' estates and

creditors that the Debtors be allowed to enter into the DIP Facility to obtain postpetition secured

financing from the DIP Lender under the terms and conditions set forth herein and in the DIP Loan

Documents, as such financing is necessary to avoid immediate and irreparable harm to the Debtors'

estates and for the continued operation of the Debtors' businesses.

G.    _Good Faith_.  The extension of credit and financial accommodations under the DIP

Loan Documents are fair, reasonable, in good faith, negotiated at arm's length, reflect the Debtors'

exercise of prudent business judgment, and are supported by reasonably equivalent value and fair

consideration.  Accordingly, the DIP Lender is entitled to the protections of Bankruptcy Code

section 364(e).

H.    _Good Cause_. The relief requested in the Motion is necessary, essential and

appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their

estates, as its implementation will, among other things, provide the Debtors with the necessary

liquidity to (1) minimize disruption to the Debtors' businesses and ongoing operations,

(2) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors'

6

creditors, and (3) avoid potential immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

I.       *Necessity of DIP Facility Terms*.  The terms of the DIP Loan Documents and the Interim Order assuring that the liens and the various claims, superpriority claims, and other protections granted in the Interim Order will not be affected by any subsequent reversal or modification of the Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the postpetition financing arrangement contemplated in the DIP Loan Documents, are necessary in order to induce the DIP Lender to provide postpetition financing to the Debtors.

J.       *Need for Postpetition Financing*.  The Debtors do not have sufficient and reliable sources of working capital, including Cash Collateral, to continue to operate their businesses in the ordinary course of business without the financing requested in the Motion.  The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of their estates for the benefit of all creditors of the Debtors.  The ability of the Debtors to obtain sufficient and stable working capital and liquidity through the proposed postpetition financing arrangements with the DIP Lender as set forth in the Interim Order and the DIP Loan Documents is vital to the preservation and maintenance of the going concern value of each Debtor.  Accordingly, the Debtors have an immediate need to obtain the postpetition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' bankruptcy estates in order to maximize the recovery to all creditors of the estates.

K.      *Need to Use Cash Collateral*.  The Debtors need to use Cash Collateral, in order to, among other things, preserve, maintain and maximize the value of their assets and businesses.  The ability of the Debtors to maintain liquidity through the use of Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets.  Accordingly, the Debtors have demonstrated good and sufficient cause for the relief granted herein.

L.      *Sections 506(c) and 552(b)*.  As material inducement to the DIP Lender to agree to provide the DIP Facility and the Prepetition Secured Parties to agree to the use of Cash Collateral, and in exchange for agreement by the DIP Lender and the Prepetition Secured Parties to subordinate their superpriority claims to the Carve-Out, subject to entry of a Final Order, the DIP Lender and the Prepetition Secured Parties are entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) subject to entry of a Final Order, the DIP Lender and the Prepetition Secured Parties are entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

M.      *Priming of Prepetition Credit Liens*.  The priming of the Prepetition Credit Liens by the DIP Lender under section 364(d)(1) of the Bankruptcy Code, solely to the extent set forth in the DIP Loan Documents and as further described below, will enable the Debtors to obtain the DIP Facility and, among other benefits, continue to operate its business for the benefit of its estate and stakeholder.

N.      *Debtors' Acknowledgments and Agreements*. Without prejudice to the rights of any creditors' committee appointed in these chapter 11 cases (the "**Committee**") or other parties-in-interest as and to the extent set forth in Section 4.1.1 of this Interim Order, the Debtors admit, stipulate, acknowledge and agree that:

(a)      *Prepetition Loan Documents*.  Prior to the Petition Date, Citizens Bank, N.A. (formerly known as RBS Citizens, N.A.), as Administrative Agent (the

8

"**Prepetition Agent**") and as a lender (the "**Prepetition Citizens Lenders**"), and the other lenders party thereto, including JMB Capital Partners Lending, LLC ("**Prepetition JMB Lender** and together with the Prepetition Citizens Lenders, the "**Prepetition Lenders**") made loans, advances and provided other financial accommodations to the Debtors pursuant to the terms and conditions set forth in: (a) that certain Credit Agreement dated as of May 15, 2014, as amended by the First Amendment to Credit Agreement dated as of September 1, 2016, and the Second Amendment to Credit Agreement dated as of October 23, 2019 (as amended, supplemented or otherwise modified from time to time through the Petition Date, the "**Prepetition Credit Agreement**"), by and among Granite City Food & Brewery Ltd., as a Borrower and as Borrower Representative, each of the other Borrowers party thereto, the other Loan Parties party thereto, the Prepetition Agent and the Prepetition Lenders; and (b) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Prepetition Agent or Prepetition Lenders, including, without limitation, the Subordination Agreement, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Prepetition Credit Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "**Prepetition Loan Documents**").

(b)      *Prepetition Secured Obligations.*  As of the Petition Date, the Debtors were indebted under the Prepetition Loan Documents: (a) to the Prepetition Agent and Prepetition Citizens Lenders (the "**Citizens Secured Parties**") (i) in an aggregate outstanding principal amount of not less than $6,000,000 plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (the "**Prepetition Revolving Loan Obligations**"), (ii) in an aggregate outstanding principal amount of not less than $29,000,000 plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto in outstanding principal balance of a Term Loan (the "**Prepetition Term Loan Obligations**"), (iii) in an aggregate outstanding principal amount of not less than $5,000,000 plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (the "**Prepetition Development Loan Obligations**," and together with the Prepetition Revolving Loan Obligations and the Prepetition Term Loan Obligations, the "**Prepetition Citizens Loan Obligations**"), and (b) to the Prepetition Agent and

9

Prepetition JMB Lender in an aggregate outstanding principal amount of not less than $1,500,000 plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (the "**Prepetition Additional Term Loan Obligations**" and together with the Prepetition Citizens Loan Obligations, the "**Prepetition Secured Obligations**").  The Prepetition Secured Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtors do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition Secured Obligations.

(c)     *Prepetition Collateral*.  As of the Petition Date, the Prepetition Secured Obligations were secured pursuant to the Prepetition Loan Documents by valid, perfected, enforceable and non-avoidable first-priority security interests and liens (the "**Prepetition Citizens Liens**") granted by Debtors to Prepetition Agent, for the benefit of itself and the Prepetition Lenders under the Prepetition Loan Documents, in substantially all of the existing and after-acquired assets of the Debtors and the other Loan Parties as more fully set forth in the Prepetition Loan Documents (the "**Prepetition Collateral**"), and such security interest is perfected and has priority over all other security interests. The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition Agent or Prepetition Lenders' liens, claims or security in the Prepetition Collateral.

(d)     *Subordination Agreements*.   Pursuant to the (a) Subordination and Intercreditor Agreement dated September 30, 2015 (the "**Great Western Intercreditor Agreement**") between the Debtors, Great Western Bank, a South Dakota banking corporation ("**Great Western**") and the Prepetition Agent, the Prepetition Agent agreed to subordinate any lien of the Prepetition Agent  to the prior existing liens of Great Western solely with respect to the real property and fixtures located at 1001 102nd Street, Omaha, Nebraska 68114 (the "**Great Western Senior Liens**"), and (b) Prepetition Credit Agreement and a Subordination Agreement dated as of October 23, 2019 (the "**JMB Subordination Agreement**") between the Debtors, the Prepetition Citizens Lenders and the Prepetition JMB Lender, the parties agreed that the payment of the Prepetition Additional Term Loan Obligations to the Prepetition JMB Lender is senior in priority to payment of the Prepetition Citizens Loan Obligations to the Prepetition Citizens Lenders.

10

(e) *Proof of Claim*. The acknowledgment by Debtors of the Prepetition Secured Obligations and the liens, rights, priorities and protections granted to or in favor of Prepetition Agent and Prepetition Lenders (collectively, the "**Prepetition Secured Parties**") in respect of the Prepetition Collateral as set forth herein and in the Prepetition Loan Documents shall be deemed a timely filed proof of claim on behalf of the Prepetition Secured Parties in these Chapter 11 Cases.

O.     Roll-up Loan.  Upon entry of the Interim Order and the occurrence of the Closing Date (as defined in the DIP Loan Documents), without further action by the Debtors or any other party, all Additional Term Loan Obligations held by the Prepetition JMB Lender shall be converted into DIP Obligations.  The Roll-Up Loan as provided for under the DIP Facility and this Interim Order is appropriate and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the Debtors thereunder without the inclusion of the Roll-Up Loan.  The Roll-Up Loan is subject to the reservation of rights in paragraph 16 below and will not prejudice any other party in interest.  Notwithstanding any other provisions of this Interim Order, the DIP Loan Documents or the JMB Subordination Agreement, all rights of the Prepetition JMB Lender shall be fully preserved.

P.     *Adequate Protection*.   The Prepetition Secured Parties are entitled to receive adequate protection on account of their interests in the Prepetition Collateral pursuant to sections 361, 362, and 363 of the Bankruptcy Code solely to the extent of any diminution in the value of their interests in the Prepetition Collateral (including Cash Collateral).  As part of the adequate protection provided by this Interim Order, the Prepetition Secured Parties shall receive, among other things, replacement liens, superpriority claims and reporting information.  The terms of the Adequate Protection Obligations (as defined in paragraph 13 below) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and are sufficient to allow the Debtors' use of

11

the Prepetition Collateral (including the Cash Collateral) and to permit the relief granted in this Interim Order.

Q.    <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.    <u>DIP Facility Approval</u>.  The DIP Facility, including the DIP Roll-Up Obligations, is hereby approved.  Any objections to the interim relief requested in the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.  The Debtors are authorized, pursuant to section 364 of the Bankruptcy Code, to enter into and be a party to the DIP Facility pursuant to the DIP Loan Documents (with such changes, if any, as were authorized to be made as amendments to the DIP Loan Documents in accordance with this Interim Order), to perform under the DIP Loan Documents and such other and additional documents necessary or desired to implement the DIP Facility or the DIP Loan Documents, and to obtain postpetition secured financing from the DIP Lender, to avoid immediate and irreparable harm to the Debtors' estates.

2.    <u>DIP Obligations</u>.  The DIP Loan Documents shall constitute and evidence the valid and binding effect of the Debtors' obligations under the DIP Facility, which DIP Obligations shall be legal, valid, and binding obligations of the Debtors party thereto and enforceable against the Debtors, their estates, any successors thereto, including, without limitation, any trustee appointed in any of the Debtors' cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any such cases, or in any other proceedings superseding or related to any of the

12

foregoing, any successors thereto, and any party determined to be the beneficial owner of the DIP

Collateral by this Court.  The Debtors and their successors shall be jointly and severally liable for

repayment of any funds advanced pursuant to the DIP Loan Documents, together with interest

thereon, at the times and in the amounts set forth in the DIP Loan Documents and all Obligations

as defined and provided for in the DIP Credit Agreement (collectively, the "**DIP Obligations**").

No obligation, payment, transfer or grant of security under the DIP Loan Documents or the Interim

Order, with respect to the DIP Facility shall be stayed, restrained, voided, voidable or recoverable

under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense,

reduction, setoff, recoupment or counterclaim.

3.    <u>Authorization to Borrow</u>.  Upon entry of this Interim Order and during the period

prior to entry of the Final Order, the Debtors are immediately authorized to borrow from the DIP

Lender under the DIP Facility, the Interim Advance of up to $4,000,000, subject to the terms and

conditions set forth in the DIP Loan Documents and this Interim Order.  Once repaid, the DIP

Facility Loans incurred may not be re-borrowed.

4.    <u>Use of DIP Facility Proceeds</u>.  The Debtors shall use advances of credit under the

DIP Facility (the "**DIP Facility Loans**") only for the express purposes specifically set forth in this

Interim Order and the DIP Loan Documents.  The Debtors are authorized to use the proceeds of

the DIP Facility Loans to (a) fund the postpetition working capital needs of the Debtors during the

pendency of the Chapter 11 Cases, (b) pay fees, costs and expenses of the DIP Facility on the terms

and conditions described in the DIP Loan Documents, (c) roll-up the outstanding Additional Term

Loan Obligations into DIP Obligations, subject to the rights preserved in paragraph 16 of this

Interim Order, and (d) pay the allowed administrative costs and expenses of the Chapter 11 Cases,

in each case, solely in accordance with the DIP Loan Documents (including, but not limited to, the

13

Budget) and this Interim Order.  Notwithstanding anything herein, the extensions of credit under

the DIP Facility shall not constitute Cash Collateral of the Prepetition Secured Parties.

5.      <u>Roll-up Loan</u>.  Upon entry of the Interim Order and the occurrence of the Closing

Date (as defined in the DIP Loan Documents), without further action by the Debtors or any other

party, all Additional Term Loan Obligations will be immediately, automatically, and irrevocably

deemed to have been converted into DIP Roll-Up Obligations, and such DIP Roll-Up Obligations

shall constitute DIP Obligations and shall be entitled to all the priorities, privileges, rights, and

other benefits afforded to the other DIP Obligations under this Interim Order and the DIP Loan

Documents (subject to the rights of the Debtors and other parties in interest pursuant to paragraph

16 of this Interim Order). The conversion of the DIP Roll-Up Obligations as described in this

paragraph 5 shall be authorized as compensation for, in consideration for, as a necessary

inducement for, and on account of the agreement of the DIP Lender to fund amounts under the

DIP Facility and not as payments under, adequate protection for, or otherwise on account of, any

Prepetition Obligations. As used herein, the term "**<u>DIP Roll-Up Obligations</u>**" shall mean the Roll-

Up Loan and all interest accrued and accruing thereon after the conversion into DIP Roll-Up

Obligations and all other amounts owing by the respective Debtors in respect thereof after the

conversion into the DIP Roll-Up Obligations.

6.      <u>Budget and DIP Facility Reporting</u>.  Except as otherwise provided herein or

approved by the DIP Lender, the proceeds from the DIP Facility shall be used only in compliance

with the terms of the DIP Loan Documents.  The Debtor shall comply with the reporting

requirements and obligations set forth in the DIP Credit Agreement.

14

7.      Payment of DIP Facility Fees and Expenses.

(a)      The (a) Commitment Fee; (b) Funding Fee; (c) Work Fee, which shall serve as a retainer for the DIP Lender's counsel; (d) Exit Fee; and (e) Stated Maturity Fee are each hereby approved and the Debtors are hereby authorized and directed to and shall pay such fees in accordance with, and on the terms set forth in this Interim Order and the DIP Loan Documents.

(b)      The Debtors are also hereby authorized and directed to pay upon demand, all other fees, costs, expenses and other amounts payable under the terms of this Interim Order and the DIP Loan Documents and all other reasonable fees and out-of-pocket costs and expenses of the DIP Lender in accordance with the terms of this Interim Order and the DIP Loan Documents (including, without limitation, the reasonable and documented postpetition fees and out-of-pocket costs and expenses of Arent Fox LLP as counsel and local counsel to the DIP Lender to the extent not covered by the portion of the Work Fee paid prior to the Petition Date), subject to receiving a written invoice therefor.  None of such fees, costs, expenses or other amounts shall be subject to Court approval except as otherwise provided herein or required to be submitted in any particular format, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided, however, that copies of any such invoices shall be provided contemporaneously to the U.S. Trustee, any official committee of unsecured creditors appointed in these Chapter 11 Cases (the "**Committee**") and the Citizens Secured Parties; provided further, however, that such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information (the "**Redactions**"), and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  If the U.S. Trustee, the Committee or the Citizens Secured Parties objects

15

to the reasonableness of the fees and expenses of the DIP Lender, and such objection cannot be resolved within fourteen (14) days of receipt of such invoices, the objecting party may file with the Court and serve on the DIP Lender, an objection to the reasonableness of such fees and expenses (each, a "**Reasonableness Fee Objection**").  Without limiting the foregoing, if any party objects to the Redactions and such objection cannot be resolved within fourteen (14) days of receipt of such invoices, the DIP Lender shall file with the Court and serve on the Debtors, the Committee, the U.S. Trustee and the Citizens Secured Parties a request for Court resolution of the disputes concerning the propriety of the disputed Redactions (each, a "**Redaction Fee Objection**," and each Reasonableness Fee Objection and Redaction Fee Objection may be referred to herein generally as a "**Fee Objection**"). The Debtors shall pay, in accordance with the terms and conditions of this Interim Order and the Final Order, within fourteen (14) days after receipt of the applicable invoice (a) the full amount invoiced if no Fee Objection has been timely filed, and (b) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed.  All such unpaid fees, costs, expenses and other amounts owed or payable to the DIP Lender shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations  under this Interim Order, and the DIP Loan Documents.

8.    Indemnification.   The Debtors are hereby authorized to and hereby agree to indemnify and hold harmless the DIP Lender and its affiliates, directors, officers, employees, agents, attorneys, or any other Person affiliated with or representing the DIP Lender (collectively, an "**Indemnified Party**") from and against: (a) all obligations, demands, claims, damages, losses and liabilities (including, without limitation, reasonable fees and disbursements of counsel) (collectively, "**Indemnity Claims**") as set forth in the DIP Loan Documents including those asserted by any other party in connection with the transactions contemplated by the DIP Loan

16

Documents; and (b) all losses or expenses incurred, or paid by the DIP Lender from, following, or

arising from the transactions contemplated by the DIP Loan Documents (including reasonable and

documented attorneys' fees and expenses), except for Indemnity Claims and/or losses directly

caused by the DIP Lender's gross negligence, or willful misconduct or bad faith of the DIP Lender.

In the case of an investigation, litigation or other proceeding to which the indemnity in this

paragraph applies, such indemnity shall be effective whether or not such investigation, litigation

or proceeding is brought by any of the Debtors or any of their respective directors, security holders

or creditors, an Indemnified Party or any other Person or an Indemnified Party is otherwise a party

thereto and whether or not the transactions contemplated hereby are consummated.  No

Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise)

to any Debtor or any of its subsidiaries or any shareholders or creditors of the foregoing for or in

connection with the transactions contemplated hereby, except to the extent such liability is

determined by a court of competent jurisdiction in a final non-appealable judgment or order to

have resulted solely from such Indemnified Party's gross negligence, willful misconduct or

material breach of the DIP Loan Documents.  All indemnities of the Indemnified Parties shall

constitute DIP Obligations secured by the DIP Collateral and afforded all of the priorities and

protections afforded to the DIP Obligations under this Interim Order, the Final Order and the DIP

Loan Documents.

   9. <u>DIP Superpriority Claims</u>.  In accordance with section 364(c)(1) of the Bankruptcy

Code, the DIP Obligations shall constitute allowed senior administrative expense claims against

each Debtor and their estates (the "**<u>DIP Superpriority Claims</u>**") with priority in payment over

any and all administrative expenses at any time existing or arising, of any kind or nature

whatsoever, including, without limitation, the kinds specified or ordered pursuant to any provision

of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to the entry of the Final Order with respect to section 506(c) only), 507(a), 507(b), 726, 1113 and 1114 of the Bankruptcy Code or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, that the DIP Superpriority Claims shall be subject to and subordinate to only the Carve-Out; provided, further that the DIP Superpriority Claims shall have recourse to and be payable from all prepetition and postpetition property and assets of the Debtors and the estates and all DIP Collateral and all proceeds thereof, and (a) any and all avoidance power claims or causes of action under sections 544, 545, 547, 548 through 551 and 553(b) of the Bankruptcy Code (the "**Avoidance Actions**") and the proceeds thereof, (b) prepetition tort claims, including claims against the Debtors' current and former directors and officers (if any) and the proceeds thereof; and (c) any deposit in connection with a proposed Sale (whether terminated or otherwise) that becomes property of the Debtors' estates (a "**Sale Deposit**") subject, however, only to the senior lien rights of a stalking horse purchaser and such stalking horse bid protections as may be approved by this Court.

10.    DIP Liens.

(a)    Effective immediately as of the entry of this Interim Order, as security for the DIP Obligations, the DIP Lender is granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (collectively, the "**DIP Liens**") on all DIP Collateral as collateral security for the prompt and complete performance and payment when due (whether at the Stated Maturity Date (i.e. March 31, 2020), by acceleration, or otherwise) of the DIP Obligations. The term "**DIP Collateral**" means

18

collectively all prepetition and postpetition real property and all prepetition and postpetition

tangible and intangible personal property of each Borrower, in each case wherever located and

whether now owned or hereafter acquired, including, but not limited to, all accounts, contracts

rights, chattel paper, cash, general intangibles, investment property, machinery, equipment, goods,

inventory, furniture, fixtures, letter of credit rights, books and records, deposit accounts,

documents, instruments, commercial tort claims rents, avoidance actions under section 549 and

related recoveries under section 550 of the Bankruptcy Code, together with all proceeds of each of

the following, including insurance proceeds (as each such term above is defined in the UCC, to

the extent applicable), and, including the proceeds and recoveries from Avoidance Actions (the

"**Avoidance Action Proceeds**").   Notwithstanding anything to the contrary herein, DIP Collateral

shall not include the Debtors' real property leases, but only the proceeds, products, and offspring

thereof.

      (b)     Subject to the entry of the Final Order, to the fullest extent permitted by the

Bankruptcy Code or applicable law, and except as otherwise set forth herein, any provision of any

lease other than a real property lease, loan document, easement, use agreement, proffer, covenant,

license, contract, organizational document, or other instrument or agreement that requires the

consent or the payment of any fees or obligations to any entity in order for any of the Debtors to

pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the

proceeds thereof or other DIP Collateral, shall have no force or effect with respect to the DIP Liens

on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment

and/or sale thereof by any Debtor, in favor of the DIP Lender in accordance with the terms of the

DIP Loan Documents, or this Interim Order.

11.     <u>Priority of DIP Liens</u>.

(a)     To secure the DIP Obligations, immediately upon and effective as of entry of this Interim Order, the DIP Lender, is hereby granted on a final basis, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected first priority DIP Liens in the DIP Collateral as follows, in each case subject to the Carve-Out:

(i)     *Liens Priming the Prepetition Citizens Liens*.  Pursuant to section 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority senior priming liens and security interests in all DIP Collateral, regardless of where located, which senior priming liens and security interests in favor of the DIP Lender shall be senior to all Prepetition Citizens Liens.  For the avoidance of doubt, as a result of the priming of the Prepetition Citizens Liens pursuant to this Interim Order, the DIP Lender shall have a first priority senior priming lien and security interest in, among other things, (A) all of the assets of Debtors and its debtor and non-debtor Subsidiaries, including, but not limited to, the "Collateral" as defined in the Prepetition Credit Agreement, and (B) the Debtors' prepetition and postpetition commercial tort claims, including but not limited to all claims and causes of action (i) against the Debtors' officers and directors, and (ii) all other prepetition tort claims, and the proceeds thereof (regardless of whether such proceeds arise from damages to the Prepetition Collateral);

(ii)     *Liens on Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in all DIP Collateral that is not otherwise subject to any valid, enforceable, and non-avoidable liens on and security interests in the DIP Collateral that (A) were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code), (B) are not subject to avoidance, disallowance, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (C) are senior in priority to the DIP  Liens under applicable law and after giving effect to any lien release, subordination or inter-creditor agreements, including the Great Western Senior Liens (each a "**<u>Permitted Prior Lien</u>**"); provided, however, that the DIP Liens shall have priority over all Prepetition Citizens Liens; and

(iii)     *Liens Junior to Certain Other Liens*.  Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected junior liens on and security interests in all DIP Collateral (other than as set forth in clauses (i) and (ii)) subordinate only to the Permitted Prior Liens.

(b)      Except as expressly set forth herein, the DIP Liens and the DIP Superpriority

Claims shall not be made junior to or *pari passu* with (1) any lien, security interest or claim

heretofore or hereinafter granted in any of the Chapter 11 Cases or any successor cases, and shall

be valid and enforceable against the Debtors, their estates, any trustee or any other estate

representative appointed or elected in the Chapter 11 Cases or any successor cases and/or upon the

dismissal or conversion of any of the Chapter 11 Cases or any successor cases, (2) any lien that is

avoided and preserved for the benefit of the Debtors and their estates under section 551 of the

Bankruptcy Code or otherwise, (3) any intercompany or affiliate lien or claim, and (4) subject to

entry of the Final Order, any liens arising after the Petition Date excluding any liens or security

interests granted in favor of any federal, state, municipal or other governmental unit, commission,

or board for any liability of the Debtors.

12.    Use of Cash Collateral.  The Debtors are authorized to use Cash Collateral to fund the

postpetition working capital needs of the Debtors during the pendency of the Chapter 11 Cases

that are not funded with the DIP Facility Loans and to pay the allowed administrative costs and

expenses of the Chapter 11 Cases not funded by the DIP Facility Loans, each solely in accordance

with the Budget and this Interim Order, provided that the Debtors' variance from the line items on

the Budget shall be no more than: 20% of the line items set forth in the Budget for the first week

after the Petition Date, 15% of the line items set forth in the Budget for the second week of the

Budget after the Petition Date, and thereafter, 10% of the average of the line items set forth in the

Budget for the prior four week period.  The initial Budget (as amended) is filed with the Court as

Docket No. 46.  The Debtors shall: (a) commencing on the first Wednesday to occur after the entry

of this Interim Order and on the Wednesday of each week thereafter, prepare and deliver to the

DIP Lender and the Citizens Secured Parties (x) a report showing actual cash receipts and

disbursements for the line items set forth in the Budget for the preceding Wednesday through the following Tuesday and (y) a written explanation of all material variances; and (b) update and roll-forward the proposed Budget no less frequently than every four (4) weeks or at such other interval as agreed to by the DIP Lender and the Citizens Secured Parties, each such amended Budget shall be delivered no later than Wednesday of each week for the week immediately prior.  Each proposed Budget shall only become a Budget for the use of Cash Collateral and DIP Obligations as set forth in this Interim Order when it is agreed upon by the Debtors and DIP Lender, in consultation with the Prepetition Secured Parties, provided, however, any modifications to the Case Professionals' fees and expenses in the Budget shall require the consent of the Prepetition Secured Parties. After the payment in full of the DIP Obligations, each proposed Budget shall only become a Budget for the use of Cash Collateral as set forth in this Interim Order when it is agreed upon by the Debtors and the Prepetition Secured Parties._ The Debtors' use of Cash Collateral shall automatically terminate upon the occurrence of an Event of Default (as defined below).

13.    <u>Adequate Protection of Prepetition Secured Parties</u>.   The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(c)(2), 363(e) and 507 of the Bankruptcy Code, to adequate protection of their interests in all the Prepetition Collateral, including Cash Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reasons provided under the Bankruptcy Code.  In consideration for the foregoing, the Prepetition Secured Parties, are hereby granted the following in the amount of such diminution (collectively, the "**<u>Adequate Protection Obligations</u>**"):

(a)    *Adequate Protection Liens.*  The Prepetition Agent, on behalf of itself and the Prepetition Lenders, is hereby granted (effective and perfected upon the date of this Interim

Case 19-43756   Doc 48   Filed 12/20/19   Entered 12/20/19 12:08:09   Desc Main
Document     Page 23 of 43

Order and without the necessity of any mortgages, security agreements, pledge agreements, financing statement or other agreements), in the amount equal to the aggregate diminution in value of the interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reasons provided under the Bankruptcy Code (the "**Adequate Protection Claim**"), a valid, perfected replacement security interest in and lien on all prepetition and postpetition property and assets of the Debtors and the estates, including the DIP Collateral and all proceeds thereof (the "**Adequate Protection Collateral**"), subordinate only to (A) the DIP Liens and any liens to which the DIP Liens are junior and (B) the Carve-Out (the "**Adequate Protection Liens**"). Notwithstanding anything to the contrary herein, the Adequate Protection Collateral shall not include the Debtors' real property leases, but only the proceeds, products, and offspring thereof.

(b)    *507(b) Claims.* The Prepetition Agent, on behalf of itself and the Prepetition Lenders, is hereby granted, an allowed superpriority administrative expense claim as provided in section 507(b) of the Bankruptcy Code in the amount of the Adequate Protection Claim with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**507(b) Claims**"); which 507(b) Claims shall have recourse to and be payable from the Adequate Protection Collateral.  The 507(b) Claims shall, in all instances, be subject and subordinate only to (A) the Carve-Out and (B) the DIP Superpriority Claims.  The Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c)     *Citizens Secured Parties Information.*  As additional adequate protection of the Citizens Secured Parties' security interests in the Prepetition Collateral, the Debtors shall contemporaneously provide the Citizens Secured Parties with any reporting provided to the DIP Lender under the DIP Credit Agreement.

(d)     *Citizens Secured Parties Fees.*  The Debtors are also hereby authorized and directed to pay upon demand, all reasonable fees and out-of-pocket costs and expenses of the Citizens Secured Parties which amount shall not exceed the aggregate amount per month as set forth in the Budget, in accordance with the terms of this Interim Order and the Prepetition Loan Documents (including, without limitation, the reasonable and documented postpetition fees and out-of-pocket costs and expenses of counsel and financial advisors to the Citizens Secured Parties), subject to receiving a written invoice therefor.  None of such fees, costs, expenses or other amounts shall be subject to Court approval except as otherwise provided herein or required to be submitted in any particular format, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided, however, that copies of any such invoices shall be provided contemporaneously to the U.S. Trustee, the Committee and the DIP Lender; provided further, however, that such invoices may include the Redactions and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  If the U.S. Trustee, the Committee or the DIP Lender objects to the reasonableness of the fees and expenses of the Citizens Secured Parties, and such objection cannot be resolved within fourteen (14) days of receipt of such invoices, the objecting party may file with the Court and serve on the Citizens Secured Parties, a Reasonableness Objection.  Without limiting the foregoing, if any party objects to the Redactions and such objection cannot be resolved within fourteen (14) days of receipt of such invoices, the Citizens

Secured Parties shall file with the Court and serve on the Debtors, the Committee, the U.S. Trustee and the DIP Lender a request for Court resolution a Redaction Fee Objection. The Debtors shall pay, in accordance with the terms and conditions of this Interim Order and the Final Order, within fourteen (14) days after receipt of the applicable invoice (a) the full amount invoiced if no Fee Objection has been timely filed, and (b) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed.  All such unpaid fees, costs, expenses and other amounts owed or payable to the Citizens Secured Parties shall be secured by the Collateral and afforded all of the priorities and protections afforded to the Adequate Protection Obligations under this Interim Order.

14.    Carve-Out.

(a)    *Carve-Out*.  As used in this Interim Order, the term "**Carve-Out**" means, collectively, the sum of:  (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. §1930(a) and section 31 U.S.C. § 3717; (ii) the reasonable fees and expenses up to $15,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) the aggregate amount of unpaid, but funded into the Escrow per the terms below, fees and expenses of the Debtors and the Committee (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under sections 327(a), 328 or 1103(a) of the Bankruptcy Code (the "**Case Professionals**"), to the extent such fees and expenses are allowed and payable pursuant to an order of the Court (which order has not been reversed, vacated or stayed) ("**Allowed Professional Fees**"), and $2,500 of the aggregate unpaid out-of-pocket expenses allowed by the Court and incurred by the members of the Committee in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members) ("**Committee Expenses**"), which amount under this clause (iii) shall not exceed the sum of: (x)

an aggregate amount per week limited to the amount set forth in the Budget for Allowed Professional Fees and Committee Expenses incurred prior to the delivery of a Carve-Out Trigger Notice and escrowed each month with counsel for Debtors, provided (i) the Maturity Date has not occurred or (ii) Event of Default has not occurred or continuing (the "**Pre Carve-Out Notice Trigger Cap**") plus (y) $75,000 for Allowed Professional Fees and Committee Expenses incurred from and after the delivery of the Carve-Out Trigger Notice (defined below), less any outstanding amount of retainers received by the Case Professionals prior to the Petition Date (the "Post Carve-Out Notice Cap" together, with the Pre Carve-Out Notice Trigger Cap, the "**Carve-Out Cap**"). Each month, Debtors shall pay the amount of the fees and expenses incurred by the Case Professionals (so long as such amounts are equal to or less than the amounts set forth in the Budget for such month), into the client trust account maintained by the Debtors' counsel (the "**Escrow**"). Once such fees and expenses are deemed Allowed Professional Fees they shall be distributed to the respective recipients from the Escrow.  No portion of the Carve-Out or any Cash Collateral may be used in violation of this Interim Order.  Nothing in this Interim Order or otherwise shall be construed to increase the Carve-Out if actual (i) Allowed Professional Fees of any Case Professional or (ii) Committee Expenses are higher in fact than Carve-Out Cap amount.

(b)      *Carve-Out Trigger Notice*.  As used herein, the term "Carve-Out Trigger Notice" means a written notice provided by the DIP Lender or the Prepetition Secured Parties to the Debtors, counsel to the Committee, and the U.S. Trustee that the Post Carve-Out Notice Trigger Cap is invoked, which notice may be delivered following the occurrence and during the continuance of an Event of Default and/or acceleration of the DIP Obligations under the DIP Loan Documents, provided the Prepetition Secured Parties may only deliver such notice when an Event of Default occurs under paragraph 25(b) below.  Upon delivery of the Carve-Out Trigger Notice

26

to the Debtors (the "Termination Declaration Date"), the Debtors shall provide notice by email and facsimile to all Case Professionals, at the email addresses and facsimile numbers set forth in each Professional's notice of appearance filed with the Bankruptcy Court (or, if there is no such notice of appearance, at such Professional's last known email address and facsimile number) within one (1) day after the Debtors' receipt of a Carve-Out Trigger Notice informing them that such Carve-Out Trigger Notice has been received and further advising them that the Debtors' ability to pay such Case Professionals is subject to and limited by the Post Carve-Out Notice Trigger Cap.

(c)     *Payment of Allowed Professional Fees Prior to Termination Declaration Date*.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)     *Payment of Carve-Out on or After the Termination Declaration Date*.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out by funds from the DIP Facility Loans shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

(e)     *Objection Rights*.  Nothing contained herein is intended to constitute, nor shall be construed as consent to the allowance of any Case Professional's fees, costs and expenses by any party and shall not affect the rights of the Debtors, the DIP Lender, the Citizens Secured Parties or any other party in interest to object to the allowance and/or payment of any such amounts incurred or requested.

(f)     *Notwithstanding* the foregoing, all compensation and reimbursement of expenses awarded under the terms of the Carveout may be subject to disgorgement under 11 U.S.C. § 329.

15.     <u>Limitations on Use of DIP Proceeds, Cash Collateral and Carve-Out</u>. The DIP Facility, the DIP Collateral, the Prepetition Collateral, the Adequate Protection Collateral, the Cash Collateral and the Carve-Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Lender or the Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral, Adequate Protection Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral without the permission of the DIP Lender and the Prepetition Secured Parties or selling or otherwise disposing of DIP Collateral without the consent of the DIP Lender or as permitted by the DIP Loan Documents; (c) after payment in full of the DIP Obligations, selling or otherwise disposing of Adequate Protection Collateral without the consent of the Prepetition Secured Parties; (d) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Lender and the Prepetition Secured Parties; (e) seeking to amend or modify any of the rights granted to the DIP Lender or the Prepetition Secured Parties under this Interim Order, the DIP Loan Documents, or the Prepetition Loan Documents, including seeking to use Cash Collateral, Adequate Protection Collateral and/or DIP Collateral on a contested basis; (f) litigating, objecting to, challenging or contesting in any manner in any way the DIP Liens, DIP Obligations, DIP Superpriority Claims, the Prepetition Secured Obligations, DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, the Adequate Protection Obligations,  the Adequate Protection Claims, the 507(b) Claims, the Adequate Protection Collateral (including Cash Collateral), the Adequate Protection  Liens or any other claims, held by or on behalf of any of the DIP Lender or the Prepetition Secured Parties,

28

respectively; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, Avoidance Actions or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Lender, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Secured Obligations, the Prepetition Citizens Liens, the Adequate Protection Liens or any other liens or interests of any of the DIP Lender or the Prepetition Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations, the Adequate Protection Obligations or the Prepetition Secured Obligations; provided, however, that the Carve Out and such collateral proceeds and loans under the DIP Loan Documents may be used for allowed fees and expenses, in an amount not to exceed $10,000 in the aggregate (the "**Investigation Budget Amount**"), incurred solely by a Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Citizens Liens within thirty (30) calendar days following appointment of the Committee.  Notwithstanding anything to the contrary, any fees, expenses or costs incurred by the Committee or its professionals in excess of the Investigation Budget Amount or in excess of the amount budgeted for Committee's Case Professionals set forth in the Budget shall not constitute an allowable administrative expense claim, including for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.

16.     Effect of Stipulation on Third Parties.

(a)     *Generally*. The admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order (collectively, the "**Prepetition Lien and Claim Matters**") are and

shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, a Committee (if appointed), unless, and solely to the extent that, a party in interest that has sought and obtained standing and the requisite authority to commence a Challenge (as defined below) (other than the Debtors, as to which any Challenge is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 16 of this Interim Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") by no later than sixty (60) days following the entry of the Interim Order for any party in interest with requisite standing (each the "**Challenge Deadline**"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Secured Parties, or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.

(b)    *Binding Effect*. To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition

Lien and Claim Matters shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Chapter 11 Cases, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above, and only as to plaintiffs or movants that have complied with the terms hereof. To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to payment of the reasonable related costs and expenses, including, but not limited to reasonable attorneys' fees, incurred under the Prepetition Loan Documents in defending themselves in any such proceeding as adequate protection. Upon a successful Challenge brought pursuant to this paragraph 16, the Court may fashion any appropriate remedy.

17.    Bankruptcy Code Sections 506(c) and 552(b) Waivers.  Subject to entry of a Final Order, without limiting the Carve-Out, the Debtors irrevocably waive and shall be prohibited from asserting (i) any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lender upon the DIP Collateral or by the Prepetition Secured Parties upon the Adequate Protection Collateral and no costs or expenses of administration that have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against the DIP

31

Lender, the Prepetition Secured Parties or their respective claims or liens (including any claims or liens granted pursuant to this Interim Order), and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code in connection with the DIP Facility and the use of Cash Collateral.

18.   <u>Application of Proceeds</u>.  Subject to the entry of the Final Order, in no event shall the DIP Lender, with respect to the DIP Collateral, or the Prepetition Secured Parties, with respect to the Adequate Protection Collateral, be subject to the equitable doctrine of "marshaling" or any other similar doctrine, and all proceeds of such DIP Collateral and Adequate Protection Collateral shall be received and used in accordance with this Interim Order.

19.   <u>Disposition of Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, other than in the ordinary course of business or in connection with the payments contemplated under this Interim Order, without the prior written consent of the DIP Lender (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lender or from any order of this Court); provided for the avoidance of doubt the Debtors shall comply with Section 6.4 of the DIP Credit Agreement. Notwithstanding anything otherwise provided herein, 100% of any net cash proceeds of any sale of DIP Collateral outside of the ordinary course of business shall, subject to the satisfaction of the Carve-Out and the lien priorities outlined in paragraph 11 herein, be used to immediately satisfy the DIP Obligations.  Following payment in full of the DIP Obligations, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Adequate Protection Collateral, other than in the ordinary course of business or in connection with the payments contemplated under this Interim Order, without the prior written consent of the Prepetition Secured Parties (and no such consent shall be implied from any other action, inaction or acquiescence by

32

the Prepetition Secured Parties or from any order of this Court).  Notwithstanding anything

otherwise provided herein, following payment in full of the DIP Obligations, 100% of any net cash

proceeds of any sale of Adequate Protection Collateral outside of the ordinary course of business

shall, subject to the satisfaction of the Carve-Out and the lien priorities outlined in paragraph 11

herein, be used to immediately satisfy the Adequate Protection Obligations and next to satisfy the

Prepetition Secured Obligations.

20.    <u>Restrictions on Granting Postpetition Liens</u>.    Other than the Carve-Out or as

otherwise provided in this Interim Order, the Final Order or the DIP Loan Documents, no claim

or lien having a priority superior or *pari passu* with those granted by this Interim Order to the

Prepetition Secured Parties and the DIP Lender shall be granted or permitted by any order of this

Court in the Chapter 11 Cases heretofore or hereafter, and the Debtors will not grant any such

mortgages, security interests or liens in the DIP Collateral (or any portion thereof) or the Adequate

Protection Collateral (or any portion thereof) or to any other parties pursuant to section 364(d) of

the Bankruptcy Code or otherwise, while (i) any portion of the DIP Facility, any DIP Facility

Loans or any other DIP Obligations, are outstanding, (ii) the DIP Lender has any Commitment

under the DIP Loan Documents or (iii) the Prepetition Secured Obligations and/or the Adequate

Protection Obligations are outstanding.  For avoidance of doubt, there shall be no restriction and

this paragraph shall not apply to and excludes any liens or security interests granted in favor of

any federal, state, municipal or other governmental unit, commission, board or court for any

liability of the Debtors.

21.    <u>Automatic Effectiveness of Liens</u>.  The DIP Liens and the Adequate Protection

Liens shall not be subject to a challenge and shall attach and become valid, perfected, binding,

enforceable, non-avoidable and effective by operation of law as of the date of the entry of this

Interim Order on a final basis, without any further action by the Debtors, the DIP Lender or the

Prepetition Secured Parties, respectively, and without the necessity of execution by the Debtors or

the filing or recordation, of any financing statements, security agreements, deposit control

agreements, vehicle lien applications, mortgages, filings with a governmental unit (including,

without limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other

documents or the taking of any other actions.  All DIP Collateral shall be free and clear of other

liens, claims and encumbrances, except as provided in the DIP Loan Documents, and this Interim

Order.   All Adequate Protection Collateral shall be free and clear of other liens, claims and

encumbrances, except as provided in this Interim Order.  If the DIP Lender or the Prepetition

Secured Parties hereafter requests that the Debtors execute and deliver to such party financing

statements, security agreements, pledge agreements, control agreements, collateral assignments,

mortgages, or other instruments and documents considered by the DIP Lender or the Prepetition

Secured Parties to be reasonably necessary or desirable to further evidence the perfection of the

DIP Liens or the Adequate Protection Liens, as applicable, the Debtors are hereby authorized and

directed to execute and deliver such financing statements, security agreements, pledge agreements,

control agreements, mortgages, collateral assignments, instruments, and documents, and the DIP

Lender and/or the Prepetition Secured Parties, as appropriate, are hereby authorized to file or

record such documents in its discretion without seeking modification of the automatic stay under

section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have

been filed or recorded at the time and on the date of the entry of this Interim Order; provided,

however, no such filing or recordation shall be necessary or required in order to create or perfect

the DIP Liens or the Adequate Protection Liens.  The DIP Lender and the Prepetition Secured

Parties, in their respective sole discretion, may file a photocopy of this Interim Order as a financing

34

statement with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such financing statements, notices of liens or similar statements.[3]

22.     <u>Protection Under Section 364(e) of the Bankruptcy Code</u>.  The DIP Lender and the Prepetition Secured Parties have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.  For the avoidance of doubt, the DIP Lender is entitled to all the protections of section 364(e) of the Bankruptcy Code.

23.     <u>Reservation of Rights of the DIP Lender and the Prepetition Secured Parties</u>. Notwithstanding any other provision of this Interim Order to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (i) any of the rights of the DIP Lender or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of such parties to (a) request modification of the automatic stay of section 362 of the Bankruptcy Code, (b) request dismissal of any of these Chapter 11 Cases, conversion of any of these Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of these Chapter 11 Cases, (c) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (ii) any other rights, claims, or privileges (whether legal or equitable or otherwise) of the DIP Lender or the Prepetition Secured Parties.  The delay in or failure of the DIP Lender or the Prepetition Secured Parties to seek relief or otherwise exercise their respective rights and remedies shall not constitute a waiver of any of the DIP Lender's or the Prepetition Secured Parties' rights and remedies.

---

[3] The provisions of section 1146(a) of the Bankruptcy Code do not apply herein.

24.     <u>Right to Credit Bid</u>.  Pursuant to section 363(k) of the Bankruptcy Code, unless the Court orders otherwise for cause as provided under section 363(k) of the Bankruptcy Code, the DIP Lender shall have the right to credit bid the total of the DIP Obligations for any or all of the DIP Collateral at a sale, lease or other disposition of such DIP Collateral outside the ordinary course of business (including any auction or similar sales), whether pursuant to a plan of reorganization or a motion pursuant to section 363 of the Bankruptcy Code or otherwise (which credit bid rights under section 363(k) of the Bankruptcy Code or otherwise shall not be impaired in any manner).  Pursuant to section 363(k) of the Bankruptcy Code, unless the Court orders otherwise for cause as provided under section 363(k) of the Bankruptcy Code, the Prepetition Secured Parties shall have the right to credit bid the total of the Prepetition Secured Obligations and the Adequate Protection Obligations for any or all of the Adequate Protection Collateral and the Prepetition Collateral at a sale, lease or other disposition of such Adequate Protection Collateral and/or Prepetition Collateral outside the ordinary course of business (including any auction or similar sales), whether pursuant to a plan of reorganization or a motion pursuant to section 363 of the Bankruptcy Code or otherwise (which credit bid rights under section 363(k) of the Bankruptcy Code or otherwise shall not be impaired in any manner), provided, however any such credit bid submitted by the Prepetition Secured Parties must include either (i) provisions for the satisfaction of any secured claims of the DIP Lender that are senior to the secured claim that forms the basis of the credit bid or (ii) evidence that the DIP Lender has affirmatively consented to any other treatment of its senior secured claim.  A credit bid may be applied only to reduce the cash consideration with respect to those assets in which the party submitting such credit bid holds a perfected security interest.  The DIP Lender and the Prepetition Secured Parties shall each be

36

considered a "Qualified Bidder" with respect to their rights to acquire all or any of the assets by credit bid.

25.    <u>Remedies and Notice Upon the Occurrence of Maturity Date or Event of Default</u>.

(a)    Prior to payment in full of the DIP Obligations, upon the occurrence of an Event of Default, the DIP Lender may file a motion for relief from the automatic stay upon three (3) days' notice to exercise all default-related rights and remedies against the DIP Collateral, without further order of or application or motion to the Bankruptcy Court, and without restriction or restraint by any stay under sections 362 and 105 of the Bankruptcy Code or otherwise, <u>provided however</u>, the only issue that may be raised by any party in opposition to such motion for relief from the automatic stay shall be whether in fact, an Event of Default has occurred and is continuing; provided further that, if an Event of Default occurs as a result of the Debtors' failure to indefeasibly satisfy the DIP Obligations by the Stated Maturity Date (as defined in the DIP Loan Documents), the Debtors and all other interested parties shall not have any challenge rights. Notwithstanding anything to the contrary herein, the DIP Lender may only enter upon a leased premises after an Event of Default if permitted by (i) the lease or related agreements with the landlords, (ii) applicable non-bankruptcy law, (iii) written consent of the landlord, or (iv) further court order on notice to the landlord with a reasonable opportunity to be heard;

(b) Following the payment in full of the DIP Obligations, an "Event of Default" shall occur hereunder on the earliest to occur of: (i) the effective date of a chapter 11 plan for each of the Debtors; (ii) the entry of an order by this Court terminating the use of Cash Collateral; (iii) the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (iv) the appointment of a trustee or examiner or other representative with expanded powers for the Debtors; (v) the dismissal of the Chapter 11 Cases; (vi) the Debtors' failure to perform any of their

obligations under this Interim Order or their failure to comply with any of the terms or conditions of this Interim Order; provided that no Event of Default shall have occurred under this subsection (vi) until the Prepetition Secured Parties has provided two business days' written notice of any such purported failure to perform to the Debtors, (vii) modification (without the express written consent of the Prepetition Secured Parties), reversal or vacatur of this Interim Order; (viii) the filing of a chapter 11 plan that does not provide for the indefeasible payment in full in cash of all amounts due and owing under the Prepetition Loan Documents and all of the Adequate Protection Obligations on the effective date of such plan, or that provides for the impairment of the Prepetition Secured Parties' claims or liens; (ix) the Court entering an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than Citizens Secured Parties, with respect to the Adequate Protection Collateral and/or the Prepetition Collateral having a value in excess of $150,000 without the written consent of the Prepetition Secured Parties, which consent may not be unreasonably withheld; (x) a filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the amount, validity, enforceability, perfection, priority or extent of the Prepetition Credit Liens, the Adequate Protection Liens, or asserting any other claims, counterclaims, causes of action, objections, contests or defenses against the Prepetition Credit Obligations, the Prepetition Collateral, the Prepetition Citizens Liens, the Adequate Protection Liens, and/or the 507(a) Claims; (xi) a filing of a motion for bidding procedures or a motion for the sale of any or all of a Debtors' assets that has not been made in consultation with the Prepetition Secured Parties; or (xii) the Debtors' failure to preserve or impair the right of the Prepetition Secured Parties to credit bid on any sale of the Adequate Protection Collateral and/or the Prepetition Collateral.  Upon the occurrence of an Event of Default under this subparagraph (b), the Citizens Secured Parties may file a motion for relief from the automatic stay

38

upon fourteen (14) days' notice to exercise all default-related rights and remedies against the Adequate Protection Collateral and/or the Prepetition Collateral, without further order of or application or motion to the Bankruptcy Court, and without restriction or restraint by any stay under sections 362 and 105 of the Bankruptcy Code or otherwise, provided however, the only issue that may be raised by any party in opposition to such motion for relief from the automatic stay shall be whether in fact, an Event of Default has occurred and is continuing.  Notwithstanding anything to the contrary herein, the Citizens Secured Parties may only enter upon a leased premises after an Event of Default if permitted by (i) the lease or related agreement with the landlords, (ii) applicable non-bankruptcy law, (iii) written consent of the landlord, or (iv) further court order on notice to the landlord with a reasonable opportunity to be heard.

26.    Modification of Stay.  Subject to the terms set forth herein, the automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms, rights, benefits, privileges, remedies and provisions of this Interim Order, and the DIP Loan Documents including without limitation, to permit the DIP Lender to exercise all rights and remedies provided for in the DIP Loan Documents and take any and all actions provided therein, in each case, without further notice, application to, order of or hearing before this Court, including those set forth in paragraph 25 of this Interim Order.

27.    Survival of DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Obligations and Other Rights.  If, in accordance with section 364(e) of the Bankruptcy Code, this Interim Order does not become a final non-appealable order, if a trustee terminates this Interim Order, or if any of the provisions of this Interim Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect the priority, validity, enforceability or

39

effectiveness of (or subordination to the Carve-Out of) any lien, security interests or any other benefit or claim authorized hereby with respect to any DIP Obligations or Adequate Protection Obligations incurred prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender and Citizens Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted herein, including the liens and priorities granted herein, with respect to any DIP Loan and Adequate Protection Obligations, subject to the Carve-Out.

28.     <u>Survival of this Interim Order</u>.

(a)     The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a chapter 7 case; or (iii) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Interim Order as well as the DIP Superpriority Claims, the DIP Liens in DIP Collateral granted pursuant to this Interim Order and the DIP Loan Documents, the Adequate Protection Liens, the 507(a) Claims, and the Adequate Protection Obligations shall continue in full force and effect notwithstanding the entry of any such order.

(b)     The DIP Liens and the DIP Superpriority Claims shall maintain their priority as provided by this Interim Order and the DIP Loan Documents, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full in cash and discharged or otherwise treated under a plan of reorganization, which is reasonably acceptable to the DIP Lender. In no event shall any plan of reorganization be allowed to alter the terms of

40

repayment of any of the DIP Obligations from those set forth in the DIP Loan Documents unless agreed to by and among the Debtors and the DIP Lender.

29.    <u>Modifications of DIP Loan Documents</u>.  The Debtors and the DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Loan Documents, any non-material modifications of the DIP Loan Documents without further notice, motion or application to, order of or hearing before, this Court.  Any material modification or amendment to the DIP Loan Documents shall only be permitted pursuant to an order of this Court, after being submitted to this Court upon five (5) days' notice to the U.S. Trustee, Citizens Secured Parties, and counsel to the Committee; <u>provided</u>, that any forbearance from, or waiver of, (i) a breach by the Debtors of a covenant representation or any other agreement or (ii) a default or an Event of Default, in each case under the DIP Loan Documents shall not require an order of this Court.  In the event of any inconsistency between this Interim Order and the DIP Credit Agreement, this Interim Order shall control.

30.    <u>Insurance Policies</u>.  Upon entry of this Interim Order, on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral: (i) the DIP Lender shall be, and shall be deemed to be, without any further action by or notice to any person, named as additional insureds; and (ii) the DIP Lender shall be and shall be deemed to be, without any further action by or notice to any person, named as loss payee for DIP Collateral on which the DIP Lien holds a first priority lien.  The Debtors are hereby authorized on a final basis, to and shall take any actions necessary to have the DIP Lender be added as an additional insured and loss payee on each insurance policy maintained by the Debtors consistent with this Interim Order and DIP Credit Agreement which in any way relates to the DIP Collateral.

31.    <u>Financial Information</u>.  The Debtors shall deliver to the DIP Lender and the Citizens Secured Parties such financial and other information concerning the business and affairs of the Debtors and any of the DIP Collateral and the Adequate Protection Collateral as may be required pursuant to the DIP Loan Documents, the Prepetition Loan Documents and/or as the DIP Lender or the Citizens Secured Parties shall reasonably request from time to time.  The Debtors shall allow the DIP Lender and the Citizens Secured Parties access to the premises in accordance with the terms of the DIP Loan Documents and the Prepetition Loan Documents for the purpose of enabling such parties to inspect and audit the DIP Collateral, the Adequate Protection Collateral and the Debtors' books and records.

32.    <u>Proofs of Claim</u>.  Notwithstanding any order entered by the Bankruptcy Court in relation to the establishment of a bar date in the Chapter 11 Cases to the contrary, or otherwise, the DIP Lender and the Prepetition Secured Parties shall not be required to file proofs of claim in the Chapter 11 Cases for any claim allowed herein.

33.    <u>PACA Creditors' Rights are Preserved</u>.  Nothing in this Interim Order shall be deemed to modify the rights of Bix Produce Company, LLC, Coastal Sunbelt Produce, LLC, Get Fresh Produce, Inc., Pizza Produce, LLC, and LaGrasso Bros., Inc. (together, the "**<u>Certain PACA</u>** **<u>Creditors</u>**"), or those of any other similarly-situated creditor arising under the provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, et seq. ("**<u>PACA</u>**").  All rights of the Certain PACA Creditors are expressly preserved, including any and all rights to object to any sale of the Debtors' assets in the event that there are not sufficient funds to pay in full the allowed claims of the PACA Creditors arising under PACA.

34.    <u>Adequate Protection to PACA Creditors</u>.  The Debtors shall segregate $250,000.00 for the exclusive benefit and sole purpose of satisfying approved prepetition claims of Certain

42

PACA Creditors (the "**Approved Certain PACA Creditors' Claims**") in connection with their statutory PACA rights and in accordance with the terms of any order by this Court approving the payment of claims arising under PACA.  Upon satisfaction of the Approved Certain PACA Creditors' Claims, the Debtors shall have access to the remaining funds in escrow for use in accordance with the terms of the Interim Order and Approved Budget.

35.    <u>Immediate Effect of Order</u>.  The terms and conditions of this Interim Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h) or otherwise.  Furthermore, to the extent applicable, the notice requirements and/or stays imposed by Bankruptcy Rules 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

36.    Nothing in this Order is intended to create an injunction, but injunctive relief may be sought.

Dated:  *December 20, 2019*

/e/ William J. Fisher

_____

William J. Fisher
United States Bankruptcy Judge

43