UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Jointly Administered under 19-43756 (WJF) |
| Granite City Food & Brewery Ltd. | 19-43756 |
| Granite City Restaurant Operations, Inc. | 19-43757 |
| Granite City of Indiana, Inc. | 19-43758 |
| Granite City of Kansas Ltd. | 19-43759 |
| Granite City of Maryland, Inc. | 19-43760 |
| Debtors. | Chapter 11 Cases |

**NOTICE OF HEARING AND MOTION FOR AN ORDER (I) GRANTING EXPEDITED RELIEF; (II) AUTHORIZING THE DEBTORS TO PAY PRE-PETITION REIMBURSABLE EXPENSE OBLIGATIONS; (III) AUTHORIZING THE DEBTORS TO PAY PRE-PETITION REIMBURSABLE OPERATING EXPENSES; AND (IV) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH RELIEF**

TO:   THE PARTIES-IN-INTEREST AS SPECIFIED IN LOCAL RULE 9013-3.

1. The above-named Debtors ("Debtors"), through their undersigned attorneys, move the court for the relief requested below and give notice of hearing.

2. A hearing on this motion (the "Motion") will be held at 2:00 p.m. on Wednesday, January 8, 2020, before the Honorable William J. Fisher, in Courtroom 2B, U.S. Courthouse, 316 North Robert Street, St. Paul, MN 55101.

3. Due to the request for expedited hearing, the Debtors will not object to the timeliness of any response that is filed and delivered to Debtors' counsel at least two (2) hours prior to the hearing. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4. This court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334,

12266547v3

Bankruptcy Rule 5005 and Local Rule 1070-1. The petitions commencing these cases were filed on December 16, 2019 (the "Petition Date"). These cases are now pending before this court.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This motion requests relief under 11 U.S.C. §§ 105(a), 363, 549, 1107 and 1108, and is filed pursuant to Local Rules 9013-1 through 9013-3. The Debtors seek an order (a) granting expedited relief, (b) authorizing the Debtors to pay prepetition Reimbursable Expense Obligations (as defined below) in the form of charges on American Express Green Cards for which employees have joint and several liability, and (c) authorizing the Debtors to pay prepetition Reimbursable Operating Expenses (as defined below) in the form of charges on an American Express Plum Card for which an employee has joint and several liability.

7. The Debtors, along with affiliated companies, own and operate Granite City and Cadillac Ranch restaurants in 13 states. The Debtors presently have approximately 2,200 employees.

8. Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the Declaration of Richard H. Lynch in Support of Chapter 11 Petitions and First Day Motions, filed on December 16, 2019.

9. On the Petition Date, the Debtors each filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' Chapter 11 cases. No creditors or other official committee has been appointed pursuant to Section 1102 of the Bankruptcy Code.

2

## AMERICAN EXPRESS GREEN CARDS

10. Prior to the Petition Date, the Debtors had opened a number of corporate American Express Green Cards (the "Green Cards") to pay for approved business expenses incurred on behalf of the Debtors in the scope of the employees' employment (collectively, the "Reimbursable Expense Obligations"). Reimbursable Expense Obligations typically include expenses for, among other things, air travel, meals, parking, mileage, and certain other business related expenses. Under the terms of the Cardholder Agreements, the Debtors and the employees in whose names the cards were issued have joint and several liability for debt incurred under the Green Cards.

11. The ordinary course of business for the Debtors prior to the Petition Date was to pay the full balance of the Green Cards each month on the due date.

12. As of the Petition Date, 25 employees had outstanding balances on their Green Cards totaling $148,906.17, including $97,479.06 of charges incurred during the period from October 23, 2019 through November 22, 2019. These charges were due and payable on December 23, 2019. The remaining outstanding balance is for charges incurred after November 22, 2019 and are due and payable around January 23, 2020. *See* attached **Exhibit A**.

13. The Reimbursable Expense Obligations are accounted for in the approved DIP Finance Budget, which was filed as Dkt. 46 and includes a line item for "Corp. Credit Card," in the form of expenditures of $90,000 during the week of December 24, 2019 and $90,000 during the week of January 21, 2020.

14. For most of the employees, the Reimbursable Expense Obligations are within the limits for priority under 11 U.S.C. § 507(a)(5) for employee benefits.

15. The Debtors will suffer irreversible and irreparable harm if they are not

authorized to pay the Reimbursable Expense Obligations. If these expenses are not reimbursed, the Debtors' employees will suffer personal hardship and may be forced to either pay the balances themselves or risk the negative ramifications of collection actions, including negative impacts on their credit ratings. Such a result would destroy employee morale and result in significant employee turnover, causing immediate damage to the Debtors' ongoing business operations.

## AMERICAN EXPRESS PLUM CARD

16. Also prior to the Petition Date, the Debtors had opened a corporate American Express Plum Card (the "Plum Card") to pay for the Debtors' Reimbursable Operating Expenses (the "Reimbursable Operating Expenses") in a way that increased cash flow flexibility, which was crucially important during the period before the identification of a source of debtor-in-possession financing. Reimbursable Operating Expenses typically included the full range of the Debtors' vendors including suppliers of produce, canned goods, cleaning supplies, carbon dioxide, uniforms, and repair services. *See* attached **Exhibit B**. Under the terms of the Cardholder Agreement, the Debtors and the employee in whose name the card was issued – namely, the Debtors' Chief Executive Officer – have joint and several liability for the Plum Card.

17. In each month from July 2019 through November 2019, the Debtors made payments on the Plum Card per the terms of the cardholder agreement.

18. As of the Petition Date, the Plum Card had an outstanding balance totaling $727,442.49, including $587,861.87 of charges incurred during the period from October 26, 2019 through November 25, 2019. The statement for these charges was issued on November 25, 2019 and was due and payable on December 20, 2019. The remaining outstanding balance is for

charges incurred after November 25, 2019 for a statement period closing on December 26, 2019 and will be due and payable around January 20, 2020.

19. The Debtors will suffer irreversible and irreparable harm if they are not authorized to pay the Reimbursable Operating Expenses. If these expenses are not reimbursed, the Debtors' key employee will suffer personal hardship and may be forced to either pay the balance himself or risk the negative ramifications of collection actions, including negative impacts on his credit rating. Such a result would destroy the key employee's morale and result in the loss of an employee who has extensive experience and relationships in the restaurant industry, causing immediate damage to the Debtors' ongoing business as well as the Debtors' ability to solicit higher and better bids for the purchase of the Debtors' business.

20. To avoid disruption of the Debtors' business, the Debtors should be authorized to make the payments sought in this Motion.

## **REQUEST FOR EXPEDITED RELIEF AND WAIVER OF STAY**

21. The Debtors request expedited hearing on this Motion. If the relief requested is not granted soon, the Debtors will face significant employee turnover, causing immediate damage to the Debtor's ongoing business operations and impairing the Debtors' ability to seek to increase the sale price of the Debtors' assets.

22. In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the Debtors require immediate relief to continue ordinary business operations for the benefit of all parties in interest. Accordingly, the Debtors submit that ample cause exists to

5

justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

23. No previous request for the relief sought herein has been made by the Debtors to this or any other court. Although the Debtors previously sought authorization to pay prepetition wages and employee benefits, that motion did not expressly request authorization to pay the Reimbursable Expense Obligations.

24. Pursuant to Local Rule 9013-2(a), this Motion is verified and accompanied by a memorandum of law, proposed order, and proof of service.

25. Pursuant to Local Rule 9013-2(c), the debtors give notice that they may, if necessary, call Richard H. Lynch, Chief Executive Officer of Debtors, to testify on behalf of the Debtors about the factual matters raised in this Motion.

WHEREFORE, the Debtors respectfully request that the Court grant the Motion and authorize the payment of Reimbursable Expense Obligations and for such other and further relief as the court may deem just and equitable.

**BRIGGS AND MORGAN, P.A.**

Dated: December 30, 2019

/e/ James M. Jorissen
By: _____
James M. Jorissen, #262833
Karl J. Johnson, #391211
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-977-8400
Facsimile: 612-977-8650
jjorissen@briggs.com
kjohnson@briggs.com

**PROPOSED COUNSEL FOR THE DEBTORS**

12266547v3

## VERIFICATION

I, Richard H. Lynch, Chief Executive Officer of the Debtors named in the foregoing motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated this 30th day of December, 2019.

_____
Richard H. Lynch

# EXHIBIT A

| Cardholder | Current balance due | Total outstanding |
|---|---:|---:|
| AMY KEEN | 3,594.56 | 5,481.62 |
| ANGELA PEREZ | 3,090.75 | 5,015.27 |
| ANGIE COMPTON | 7,194.30 | 13,145.25 |
| CADILLAC RANCH | 8,218.53 | 14,351.81 |
| CASEY CORNELL | 4,139.50 | 4,458.50 |
| COREY BIRKEY | 17,903.06 | 19,455.56 |
| CORRIN BERGLUND | 1,153.59 | 3,009.35 |
| EMILY SCOTT | 12,492.71 | 12,928.73 |
| JAMZ JOHNSON | 4,951.59 | 8,702.92 |
| JEFF ROMNESS | 4,132.00 | 5,866.05 |
| JEFFREY CRANE | 1,538.25 | 2,757.34 |
| JEREMY BEARD | - | 17.67 |
| JOSH KEEN | 78.00 | 928.75 |
| KENDALL TEWS | 389.52 | 713.51 |
| MATTHEW RAINOLDI | 3,251.12 | 6,527.67 |
| MICHAEL KOUSTRUP | 222.36 | 1,139.30 |
| MICHAEL MCBRIDE | 49.95 | 49.95 |
| NATHAN HJELSETH | 22.50 | 1,162.88 |
| NICK PERRY | 3,231.04 | 3,354.48 |
| NICOLE LANGELAND | 2,754.44 | 4,967.00 |
| PATRICK BOYLAND | 167.15 | 1,533.18 |
| RANDY NORMAN | 5,031.60 | 7,332.48 |
| ROBERT ROSENBOOM | 191.04 | 293.79 |
| RYAN NAB | 5,579.63 | 10,399.07 |
| TAMI SCHULTZ | 8,101.87 | 15,314.04 |
|  | 97,479.06 | 148,906.17 |

# EXHIBIT B

| Amount | | Appears On Your Statement As | | Category |
|---|---|---|---|---|
| 24,358.28 | PXY | FARMER BROTHENORTHLAKE | TX Total | F&B |
| 49,309.65 | PXY | GET FRESH PROBARTLETT | IL Total | F&B |
| 53,355.54 | PXY | KARLSBURGER FMONTICELLO | MN Total | F&B |
| 45,920.98 | PXY | LOFFREDO FRES(515)285-3367 | IA Total | F&B |
| 51,928.48 | PXY | SIGNATURECONCMINNETONKA | MN Total | F&B |
| 32,709.67 | PXY | NUCO2 LLC NUCSTUART | FL Total | F&B |
| 257,582.60 | | | | **F&B Total** |
| 6,993.22 | PXY | LITTLER MENDEKANSAS CITY | MO Total | Legal |
| 6,993.22 | | | | **Legal Total** |
| 4,866.81 | PXY | ICY HOT HYDRALAKE OSWEGO | OR Total | m&r |
| 3,627.52 | PXY | IN *HMS GROUPMIAMI | FL Total | m&r |
| 729.61 | PXY | NEPTUNE PLUMBCLEVELAND | OH Total | m&r |
| 6,670.04 | PXY | SAMCO FACILITLIVONIA | MI Total | m&r |
| 3,441.42 | PXY | ST. CLOUD REFSAINT CLOUD | MN Total | m&r |
| 10,417.17 | PXY | TECHNICAL HOTWESTLAND | MI Total | m&r |
| 3,703.14 | PXY | VASEY COMMERCZIONSVILLE | IN Total | m&r |
| 33,455.71 | | | | **m&r Total** |
| 18,018.00 | PXY | FISHBOWL DOT (703)836-3421 | VA Total | marketing |
| 9,285.98 | PXY | VISIONFRIENDLNAPERVILLE | IL Total | marketing |
| 27,303.98 | | | | **marketing Total** |
| 70,920.07 | PXY | ARAMARK UNIFO(800)504-0328 | KY Total | other |
| 2,084.77 | PXY | BG BRECKE, INCEDAR RAPIDS | IA Total | other |
| 17,225.00 | PXY | DISCOVERLINK,WEST CHICAGO | IL Total | other |
| 7,711.08 | PXY | ECOLABFOODSAF800-321-3687 | TX Total | other |
| 53.76 | PXY | FOREMOST BUSISAINT LOUIS P | MN Total | other |
| 5,005.50 | PXY | HOTSCHEDULES 4047994984 | GA Total | other |
| 8,273.27 | PXY | HOTSCHEDULES.ALPHARETTA | GA Total | other |
| 124,272.50 | PXY | NDG ST PAUL -651-638-8993 | MN Total | other |
| 12,231.41 | PXY | OFFICE DEPOT DELRAY BEACH | FL Total | other |
| 59,191.55 | PXY | OPENTABLE   800-673-6822 | CA Total | other |
| 9,500.00 | PXY | SCHECHTER DOKMINNEAPOLIS | MN Total | other |
| 500.00 | PXY | SPPLUS/CENTRA877-717-0004 | MI Total | other |
| 3,293.00 | PXY | TALENTREEF, IDENVER | CO Total | other |
| 2,050.39 | PXY | TANDEM PRINTIEAGAN | MN Total | other |
| 53,054.92 | PXY | THE FIRST IMPSAINT PAUL | MN Total | other |
| 375,367.22 | | | | **other Total** |
| 26,739.76 | PXY | WM NATIONAL AHOUSTON | TX Total | utilites |
| 26,739.76 | | | | **utilites Total** |
| 727,442.49 | | | | **Grand Total** |
| 727,442.49 | | Grand Total | | |

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Jointly Administered under 19-43756 (WJF) |
| Granite City Food & Brewery Ltd. | 19-43756 |
| Granite City Restaurant Operations, Inc. | 19-43757 |
| Granite City of Indiana, Inc. | 19-43758 |
| Granite City of Kansas Ltd. | 19-43759 |
| Granite City of Maryland, Inc. | 19-43760 |
| Debtors. | Chapter 11 Cases |

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN ORDER (I) GRANTING EXPEDITED RELIEF; (II) AUTHORIZING THE DEBTORS TO PAY PRE-PETITION REIMBURSABLE EXPENSE OBLIGATIONS; (III) AUTHORIZING THE DEBTORS TO PAY PRE-PETITION REIMBURSABLE OPERATING EXPENSES; AND (IV) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH RELIEF**

The above-named Debtors (collectively, the "Debtors"), by and through their undersigned counsel, submits this memorandum of law in support of the accompanying motion in the above-entitled matter and in accordance with Local Rule 9013-2(a).

## FACTUAL BACKGROUND

The Debtors rely on the statement of facts set forth in the verified motion and the petition, and the Debtors' Declaration in Support of First Day Motions. The defined terms used in this Memorandum have the same meaning as in the accompanying motion.

## ARGUMENT

**I.  THE DEBTORS' REQUEST FOR EXPEDITED RELIEF SHOULD BE GRANTED.**

The Debtors request expedited relief. Bankruptcy Rule 9006(c) provides that the Court may reduce the notice period for a motion "for cause shown." Cause exists here to grant the

Motion on an expedited basis because any delays will result in significant employee turnover, causing immediate damage to the Debtor's ongoing business operations. Without prompt payment of the Reimbursable Expense Obligations and the Reimbursable Operating Expenses, the Debtors will be unable to continue operations and will likely be forced to liquidate, resulting in the loss of the Debtor's going-concern value, the loss of more than 2,200 jobs, and prejudice to creditors and other stakeholders. Expedited relief is necessary to avoid this immediate and irreparable harm.

## II. THE DEBTORS SHOULD BE AUTHORIZED TO PAY PRE-PETITION REIMBURSABLE EXPENSE OBLIGATIONS AND REIMBURSABLE OPERATING EXPENSES

### A. *The Bankruptcy Code Allows for Payment of Certain Pre-Petition Claims*

The Bankruptcy Code does not prohibit a debtor from paying pre-petition claims in all instances and, in fact, authorizes debtors to do so in several circumstances upon court approval. *See, e.g.,* 11 U.S.C. §§ 363(b), 503(b)(9), 549. Courts routinely permit debtors to fund pre-petition employee benefits claims, including Reimbursable Expense Obligations. *See* 4 COLLIER ON BANKRUPTCY ¶ 507.06[1] at 507-31 (Rev. 16th ed. 2012) ("The ability to ensure that the employees receive their unpaid prepetition salary and do not miss a paycheck is critical to obtaining the stability necessary for the transition to operating as a debtor in possession."). Across jurisdictions, however, courts have relied on a range of rationales in granting motions seeking authority to pay pre-petition employee benefits.

For example, courts in several jurisdictions have held that pre-petition employee benefits, including Reimbursable Expense Obligations, can be paid pursuant to Section 363 of the Bankruptcy Code. Section 363 of the Bankruptcy Code allows a debtor, upon authorization by the court, to pay claims outside the ordinary course of business. While most businesses would

2

consider the reimbursement of employee expenses to be something undertaken in the ordinary course, courts have suggested that when such obligations accrue during the pre-petition period, funding such obligations does not fall within the ordinary course. *See, e.g., In re K-Mart Corp.,* 359 F.3d 866, 872 (7th Cir. 2004); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

Courts have also authorized the funding of pre-petition employee benefits, including Reimbursable Expense Obligations, pursuant to Section 105(a) or Section 549 of the Bankruptcy Code based on the "Doctrine of Necessity." The Doctrine of Necessity acknowledges that, under certain scenarios, it is in the best interest of the estate to pay pre-petition creditors as a means of inducing them to continue working for, or doing business with the debtor. *Miltenberger v. Logansport,* 106 U.S. 286 (1882). Although it was devised long ago, the Doctrine of Necessity has proved to be resilient through several amendments to the Bankruptcy Code, and it is still cited today. *See, e.g., In re O & S Trucking, Inc.,* Case No. 12-61003, 2012 WL 2803738, at *2 (Bankr. W.D. Mo. June 29, 2012); *In re Payless Cashways, Inc.,* 268 B.R. 543 (Bankr. W.D. Mo. 2001); *In re Just For Feet,* 242 B.R. 821 (D. Del. 1999); *Ionosphere Clubs,* 98 B.R. at 175.

In the context of large corporate chapter 11 filings, including in this district, courts have approved payment of Reimbursable Expense Obligations. *See, e.g., In re Archdiocese of Saint Paul and Minneapolis,* No. 15-30125 (RJK) (Bankr. D. Minn. Jan. 20, 2015) [ECF No. 47]; *In re SCICOM Data Servs., Ltd.,* No. 13- 43894 (MER) (Bankr. D. Minn. Aug. 20, 2013) [ECF No. 19]; *In re Schwing Am., Inc.,* No. 09-36760 (NCD) (Bankr. D. Minn. Oct. 2, 2009) [ECF No. 17].

### B. *Regardless of the Rationale, the Payments at Issue Should Be Authorized*

The Court should authorize the Debtors to make the payments at issue in the Motion "outside the ordinary course" pursuant to Section 363. Funding the pre-petition claims of employees, like any other use of property outside the ordinary course of business, is appropriate in instances where the debtor can demonstrate a "business justification" for doing so.

> Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances. However, the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business, before the court may permit such disposition under section 363(b).

*In re Ionosphere Clubs, Inc.,* 98 B.R. at 175 (citations omitted); *see also Michigan Bureau of Workers' Disability Compensation v. Chateaugay Corp. (In re Chateaugay Corp.),* 80 B.R. 279, 281 (Bankr. S.D.N.Y. 1987) (court allowed debtor to continue payment of pre-petition wages and other benefits because it was consistent with debtor's "imperatives").

In the instant case, the Debtors have demonstrated that they have a significant and obvious business justification for the relief sought in the Motion. Specifically, the Debtors' funding of Reimbursable Expense Obligations and Reimbursable Operating Expenses will stabilize the Debtors' operations and maximize the going-concern value of the Debtors' business. If, on the other hand, the Debtors do not fund their pre-petition Reimbursable Expense Obligations and Reimbursable Operating Expenses, there is a significant risk that employees will leave and the Debtors will have to discontinue operations entirely. The Debtors' inability to continue generating revenue as a going concern would have a negative impact, to say the least, on all parties in interest.

The relief at issue should also be granted pursuant to the Doctrine of Necessity in the event that the Court analyzes the Motion under Section 105(a) or Section 549. Section 105(a)

grants the Court authority to issue any order "necessary or appropriate to carry out the provisions" of the Code, and also provides a basis for authorizing the debtor to pay Reimbursable Expense Obligations and Reimbursable Operating Expenses. *See In re Ionosphere Clubs, Inc.,* 98 B.R. at 175; *In re Quality Interiors, Inc.,* 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991). Bankruptcy Code Section 549(a)(2)(b) also recognizes that a court may authorize the payment of pre-petition debts. *In re Payless Cashways, Inc.,* 268 B.R. at 546; *Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.),* 37 B.R. 334, 336 n.3 (Bankr. W.D. Mo. 1984). In fact, the same justifications for payment of employee obligations support payment of Reimbursable Expense Obligations and Reimbursable Operating Expenses.

The above analysis holds true regardless of the decision issued by the United States Court of Appeals for the Seventh Circuit in *In re K-Mart Corp.,* 359 F.3d 866 (7th Cir. 2004). In the *K-Mart* case, the Seventh Circuit considered whether the bankruptcy court could authorize payments to fund the pre-petition claims of "critical vendors." Ultimately the Seventh Circuit determined that the bankruptcy court had not established its authority to do so. The Seventh Circuit acknowledged, however, that Section 363(b) might provide a basis for authorizing such payments under the right circumstances. *In re K-Mart Corp.,* 359 F.3d at 872. The Seventh Circuit also indicated that, in order to justify the payment of pre-petition claims, the debtor should be required to show that (i) it would suffer damage if such payments were not made, and (ii) that other creditors would not suffer harm as a result of the proposed payments. *Id.* The Debtors have made such a showing in this case.

Moreover, the interests of the estate and its creditors are different with respect to employees than they are with respect to "critical vendors."

> A central purpose of chapter 11 is to realize on a debtor's going concern value. That going-concern value is dependent in part upon the continuity and

5

> performance of the debtor's work force—something particularly true in the case at bar. The continuity and performance of a debtor's work force is, in turn, typically dependent on timely payment of wages and benefits. As claims based on prepetition wages and benefit programs almost always—as is true of the Prepetition Employee Obligations—are entitled to priority payment under section 507(a) of the Code, unsecured creditors are not disadvantaged by early—timely—satisfaction of those claims.

*In re Tusa-Expo Holdings, Inc.,* Case No. 08–45057, 2008 WL 4857954, at *4 (Bankr. N.D. Tex. Nov. 7, 2008). Like the debtor in *Tusa-Expo Holdings,* the Debtors' future is dependent on the continued support of its employees. Accordingly, the Debtors respectfully ask the Court to grant their Motion on an expedited basis and allow the Debtors to fund their prepetition Reimbursable Expense Obligations and Reimbursable Operating Expenses.

In this case, the employees are critical to the Debtors and their ability to continue business operations without interruption and to maximize the value of their assets. If payment of employee reimbursements is postponed or not allowed, the Debtors' going-concern value will be threatened by employee losses and a severe disruption. To the extent the Debtors' operations suffer, creditors also suffer and estate assets diminish. It is in the best interest of creditors that wages and benefits be paid to employees to maintain their good will. Creditors are not harmed; rather, they will benefit by payment of the Reimbursable Expense Obligations and Reimbursable Operating Expenses as the Debtors propose in the Motion by virtue of the continued operations and the efforts of affected employees to maximize the value of the bankruptcy estate through the asset sale process.

## **CONCLUSION**

The Debtors have a compelling business justification for funding the pre-petition Reimbursable Expense Obligations and Reimbursable Operating Expenses owed to its employees, and the funding of such obligations is necessary to avoid immediate and irreparable

6

harm. Further, granting the relief requested will not prejudice any creditor or other party in interest. For these reasons, and others set forth above, the Debtors respectfully ask the Court to grant the relief requested in the Motion.

**BRIGGS AND MORGAN, P.A.**

Dated: December 30, 2019

/e/ James M. Jorissen
By: _____
James M. Jorissen, #262833
Karl J. Johnson, #391211
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-977-8400
Facsimile: 612-977-8650
jjorissen@briggs.com
kjohnson@briggs.com

**PROPOSED COUNSEL FOR THE DEBTORS**

7

12266547v3

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Jointly Administered under 19-43756 (WJF) |
| Granite City Food & Brewery Ltd. | 19-43756 |
| Granite City Restaurant Operations, Inc. | 19-43757 |
| Granite City of Indiana, Inc. | 19-43758 |
| Granite City of Kansas Ltd. | 19-43759 |
| Granite City of Maryland, Inc. | 19-43760 |
| Debtors. | Chapter 11 Cases |

## ORDER

This case is before the court on Debtors' Motion for an Order (I) Granting Expedited Relief; (II) Authorizing the Debtors to Pay Pre-petition Reimbursable Expense Obligations; (III) Authorizing the Debtors to pay Pre-petition Reimbursable Operating Expenses; and (IVI) Authorizing Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief (the "Motion"). Based on the motion, and this court having determined that it is in the best interests of the Debtors' estate to grant the Motion, and it appearing that due and proper notice of this action was given,

**IT IS HEREBY ORDERED:**

1. The Debtors' Motion is granted.

2. The Debtors' request for expedited relief is granted.

3. The Debtors are authorized to pay or cause to be paid the Reimbursable Expense Obligations and Reimbursable Operating Expenses for which employees have joint and several liability.

4. The Debtors' financial institutions are authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or automated clearing house transfers evidencing amounts paid by the Debtors under this Order whether presented prior to or

25395.0001 -- 2926034_1

12266547v3

after the Petition Date to the extent the Debtors have good funds standing to their credit with such bank or other financial institution. The Payroll Provider and such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquire and without liability for following the Debtors' instructions.

5.      Nothing in the Motion or this Order, nor any payments made pursuant to this Order, shall be deemed to be, or constitute, (a) an admission as to the validity or priority of any claim against the Debtors, (b) an assumption or post-petition reaffirmation of any agreement, plan, practice, program, policy, executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, (c) a grant of third-party beneficiary status of any additional rights on any third party, or (d) a waiver of any rights, claims or defenses of the Debtors.

6.      Nothing in the Motion or this Order shall impair the ability of the Debtors to contest the validity or amount of any payment made pursuant to this Order.

7.      Notwithstanding anything to the contrary herein, (a) any payments made or authorization contained hereunder, shall be subject to the requirements imposed on the Debtors pursuant to any interim or final order authorizing, among other things, the Debtors' entry into the postpetition financing facility and use of cash collateral (the "DIP Orders"), including any budgets governing or relating to the postpetition financing, and (b) to the extent there is any inconsistency between the terms of the DIP Orders and any action taken or proposed to be taken hereunder, the terms of the DIP Orders shall control.

8.      Notwithstanding Bankruptcy Rule 6003 and the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.      This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____                        _____
                                                                                        United States Bankruptcy Judge

2

12266547v3