UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Jointly Administered under 19-43756 (WJF) |
| Granite City Food & Brewery Ltd.<br>Granite City Restaurant Operations, Inc.<br>Granite City of Indiana, Inc.<br>Granite City of Kansas Ltd.<br>Granite City of Maryland, Inc. | 19-43756<br>19-43757<br>19-43758<br>19-43759<br>19-43760 |
| | Chapter 11 Cases |
| **MOTION OF FRANCIS PROPERTIES, L.L.C.**<br>**FOR RELIEF FROM THE AUTOMATIC STAY** | |

TO:    Debtors above named and other Interested Parties.

1.      Francis Properties, L.L.C. ("Francis Properties"), by its undersigned attorneys, moves the Court for relief from the automatic stay pursuant to 11 U.S.C. § 362 and gives notice of hearing and in support of this motion ("Motion"), alleges as follows.

2.      The Court will hold a hearing on this motion at **10:30 a.m. on Tuesday, January 28, 2020**, before the Honorable William J. Fisher, Courtroom 2B, U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101, or as soon thereafter as counsel can be heard.

3.      Any response to this motion must be filed and delivered not later than **January 23, 2020**, which is five days before the time set for the hearing (including Saturdays, Sundays, and Holidays).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005 and Local Rule 1070-1.  This proceeding is a core proceeding, and venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  On December 16, 2019

1

(the "Petition Date"), each of the above-captioned Debtors (the "Debtors") filed a voluntary petition under chapter 11.  These cases are jointly administered and are currently pending before this court.

5.      This Motion arises under 11 U.S.C. § 362, Fed. R. Bankr. P. 4001, and Local Rules 9013-1 through 9013-3.  This Motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9006-1, 9013-1 through 9013-3, and 9017-1.

6.      Francis Properties requests relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2) with respect to possession of the Premises, defined below.

## FACTS

7.      The Debtors own and operate Granite City restaurants.

8.      Francis Properties, as successor landlord, and Granite City Restaurant Operations, Inc. ("Debtor"), as assignee of the original tenant Granite City Food & Brewery, Ltd., entered into a Lease Agreement, dated February 7, 2003, as amended, for the lease of real property commonly known as 1220 NW 128th Street, Clive, Iowa (the "Premises") as more fully described in the Lease.  A copy of the Lease Agreement, along with Amendment No. 1 to Lease Agreement dated February 7, 2003, Amendment No. 2 to Lease Agreement dated December 6, 2007, Third Amendment to Lease effective as of January 1, 2009, Fourth Amendment to Lease effective as of June 1, 2010, but without a copy of the Settlement, Reinstatement, Mutual Release and Lease Modification Agreement dated October 9, 2017 due to a confidentiality clause therein (collectively, the "Lease"), are attached hereto as **Exhibit A**.

9.      On November 4, 2019, Francis Properties caused a Notice of Default to be personally served on the Debtor.  A copy of that notice is attached hereto as **Exhibit B**.  That notice informs the Debtor that it is in default of the Lease for failing to pay November 2019 rent of $29,645.00 and November 1, 2019 taxes of $7,237.50, for a total of $36,882.50.  Francis

Properties demanded that the Debtor pay the amount in default or Francis Properties would initiate further proceedings.

10.     On November 15, 2019, Francis Properties caused a Notice of Intent to Terminate Lease ("Notice of Intent to Terminate") to be personally served on the Debtor.  A copy of that notice is attached hereto as **Exhibit C**.  That notice informs the Debtor that it failed to pay the amount in default and that if the Debtor fails to pay within ten (10) days of the service of the notice, its "possessory rights under the Lease shall be terminated."

11.     The Debtor failed to pay the amounts in default.  Accordingly, pursuant to the Notice of Intent to Terminate, the Lease terminated.

12.     The Debtor also did not pay rent due on December 1, 2019.

13.     On November 25, 2019, Francis Properties caused a Notice to Quit to be personally served on the Debtor.  A copy of that notice is attached hereto as **Exhibit D**.  That notice demands that the Debtor vacate and surrender the Premises within three (3) days, as required by Iowa Stat. § 648.3.

14.     By Original Notice and Petition for Forcible Entry and Detainer (the "Eviction Petition"), filed November 29, 2019, Francis Properties commenced an eviction action against the Debtor for possession of the Premises.  A copy of the Eviction Petition is attached hereto as **Exhibit E**.  The Eviction Petition states that the basis of the demand for possession is "YOUR TENANCY HAS BEEN TERMINATED."

15.     On December 2, 2019, the Iowa District Court in and for Polk County ("Iowa Court") issued a Notice of Hearing on the Eviction Petition.  A copy of that notice of hearing is attached hereto as **Exhibit F**.

16.     On December 16, 2019, the Iowa Court held the eviction hearing.  The Debtor was represented by counsel at the hearing, who consented to the eviction and acknowledged the termination of the Lease.

17.     On the same day, the Iowa Court entered an Order for Forcible Entry and Detainer (the "Order") that the Debtor "be removed from the premises" and that Francis Properties "be put in possession of the premises."  The Order also commanded the sheriff of Polk County to remove the Debtor from the Premises.  A copy of the Order is attached hereto as **Exhibit G**.  As stated on the Order, it was "[e]lectronically signed on 2019-12-16 10:35:50."

18.     Also on December 16, 2019, the Clerk of Court for Polk County issued a Writ of Removal and Possession ("Writ"), directing the sheriff to remove the Debtor from the Premises. A copy of the Writ is attached hereto as **Exhibit H**.  The electronic filing stamp states that it was filed at 11:08 AM.

19.     The time stamp on the Debtor's Petition states that it was filed as "Doc. 1 Entered 12/16/19 15:49:46."

### RELIEF REQUESTED

20.     As is set forth in the accompanying Memorandum of Law, Francis Properties is entitled to relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) for cause and pursuant to 11 U.S.C. §362(d)(2) because the Debtor has no equity in the Premises and the Premises is not necessary to an effective reorganization.

21.     Francis Properties is entitled to relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) for cause, because (a) Francis Properties terminated the Lease before the Petition Date, and (b) the Iowa Court issued the Order granting Francis Properties possession of the Premise and the Writ was issued on December 16, 2019, before the Debtor filed its Petition.

22.     Francis Properties is also entitled to relief from the automatic stay pursuant to 11 U.S.C. §362(d)(2) because (1) the Debtor has no equity in the Premises, and (2) the Premises is not necessary to an effective reorganization.  The Debtor has no equity on the Premises, because the Debtor held only rights as tenant under a lease, and, in any event, the Lease was terminated before the Debtor filed its Petition so any lease rights have been terminated.  The Premises is also not necessary to an effective reorganization.  The Debtor's advisor at Hilco Global informed Francis Properties, by email on December 17, 2019, that this restaurant "is currently under critical review for rejection based on poor performance."  A copy of that email is attached hereto as **Exhibit I**.  The advisor also stated that "the goal is to reposition this restaurant to avoid a closure/rejection and sell this restaurant as an asset to a new restaurant operator."  The advisor stated that "to attract a buyer for this unit," it asked for lease modifications including a substantial decrease in annual base rent, a waiver of past due rent, a shortening of the lease term, and the addition of extension options.  Given that this location suffers from "poor performance" and would require "repositioning" to assume and sell, the Lease (if it had not been terminated) is not necessary to an effective reorganization.

23.     Francis Properties desires to protect its interest in the Premises and requests the Court to enter an order granting Francis Properties relief from the automatic stay so that it may exercise its rights and remedies under applicable nonbankruptcy law with respect to the Premises, including but not limited to, allowing Francis Properties to:  (a) deliver the Writ to the sheriff and have the sheriff execute the Writ, (b) remove the Debtor from the Premises, (c) enter upon and take possession of the Premises, and (d) store and/or dispose or sell of any personal property therein pursuant to applicable state law.  By reason of the foregoing, Francis Properties is entitled to have the automatic stay lifted and vacated.

24.     If an objection is filed to this motion, Francis Properties requests that the hearing be treated as an initial hearing.  If there is a contested hearing on this motion as to which testimony is to be taken, Francis Properties hereby gives notice pursuant to Local Rule 9013-2 that Gary Harkin, Manager of Francis Properties, L.L.C., will testify as to the facts in this Motion.

25.     Based upon the Verified Motion, Exhibits, and the Memorandum of Law submitted with this Motion, Francis Properties requests that its motion be granted.

WHEREFORE, Francis Properties, by its undersigned attorneys, moves the Court for an Order that:

1.     The automatic stay provided by 11 U.S.C. Section 362(a) be terminated to permit Francis Properties to exercise its rights and remedies under applicable nonbankruptcy law with respect to the Premises, including but not limited to, allowing Francis Properties to:  (a) deliver the Writ to the sheriff and have the sheriff execute the Writ, (b) remove the Debtor from the Premises, (c) enter upon and take possession of the Premises, and (d) store and/or dispose or sell of any personal property therein pursuant to applicable state law.

2.     Waives the fourteen-day stay of order pursuant to Rule 4001(a)(3); and

3.     Awards such other relief as may be just and equitable.

Dated:  January 3, 2020                    FAFINSKI MARK & JOHNSON, P.A.

By: /s/ Lorie A. Klein
   David E. Runck (#0289954)
   Lorie A. Klein (#0311790)
400 Flagship Corporate Center
775 Prairie Center Drive
Eden Prairie, Minnesota 55344
Telephone: (952) 995-9500
Facsimile: (952) 995-9577
david.runck@fmjlaw.com
lorie.klein@fmjlaw.com
Attorneys for Francis Properties, L.L.C.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| In re: | Jointly Administered under 19-43756 (WJF) |
|---|---|
| Granite City Food & Brewery Ltd.<br>Granite City Restaurant Operations, Inc.<br>Granite City of Indiana, Inc.<br>Granite City of Kansas Ltd.<br>Granite City of Maryland, Inc. | 19-43756<br>19-43757<br>19-43758<br>19-43759<br>19-43760<br><br>Chapter 11 Cases |

**VERIFICATION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

I, Gary Harkin, Manager of Francis Properties, L.L.C., declare under penalty of perjury that Francis Properties, L.L.C. is the moving party named in the foregoing Motion for Relief from the Automatic Stay, that I have read the foregoing document, and that the factual information contained therein is true and correct according to the best of my knowledge, information, and belief.

Executed on: _12-31-19_

By: _____
Printed Name: Gary Harkin
Its:  Manager

## LEASE AGREEMENT

THIS LEASE AGREEMENT, made and entered into on this 7th day of February, 2003, by and between Donald A. Dunham, Jr., and/or his assigns (hereinafter referred to as "Landlord") and Granite City Food & Brewery, Ltd., having its principal place of business in St. Louis Park, Minnesota, (hereinafter collectively referred to as "Tenant").

WHEREAS, Landlord and Tenant have entered into a Development Agreement on October 22, 2002 ("Development Agreement"); and

WHEREAS, pursuant to the Development Agreement, the Landlord and Tenant now hereby agree to enter into this Lease Agreement dated this 7th day of February, 2003; and

WHEREAS, any capitalized terms used herein and not otherwise defined shall have the meaning and effect of such term as set forth in the Development Agreement.

## ARTICLE 1.
## LEASED PREMISES

a.   Description of Premises.  Landlord hereby leases and demises to Tenant and Tenant hereby accepts and leases from Landlord, on the terms and conditions hereinafter set forth, that certain real property and building, fixtures, and other related improvements to be constructed in Clive, Iowa, on land which is legally described on Exhibit A-1 and depicted on Exhibit A-2:

and hereinafter in this Lease called the "Premises."  The Premises consist of an area of approximately 2.2 acres with a building located thereon of approximately 9,449 square feet ("Building"). The Building consists of 8,932 square feet on the main floor and 517 square feet on an upper level.

b.   Quiet Enjoyment.  Landlord covenants and agrees that so long as Tenant is not in default under the terms of this Lease, Tenant shall have quiet and peaceful possession of the Premises and shall enjoy all of the rights granted herein without interference.

c.   Construction of Building.  Landlord shall erect on the real property a 9,449 square foot Building including the Fixtures and Equipment set forth on Exhibit B and excepting such work as Tenant is to finish as set forth on Exhibit C ("Tenant's Work"). The Building shall be built in accordance with plans and specifications prepared by Wemlinger Architecture, 2035 15th Street North, St. Cloud, MN 56303 to include the following documents: Drawings (Sheets T1, C-1, C-2, C-3, L-1, A1.1, A2.1, A2.2, A2.3, A2.4, A3.1, A5.1, A6.1, A7.1, A7.2, A8.1, A8.2, A8.3, A9.1, A10.1, S1, S2, S3, S4, ME1, M2, M3, M4, M5, M6, E2, E3, E4, and E5) dated 10 January 2003; Project Manual (Specifications) dated 10 January 2003; Addendum #1 dated 17 January 2003; Addendum #2 dated 30 January 2003; Addendum #3 dated 3 February 2003; and Addendum #4 dated 4 February 2003 (the "Plans and Specifications") as agreed to by the parties hereto and in accordance with the Development Agreement.   Landlord's

1460051v3


PLAINTIFF'S EXHIBIT
1-A

**EXHIBIT A**

completion of its portion of the construction of the Building and all related improvements shall be on or before August 31, 2003 ("Completion Date") and such construction shall be done in a good and workmanlike manner and sufficient to receive a certificate of occupancy, and shall be in compliance with all governmental laws, ordinances, regulations, building codes and requirements. Landlord shall complete all landscaping prior to the time Tenant completes the Tenant's Work except if the landscaping work cannot be completed prior to winter and the landscape plan has been approved by the City of Clive, Iowa ("City") and the City has granted a Temporary Certificate of Occupancy, the Landlord shall complete the landscaping work as soon as possible during the spring of the following calendar year. The Completion Date shall not be changed except by written amendment executed by both parties or by Unavoidable Delay as hereinafter defined.

Tenant shall furnish, construct and install the Tenant's Work at its own expense and in accordance with the Plans and Specifications as soon as can reasonably be done after the Building has been prepared by Landlord. However, any delay caused by the Landlord shall extend the completion period of the Tenant. All Tenant's work shall be done in a good and workmanlike manner and in accordance with all city building codes. Landlord is under no obligation to make any structural or other alterations, decoration, additions or improvements in or to the Premises except as expressly set forth in the Plans and Specifications. Tenant shall have the right to make changes from time to time in the Plans and Specifications by submitting to Landlord revised plans and specifications (herein called the "Revisions"). Upon timely receipt of any Revisions, Landlord shall submit the Revisions for performance to the contractors performing the trade or trades involved in the Revisions, and if so requested by Tenant, obtain proposed Bids from those contractors before embarking on such performance. Landlord shall have the right to reject any Revisions which would materially delay the Commencement Date of this Lease unless, in conjunction therewith, Tenant agrees to pay rental for the Premises on the date the Rent Commencement Date would have occurred but for the completion of the Revisions.

d.    Preparation of Premises. Tenant shall take and accept the Premises upon completion of construction and receipt from the City of a Temporary Certificate of Occupancy (TCO). The Premises shall be in tenantable condition so that the lights, water, sewer, front and rear doors, HVAC, plumbing, and water heater are in working or operating condition and the Tenant is able to operate its customary restaurant business in the Premises. Taking of possession of the Premises by Tenant shall be conclusive evidence that the Premises, was, on that date, in good, clean and tenantable condition as represented by Landlord, subject to latent defects or concealed conditions. Notwithstanding the previous sentence, taking of possession of the Premises by Tenant shall not act to waive the obligation of Landlord to remedy any defects in construction of the Premises nor to complete punch list items.

e.    Signs. Tenant shall be allowed to install exterior signage, containing Tenant's name and logo on the exterior of the Premises as well as a free standing exterior sign at the entrance

1460051v3

-2-

to the Premises, such signage not to exceed the Premises allowable signage per code or ordinance.  All exterior signage shall comply with local codes and ordinances and be approved by Landlord, which approval shall not be unreasonably withheld or delayed.  It is understood that Tenant will pay for the signage and that Landlord, if requested, will use its best effort to assist Tenant in securing required approvals, provided Tenant will promptly reimburse Landlord for any monies expended for this purpose.

**ARTICLE 2.**
**TERM**

a.    Lease Commencement.  The term of this Lease shall commence on the earlier of the date Tenant commences to operate a restaurant on the Premises or the first day of the first full month following twenty-one (21) days after the issuance of a Temporary Certificate of Occupancy for the Premises (the "Commencement Date").  The parties shall execute an amendment to the Lease setting forth the exact "Commencement Date" within thirty (30) days of Tenant commencing public restaurant operations in the Premises.

b.    Initial Term.  The initial term of this Lease (the "Initial Term") shall be twenty (20) years, commencing on the Commencement Date.  Hereinafter, "Term" shall mean the Initial Term and any extension thereof.

c.    Extension Terms.

        i.    Generally.  Landlord hereby grants Tenant five (5) consecutive options to extend the Initial Term of the Lease (each an "Option to Extend"), in accordance with the terms and conditions of this Section 2(c) and otherwise upon the same terms and conditions contained in this Lease.  Each Option to Extend shall be an option to extend the Term for a period of five (5) years, commencing immediately upon the expiration of the prior Term.

        ii.    Exercise.  Tenant shall exercise each Option to Extend, if at all, by written notice delivered to Landlord at least one hundred eighty (180) days prior to the expiration of the prior Term.

        iii.    Rent.  The Base Rent payable during the Initial Term and extensions thereof shall be as set forth in Sections 3 below.

**ARTICLE 3.**
**RENT**

a.    Base Rent.  Tenant covenants and agrees to pay to Landlord, Base Rent equal to the sum of (i) the amount of any ground lease payments pursuant to a ground lease of the Premises approved by Tenant and (ii) ten point five percent (10.5%) ("Lease Rate") of the Approved Construction Costs defined herein.  The Base Rent amount shall be payable in equal monthly installments in advance on or before the first day of each month beginning

1460051v3

on the "Commencement Date." If the "Commencement Date" is not on the first of the month, the Base Rent for the first month shall be prorated.

The Landlord will supply the Tenant with a Guaranteed Maximum Price construction contract. The Guaranteed Maximum Price shall be amended from time to time as necessary to reflect any amendments made under the Development Agreement and subsequent to the execution of this Lease.

b. Additional Rent. It is the intent of Landlord and Tenant that the Base Rent set forth above shall be on a triple net basis, as that term is used and understood in connection with the leasing of real property. Accordingly, as additional rental hereunder, Tenant shall pay, directly to the appropriate authorities, during the term of this Lease, subject to proration to the date of commencement and termination of the term hereof, all real estate taxes, installments of special assessments, gross receipts taxes and taxes on rentals (other than income taxes) relating to the Premises; the costs of heating, cooling, utilities, insurance (including but not limited to liability insurance and fire and casualty insurance with rent interruption endorsement, boiler and pressure vessel insurance, and owners protective liability insurance), security, snow removal, landscaping, janitorial and cleaning services; fees for professional services; charges under maintenance and service contracts; all supplies purchased for use in the Premises; maintenance and repair costs as hereinafter set forth; any equipment rental; altering, maintaining and repairing the Premises. Notwithstanding the above, Tenant shall not be obligated to pay or reimburse Landlord for i) depreciation of the Premises or any personal property of Landlord within the Premises, ii) real estate leasing commissions, iii) mortgage principal or interest, iv) capital expenditures, v) accountant fees, vi) attorney fees, except as required under Article 16, vii) environmental remediation costs, penalties, attorney fees and all related costs except for costs related to a release of hazardous substances arising out of the act or omission of Tenant, viii) Landlord's employee or overhead costs, ix) costs resulting from defective construction of the Premises, x) special assessments attributable to the initial construction of the Premises, xi) costs of travel, entertainment or promotion, xii) management fees, and xiii) costs allocated to Landlord pursuant to other provisions of this Lease.

c. Rental Adjustment During Renewal Terms. If Tenant exercises a renewal option to extend the term of this Lease, the annual Base Rent during the renewal term shall be equal to the annual Base Rent as in effect at the end of the initial term plus any increase as determined in accordance with the provisions of this Section. Annual Base Rent for the renewal terms shall be based on the percentage of change in the Consumer Price Index for Urban Wage Earners and Clerical Workers (All Items Category) (1982-1984 = 100), as published from time to time by the Bureau of Labor Statistics of the United States Department of Labor ("Consumer Price Index"), or if such Index is not published, a similar index agreed upon by Landlord and Tenant.

The annual Base Rent for the first renewal term shall be calculated by first determining the percentage change in the Consumer Price Index between the date occurring sixty (60)

1460051v3

-4-

days prior to the fifteenth year anniversary, and the date occurring sixty (60) days prior to twentieth annual anniversary date of the term.   The result, or ten percent (10%), whichever is less, shall then be applied to the annual Base Rent in effect immediately prior to the first renewal term.  The result of the calculation, when added to the annual Base Rental in effect immediately prior to the twentieth annual anniversary date, shall be the annual Base Rent for the first renewal term.

The annual Base Rent for the second renewal term shall be calculated by first determining the percentage change in the Consumer Price Index between the date occurring sixty (60) days prior to the twentieth annual anniversary date of the term and the date occurring sixty (60) days prior to the twenty-fifth annual anniversary date of the term.   The result, or ten percent (10%), whichever is less, shall then be applied to the annual Base Rental in effect during the first renewal term.  The result of the calculation, when added to the annual Base Rent in effect during the first renewal term, shall be the annual Base Rent for the second renewal term.

The annual Base Rent for the third renewal term shall be calculated by first determining the percentage change in the Consumer Price Index between the date occurring sixty (60) days prior to the twenty-fifth annual anniversary date of the term and the date occurring sixty (60) days prior to the thirtieth annual anniversary date of the term.   The result, or ten percent (10%), whichever is less, shall then be applied to the annual Base Rental in effect during the second renewal term.  The result of the calculation, when added to the annual Base Rent in effect during the second renewal term, shall be the annual Base Rent for the third renewal term.

The annual Base Rent for the fourth renewal term shall be calculated by first determining the percentage change in the Consumer Price Index between the date occurring sixty (60) days prior to the thirtieth annual anniversary date of the term and the date occurring sixty (60) days prior to the thirty-fifth annual anniversary date of the term.   The result, or ten percent (10%), whichever is less, shall then be applied to the annual Base Rental in effect during the third renewal term.  The result of the calculation, when added to the annual Base Rent in effect during the third renewal term, shall be the annual Base Rent for the fourth renewal term.

The annual Base Rent for the fifth renewal term shall be calculated by first determining the percentage change in the Consumer Price Index between the date occurring sixty (60) days prior to the thirty-fifth annual anniversary date of the term and the date occurring sixty (60) days prior to the fortieth annual anniversary date of the term.   The result, or ten percent (10%), whichever is less, shall then be applied to the annual Base Rental in effect during the fourth renewal term.  The result of the calculation, when added to the annual Base Rent in effect during the fourth renewal term, shall be the annual Base Rent for the fifth renewal term.

## ARTICLE 4.
### TAXES, ASSESSMENTS AND UTILITIES

a.    <u>Taxes and Assessments</u>.  Tenant covenants and agrees to pay and discharge, directly to the appropriate Governmental authorities, as additional rental hereunder, at least ten (10) days before delinquency thereof and before any penalties or interest shall accrue thereof, all taxes of any kind, general or special, foreseen or unforeseen, of any nature whatsoever, and installments thereof which may be taxed, charged, levied, assessed or imposed from and after the commencement of the term hereof i) upon or measured by Rent including, without limitation, any gross revenue tax, excise tax or value added tax with respect to the receipt of Rent, and ii) upon all or any portion of, or in relation to the Premises, including the improvements at any time situated or erected thereof, and all personal property and equipment at any time contained therein.  Notwithstanding any clause to the contrary, Tenant shall not be obligated to pay or reimburse Landlord for any inheritance tax, gift tax, transfer tax, franchise tax, income tax (based on net income), profit tax or capital levy imposed on Landlord.

b.    <u>Tenant's Right to Contest Validity</u>.  Landlord agrees that Tenant shall have the right, in Tenant's or Landlord's name, but at Tenant's sole cost and expense, to contest the validity of any tax or assessment by appropriate proceedings, timely instituted, provided that (a) Tenant gives Landlord written notice of Tenant's intention to do so at least twenty (20) days prior to the delinquency thereof and (b) Tenant diligently prosecutes any such contest, at all times effectively stays or prevents any official or judicial sale of the Premises, under execution or otherwise, pays any final judgment enforcing any tax or assessment so contested, and promptly procures and records satisfaction thereof. Landlord shall, if requested by Tenant, cooperate with Tenant in any such proceedings; provided, however, that Landlord shall not be liable for any expenses whatsoever in connection therewith, and Tenant shall protect and indemnify Landlord against all loss, cost, expense, attorney's fees or damages resulting therefrom.

c.    <u>Utilities</u>.  Tenant shall promptly pay or cause to be paid all charges for water, gas, sewer, electricity, light, heat, air conditioning, power, telephone or other service of any kind whatsoever submitted, rendered or supplied in connection with the Premises, and shall contract for the same in Tenant's own name.  Landlord and Tenant shall each reasonably assist the other in transition of payments for, and control of, services and utilities at the commencement and termination of this Lease.

## ARTICLE 5.
### USE OF PREMISES

a.    <u>Restrictions on Use</u>.  The Premises are leased to Tenant for the purpose of Tenant conducting its restaurant and dining establishment pursuant to the Development Agreement or any other purpose permitted by applicable law.  Such operations may include sales of clothing and other products marked with Tenant's trademark, take-out food and beverage products and other items sold now or in the future in Tenant's

restaurants. Tenant shall not do anything in or about the Premises other than customary Restaurant operations which will in any way tend to increase insurance rates for the Premises. Tenant agrees to pay as additional rent any increase in premiums for insurance against loss by fire or extended coverage risks resulting from the business carried on in the Premises by Tenant. Tenant shall not suffer or permit any waste of the Premises during the term of this Lease.

b.  <u>Hazardous Waste</u>. Tenant shall not cause or permit any Hazardous Substance to be used, stored, generated, or disposed of on, in or about the Premises by Tenant, or any of its agents, employees, representatives, contractors, suppliers, customers, subtenants, concessionaires, licensees, or invitees unless Tenant shall have received Landlord's prior written consent, which Landlord may withhold or at any time revoke in its sole discretion.

    i.  Notwithstanding the foregoing, Tenant may store, use and dispose of customary amounts of restaurant and cleaning products and other Hazardous Substances in the normal course of general restaurant use, and Tenant covenants to comply with all applicable laws, rules, regulations and ordinances governing same.

    ii.  Lessee shall indemnify and defend Landlord, and hold Landlord harmless, from and against any and all claims, damages, fines, judgments, penalties, costs, expenses, liabilities, or losses relating to any violation by Tenant of any Environmental Law (as hereinafter defined) or of this Paragraph 5(b) (including, without limitation, a decrease in value of the Premises as evidenced by a sale of the Premises, damages caused by loss or restriction of rentable or usable space as evidenced by a lease or sale of the Premises, damages caused by adverse impact on marketing of space, and any and all sums paid for settlement of claims, attorneys' fees, consultant fees, and expert fees) incurred by or asserted against Landlord arising during or after the term of this Lease as a result thereof, except to the extent such violation is the result of any act or omission of Landlord, Landlord's contractors or is a condition or release which was created or occurred prior to Tenant's occupancy of the Premises. This indemnification includes, without limitation, any and all costs incurred because of any investigation of the site or any cleanup, removal, testing, or restoration mandated or conducted by or on behalf of any federal, state, or local agency or political subdivision. Without limitation of the foregoing, if Tenant causes a release of any Hazardous Substance in the Premises that results in any contamination, Tenant shall promptly, at its sole expense, take any and all necessary or appropriate actions to return the Premises to the condition existing prior to the release of any such Hazardous Substance. Tenant shall first obtain Landlord's written approval for any such remedial action which shall not be unreasonably withheld.

iii.    Landlord shall indemnify and defend Tenant, and hold Tenant harmless, from and against any and all claims, damages, fines, judgments, penalties, costs, expenses, liabilities, or losses relating to any violation of any Environmental Law (as hereinafter defined) or of this Paragraph (including, without limitation, a decrease in value of the Premises, damages caused by loss or restriction of rentable or usable space, damages caused by adverse impact on marketing of space, and any and all sums paid for settlement of claims, attorneys' fees, consultant fees, and expert fees) incurred by or asserted against Tenant arising during or after the term of this Lease as a result of any condition that existed on the Premises prior to date of Tenant's occupancy under this Lease, or as a result of any act or omission of Landlord. This indemnification includes, without limitation, any and all costs incurred because of any investigation of the site or any cleanup, removal, testing, or restoration mandated or conducted by or on behalf of any federal, state, or local agency or political subdivision. Without limitation of the foregoing, if Landlord causes or permits the presence of any Hazardous Substance in the Premises that results in any contamination, Landlord shall promptly, at its sole expense, take any and all necessary or appropriate actions to return the Premises to the condition existing prior to the presence of any such Hazardous Substance. Landlord shall first obtain Tenant's written approval for any such remedial action.

iv.    "Hazardous Substance" means any substance that is regulated by any local government, the State of Iowa, the United States government, or any agency, authority and/or instrumentality thereof and includes any and all materials or substances that are defined as "hazardous waste," "extremely hazardous waste," or a "hazardous substance" pursuant to any Environmental Law. "Hazardous Substance" includes but is not restricted to petroleum and petroleum byproducts, asbestos, explosives, polychlorinated biphenyls ("PCBs") and infectious waste.

v.    "Environmental Laws" means all federal, state and local laws, including statutes, regulations, and requirements, relating to the discharge of air pollutants, water pollutants or process waste water or otherwise relating to the environment or Hazardous Substances, including, but not limited to, the Federal Clean Water Act, the Federal Resource Conservation and Recovery Act of 1976, the Federal Comprehensive Environmental Responsibility Cleanup and Liability Act of 1980, regulations of the Environmental Protection Agency, regulations of the Nuclear Regulatory Agency, and regulations of any state department of natural resources or state environmental protection agency, as amended or supplemented from time to time, now or at any time hereafter in effect.

Landlord represents that, prior to the Commencement Date, to the best of its knowledge, there has been no installation, use, generation, storage or disposal of in or about the

1460051v3

-8-

Premises any Hazardous Substance.  The foregoing representation shall be deemed remade by Landlord as of the Commencement Date except to the extent Landlord gives written notice of an exception to the representation to Tenant prior to the Commencement Date.  Landlord shall indemnify, defend and hold Tenant harmless from and against any claim, damage or expense arising out of such prior installation, use, generation, storage, or disposal of any such substance of which Landlord had knowledge.

c.    Parking Spaces.  Landlord shall provide a minimum of 135 parking spaces on the Premises adjacent to the Building as shown on the Plans and Specifications. Additional parking may be provided subject to cross-easement agreements as filed in the public record.

### ARTICLE 6.
### MAINTENANCE, REPAIRS AND ALTERATIONS

a.    Maintenance and Repairs.  The Premises and every part thereof shall be, at the Commencement Date, in good order, condition and repair.  Landlord at its cost shall be responsible for the replacement of all of the structural elements and exterior surfaces and exterior walls of the Premises including roof and roof membrane, concrete slab, footings, plumbing exterior to the building, at Landlord's sole expense as and when necessary. Tenant shall replace and maintain the heating, ventilation and air conditioning and other equipment and maintain, repair and replace interior walls, interior ceiling, painting, floor coverings, plate glass and doors at Tenant's sole expense.  Landlord shall provide landscaping in accordance with the Plans and Specifications or any landscaping plan agreed to by the parties at Landlord's expense.  Tenant shall, at its own cost and expense, maintain landscaping, if any, on the Premises.  Tenant agrees to keep and maintain the Premises and the fixtures and equipment therein in first class, properly functioning, safe, orderly and sanitary condition, will suffer no waste or injury thereto, and will at the expiration or other termination of the Term of this Lease, surrender the same with all improvements in the same order and condition in which they were on the Commencement Date, or in such better condition as they may hereafter be put, ordinary wear and tear and casualty damage to the extent covered by insurance excepted.  All alterations, decorations, additions or improvements in or to the Premises made by Tenant shall become the property of Landlord upon expiration of the term and shall remain upon and be surrendered with the Premises as a part thereof without disturbance or injury, unless Landlord requires specific items thereof to be removed by Tenant at Tenant's sole expense by written notice made at the time of installation or construction, in which event Tenant shall do so prior to the expiration of the term at its expense, and shall repair any damage caused thereby.  Tenant shall have the right to remove, during the last 90 days of the term of this Lease, all movable furniture, equipment, furnishings or trade fixtures installed in the Premises, as defined by the parties in Exhibit E or as installed and paid for by Tenant during the term of the Lease, at the direct expense of Tenant, provided the same is completed with no damage to the Premises.

1460051v3

b.   Alteration.   Subject to the prior written consent of Landlord, which shall not be unreasonably withheld, Tenant shall have the right to make such additions, alterations, changes or improvements to the Premises as Tenant shall deem necessary or desirable; provided, however, that no such addition, alteration, change or improvement shall be made which will weaken the structural strength of, lessen the value of, interfere with or make inoperable, any portion of the Premises or appurtenances thereto.   All additions, alterations, changes and improvements shall be made in a workmanlike manner, in full compliance with all building laws and ordinances applicable thereto, and when permitted to be made shall become a part of the Premises and except for furniture, trade fixtures and equipment shall be surrendered as a part of the Premises upon the termination of this Lease.

c.   Non-Liability of Landlord.   Landlord shall not be obligated to maintain nor to make any repairs or replacements of any kind, nature, or description whatsoever to the Premises, except as provided specifically herein.

d.   Tenant Self-Help.   If Landlord shall default in the performance or observance of any agreement or condition in this Lease contained on its part to be performed or observed, and if Landlord shall not cure such default within thirty (30) days after notice from Tenant specifying the default (or, if said default is not reasonably capable of cure within thirty (30) days, shall not within said period commence to cure such default and thereafter prosecute the curing of such default to completion with due diligence), Tenant may at its option, without waiving any claim for damages for breach of agreement, at any time thereafter cure such default for the account of Landlord, and any amount paid or any contractual liability incurred by Tenant in so doing shall be deemed paid or incurred for the account of Landlord, and Landlord agrees to reimburse Tenant therefor or save Tenant harmless therefrom; provided that Tenant may cure any such default as aforesaid prior to the expiration of said waiting period, but after said notice to Landlord if the curing of such default prior to the expiration of said waiting period, is reasonably necessary to protect the Premises or Tenant's interest therein to prevent injury or damage to persons or property, or to enable Tenant to conduct its business in the Premises.   If Landlord shall fail to reimburse Tenant upon demand for any amount paid for the account of Landlord hereunder or for any other sum payable to Tenant pursuant to this Lease, said amount plus interest of 12% thereon, but in no event greater than the maximum legal rate of interest, from the date of demand upon Landlord for payment, may be deducted by Tenant from the next or any succeeding payments of Base Rent or any additional rent or other sum due hereunder.   Notwithstanding anything to the contrary contained in this Lease, in the case of emergency, notices required pursuant to this Article may be given orally, or in any other reasonably due and sufficient manner having regard to the emergency and the attending circumstances.   If any such notice shall not be given in the manner described in Article 20 hereof, then, as soon thereafter as may be practicable, such notice shall be followed-up by notice given in the manner described in said Article. The addresses provided in Article 20 for notices to a party may be changed by the party receiving such notice by written notice to the other party.

1460051v3

e.    Utility Services.  Landlord shall arrange for the provision of electricity, water, sewer and any utility service necessary for heat and air conditioning to the Premises.  In the event that Tenant is unable to conduct its customary restaurant operations in the Premises because of lack of utility service for a period of three (3) days, rent shall abate until such time as Tenant can resume its customary restaurant operations, except to the extent of available rent interruption insurance proceeds.  In the event such inability to conduct customary restaurant operations continues for sixty (60) days, Tenant, at its option, may terminate the Lease by written notice delivered to Landlord prior to restoration of all utility service necessary to permit Tenant to conduct customary restaurant operations. After delivery of such notice, neither party shall have further obligations to the other party except for obligations which survive termination of the Lease.

## ARTICLE 7.
## LANDLORD'S ACCESS TO PREMISES

a.    Inspection of Premises by Landlord.   Tenant agrees to permit Landlord and the authorized representatives of Landlord to enter the Premises at all reasonable times upon two (2) business day's prior notice to Tenant during usual business hours for the purposes of:  (a) inspecting same, (b) making such repairs or reconstruction to the Premises permitted to be made by Landlord, and (c) performing any work therein which may be necessary by reason of Tenant's default under the terms of this Lease, (d) decorating, remodeling, repairing, altering, or otherwise preparing the Premises for reoccupancy at any time after Tenant is legally ejected from the Premises for a continuous period of thirty (30) days, provided that Tenant shall not be considered to have abandoned the Premises so long as the Premises are kept in clean and orderly fashion and rent is paid in accordance with the terms hereof, and (e) entering the Premises without notice for emergency purposes.  Landlord shall use reasonable efforts to give Tenant notice by telephone or e-mail prior to entering the Premises for any emergency and in any event shall give Tenant notice of such entry as soon as practical after any such entry.  For said purposes, Landlord shall have the right to possess pass keys to the Premises.  Nothing herein contained shall imply any duty on the part of Landlord to do any such work which, under the provisions of this Lease, Tenant is required to perform, and the performance thereof by Landlord shall not constitute waiver of Tenant's default in failing to perform the same.  Landlord may, during the performance of any work on the Premises, keep and store upon the parking area of or within the Premises all necessary materials, tools and equipment.  Landlord shall not in any event be liable for any reasonable inconvenience, annoyance, disturbance, loss of business or other damage sustained by Tenant during the making of repairs or the performance of any work on the Premises, or on account of bringing materials, supplies, and equipment into or through the Premises during the course thereof provided that Landlord shall make reasonable efforts to minimize interference with Tenant's restaurant operations.  In the event Landlord makes any repairs or maintenance which Tenant has failed to do or perform, the cost thereof shall constitute additional rent and shall be paid to Landlord with the next installment of the monthly Base Rent due hereunder.

1460051v3

-11-

b.     Right to Exhibit Premises.  Landlord is hereby given the right after two (2) business day's notice to Tenant during usual business hours to enter the Premises and to exhibit the same for the purpose of sale or mortgage, and during the last six (6) months of the term of this Lease, or any extension thereof, to exhibit the same to any prospective Tenant.

## ARTICLE 8.
## MECHANIC'S LIENS

Neither party shall suffer or permit any mechanic's liens to be filed against the Premises or any part thereof by reason of work, labor, services, or materials supplied or claimed to have been supplied to such party or anyone holding the Premises or any part thereof through or under such party.  If any such mechanic's liens shall at any time be filed against the Premises, the party who directed such work to be performed shall cause the same to be discharged of record within sixty (60) days after the date of filing the same or in the event such party disputes the validity of such lien, such party may deposit 150% of the amount claimed by the lien holder in escrow with a title insurance company and/or the other party as security against mortgage foreclosure.  If such party shall fail to discharge such mechanic's lien within such period, then, in addition to any other right or remedy of the other party hereto, may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien by deposit in court or by giving security or in such other manner as is or may be prescribed by law.  Any amount paid by such party for any of the aforesaid purposes, and all reasonable legal and other expenses of such party, including reasonable attorneys' fees, in or about procuring the discharge of such lien, with all necessary disbursements in connection therewith, with interest thereon at the rate of twelve percent (12%) per annum from the date of payment shall be repaid by the other party on demand.  Any such amount owed by Tenant to Landlord shall become due and payable by Tenant as additional rent with the next succeeding installment of monthly base rent which shall become due after such demand  Any such amount owed by Landlord to Tenant may be deducted from the next succeeding installment of rent which shall become due after such demand.  Nothing herein contained shall imply any consent or agreement on the part of Landlord to subject Landlord's estate to liability under any mechanic's lien law.

## ARTICLE 9.
## COMPLIANCE WITH LAWS

a.     Generally.  Tenant shall through the term, at Tenant's sole cost and expense, promptly comply with all laws and ordinances, and the orders, rules, regulations and requirements of all Federal, State and municipal governments and appropriate departments, commissions, boards and offices thereof, foreseen or unforeseen, existing or hereafter constituted, ordinary as well as extraordinary, which may be applicable to the Premises, or the use or manner of use of the Premises; provided, however, that in any event any such law, ordinance, order, rule or regulation requires structural repairs or alterations to the Premises, such repairs or alterations shall be at the expense of Landlord as provided in Article 6(a) herein.  Tenant will likewise observe and comply with the requirements of all policies of public liability, fire and all other policies of insurance at any time in force

1460051v3

with respect to the building and improvements on the Premises and the personal property thereof.

b.    License.  Tenant shall use its best efforts to obtain all appropriate licenses required from all Federal, State, and municipal governments, if any, needed to operate its business on the Premises and Tenant shall be responsible to maintain such licenses, as long as the Lease is in effect.

c.    Non-Compliance.  Landlord agrees that if at any time or times any governmental authorities or insurance rating bureaus having jurisdiction shall complain that the Premises or the Buildings were not constructed in compliance with any law, ordinance or regulation of any governmental authority or insurance rating bureau having jurisdiction and shall request compliance, then Landlord shall, upon receipt of notice of such complaint, cause such repairs, alterations or other work to be done so as to bring about the compliance requested.  If by reason of such failure of compliance or by reason of such repairs, alterations or other work done by Landlord, Tenant shall be deprived of the use and enjoyment of the whole or any part of the Premises, all base rent, additional rent and other sums payable hereunder shall abate on a per diem basis in proportion to said deprivation.  If at any time during the term of this Lease, any person claiming a prior right to Tenant or any governmental authority shall cause an injunction to be entered against Tenant restricting Tenants using or enjoying the Premises or any rights of Tenant under this Lease, and if said injunction shall not be dismissed within sixty (60) days after Tenant shall give Landlord notice thereof, then Tenant, without waiving any other rights Tenant may have against Landlord on account thereof (including, without limitation, the right to an abatement of all rent payable hereunder so long as said injunction shall remain in effect), may terminate this Lease by giving Landlord notice thereof.

## ARTICLE 10.
## INDEMNIFICATION OF LANDLORD

Tenant agrees to indemnify and hold harmless Landlord against and from any and all claims by or on behalf of any person, arising from the conduct or management of, or from any work or thing whatsoever done, in and on the Premises except work done through or at the behest of Landlord and except for claims arising out of the negligent act or omission or intentional act of Landlord and will further indemnify and save Landlord harmless against any and from any and all claims arising during the term of this Lease from any condition of any street, curb, or sidewalk adjoining the Premises, or of any vaults, passageways or space therein or appurtenant thereto, or arising from any breach or default on the part of Tenant in performance of any covenant or agreement on the part of Tenant to be performed, pursuant to this Lease, or arising from any act or negligence of Tenant or any other occupant of the Premises, or any part thereof, or of its or their agents, contractors, servants, employees or licensees, or arising from any accident, injury or damage whatsoever caused to any person or property occurring during the term of this Lease in or about the Premises, or upon or under the sidewalks and the land adjacent thereto, and from and against all judgments, costs, expenses and liabilities incurred in or about any such claim or action or proceeding brought therein except as

1460051v3

-13-

such claims or liabilities are the result of the negligence of the Landlord, and in case any action or proceeding be brought against Landlord by reason of any such claim, Tenant upon notice from Landlord covenants to resist or defend such action or proceeding by counsel reasonably satisfactory to Landlord.

Landlord agrees to indemnify and hold harmless Tenant against and from any and all claims by or on behalf of any person arising from the condition of the land on which the Premises is located prior to Tenant's occupancy of the Premises or from the construction of the Premises by Landlord except for claims arising from the negligent act or omission or intentional act of Tenant.

## ARTICLE 11.
## INSURANCE

a.   Fire and Extended Coverage.  Tenant shall, as additional rent, at its sole cost and expense, keep the Premises, including all improvements, personal property, fixtures and equipment on, in or appurtenant to the Premises at the commencement of the term and thereafter erected thereon or therein, including all alterations, rebuildings, replacements, changes, additions and improvements, fully insured for replacement value which the parties agree is $2,700,000.00 at the inception of this Lease, for the benefit of Landlord and Tenant as their respective interests may appear, against loss or damage by fire and those perils included from time to time in the standard form of extended coverage insurance endorsement.  All such insurance shall be in amounts at all times sufficient to prevent Landlord or Tenant from becoming a co-insured under the terms of the applicable policy.  These insurance provisions shall in no way limit or modify any of the obligations of Tenant under any provision of this Lease to restore the Premises.  Such insurance shall expressly provide that any losses thereunder shall be adjusted with Landlord and Tenant pursuant to a standard clause, without contribution, if obtainable, and Landlord and Tenant, as their respective interests may appear, but the proceeds of such insurance shall be used for the repair, replacement or restoration of the Premises, as provided by Article 12.

b.   Liability Insurance.  Tenant shall also, at its sole cost and expense, but for the benefit of Landlord and Tenant, maintain comprehensive general liability insurance against claims for personal injury, death or property damage occurring upon, in or about the Premises, which insurance shall afford combined single occurrence limit protection of not less than three million dollars ($3,000,000) with respect to injury, or death to a single person, with respect to injuries or death from any one accident, and with respect to property damage.

c.   Rent Interruption.  Tenant shall purchase a rent interruption insurance rider to the fire and extended coverage policy which would provide Landlord up to six (6) months of rent in the event of damage or destruction of the Premises, including in the event due to loss of utilities. Tenant shall use reasonable efforts to cause such policy to cover all other occurrences to the Premises, which would deprive Landlord of rent.

1460051v3

-14-

d.  General Requirements.  All policies of insurance maintained by Tenant in accordance with this Article 11 shall be subject to and governed by the following:

    i.  All policies of insurance shall provide that any loss shall be payable in the event that, and notwithstanding, any act or omission of Tenant might otherwise result in a forfeiture or reduction of said insurance and shall contain a waiver of any right to subrogation.

    ii.  All policies of insurance and the form thereof shall be standard policies of the insurer.  A certificate of insurance shall be delivered to Landlord at the commencement of the term and renewal certificates policies shall be delivered to Landlord not less than ten (10) days prior to the expiration of any then current policy.  Landlord shall be named as an additional insured.

    iii.  It is the intention of the parties that Tenant shall take out, maintain in force and at all times pay for and deliver to Landlord all of the policies of insurance hereinabove referred to at such times and in such manner so that Landlord shall at all times during the term be in possession of policies which are in full force and effect.

    iv.  Each such policy shall provide that it may not be canceled, non-renewed, or materially modified as to the interest of Landlord, except upon thirty (30) days' prior written notice from the insurance company to Landlord.

    v.  Tenant shall not violate or permit any occupant of the Premises to violate any of the conditions or provisions of any such policy.

    vi.  Tenant and Landlord shall cooperate in connection with the collection of any insurance monies that may be due in the event of loss, but at the sole expense of Tenant, and Tenant shall execute and deliver to Landlord such proofs of loss and other instruments as may be required for the purpose of obtaining the recovery of any such insurance monies.

    vii.  The premiums of all transferable insurance policies in force at the termination of the term shall be apportioned as between Landlord and Tenant in such manner that Landlord shall reimburse Tenant for that portion of the aggregate premiums unearned on all such policies in force at the expiration of the term.

e.  Waiver of Claims and Subrogation.  Notwithstanding any other provisions in this Lease to the contrary, Landlord and Tenant hereby release one another from any and all liability or responsibility (to the other or anyone claiming through or under them by way of subrogation or otherwise) for any loss or damage covered by property insurance or coverable by a customary policy of the insurance required by Article 11(a) or Article 11(b) (whichever is applicable), even if such loss or damage shall have been caused by

1460051v3

the fault or negligence of the other party, or anyone for whom such party may be responsible.

## ARTICLE 12.
## DESTRUCTION

a.  Partial or Total Destruction.  In the event that the Premises shall be damaged during the initial term of this Lease or at any time during an extended term of this Lease and Tenant is unable to operate its customary restaurant business in the Premises, rent shall abate for the time period Tenant is unable to operate its customary restaurant business except to the extent of available rent interruption insurance proceeds.  If such damage renders fifty (50%) percent of the usable space of the Building unusable, Landlord shall have the option of terminating this Lease unless Tenant agrees to continue to pay the rent set forth in the Lease, during the reconstruction period to the extent of available rent interruption insurance, and after completion of restoration, the rent set forth in this Lease and agrees to restore the Premises with the insurance proceeds.  Regardless of whether such damage is due to the fault, negligence, act or omission of Tenant, its employees, agents or servants, licensees or invitees, Tenant shall also have the option of terminating this Lease if there are insurance proceeds available for the benefit of the Landlord.   Upon termination by either party, Landlord shall retain the right to receive payments under the rent interruption insurance as provided for in Article 11 herein for the time period provided by such insurance up to the balance of the term of this Lease Agreement.  In the event of a total or partial destruction of the Premises or any portion thereof during the term of this Lease by any cause or risk including those covered by any policy of insurance referred to in Article 11 above, Tenant shall give to Landlord prompt notice thereof and Tenant, as long as it continues to pay rent, during the reconstruction period to the extent of available rent interruption insurance, and after completion of restoration, the rent set forth in this Lease shall notwithstanding the foregoing, have the option, at its sole cost and expense, whether or not insurance proceeds shall be sufficient for that purpose, and regardless of the amount of any such destruction, to forthwith repair, replace and rebuild the same at least to the extent of the value thereof existing immediately prior to such occurrence, provided such repairs, replacement or rebuilding can be done in accordance with then existing laws and regulations.  All such repairs, replacement or rebuilding shall be performed in a good and workmanlike manner and in compliance with all then existing laws and regulations, and Landlord shall in no event be called upon to repair, replace or rebuild the Premises or any portion thereof.  If Tenant elects not to rebuild the Premises, Tenant may terminate the Lease by written notice to Landlord.

b.  Notice to Landlord.  At least ten (10) days before the commencement of such repairs, replacement or rebuilding, Tenant shall notify Landlord of its intention to commence the same.

c.  Application of Insurance Proceeds.  For the purpose of payment toward the cost of such repairs, replacement or rebuilding from time to time (but not more frequently than once in each month), Landlord shall make available and pay all net sums received under

1460051v3

-16-

insurance policies covering such loss, as provided in Article 11 above either: (a) to the parties whom Tenant may employ to repair, replace, or rebuild same as such repairs, replacements, or rebuilding shall progress, or (b) to Tenant if Tenant shall make or pay for such repairs, replacements, or building. In either case, Landlord shall pay said insurance proceeds periodically as work and materials are actually incorporated in the Premises. If the net amount of such insurance proceeds shall be insufficient for the purpose of effecting repairs, replacement or rebuilding of all such damaged or destroyed improvements, Tenant shall pay the additional sums required, and if the amount of such insurance proceeds shall be in excess of the cost thereof, the excess shall be paid to and be retained by Tenant. If the Lease is terminated by either Landlord or Tenant, the insurance proceeds shall be subject to the rights of the holder of any mortgage to which this Lease is or shall be subject and subordinate.

d.    Rent Adjustment.   If any amount of the insurance proceeds is paid to Landlord or Landlord's Lender and not used to restore the Premises, the annual base rent shall be reduced by the amount of such payment multiplied by 10.5% (or substitute factor originally used pursuant to Article 3 to originally set the rent), commencing with the first post restoration rent payment.

e.    Rights of Landlord.   Upon receiving notification from Tenant, if the work of repairing, replacing, or rebuilding such damaged or destroyed building, improvements, furniture or equipment or construction of a new building shall not be commenced within a reasonable time from the date of any such loss, destruction or damage, or after commencement thereof shall not be expeditiously proceeded with to completion and Tenant has ceased paying rent under the terms of the Lease, Landlord shall have the right to cancel and terminate this Lease by giving to Tenant not less than thirty (30) days' notice of intention to do so.

## ARTICLE 13.
## CONDEMNATION

a.    Condemnation Defined.   The term "condemnation", as used in this Lease, shall mean the exercise of the power of eminent domain by any person, entity, body, agency or authority, or purchase in lieu of eminent domain, and the date of condemnation shall mean the day on which the actual physical taking of possession pursuant to the exercise of said power of eminent domain, or purchase in lieu thereof, occurs or the date of settlement or compromise of the claims of the parties hereto during the pendency of this exercise of said power, whichever occurs first, and property is deemed "condemned" on said date; or at Tenant's option, the day which is the second anniversary of the commencement of the eminent domain action.

b.    Landlord's Right to Collect Proceeds.   In the event the Premises or any part thereof shall be taken in condemnation proceedings, Landlord shall be entitled to collect the entire award made in any such proceedings without deduction therefrom for any estate hereby vested in or owned by Tenant subject to Tenant's rights as hereinafter set forth except

Tenant may claim a separate award for moving expenses, loss of going concern, and immovable fixtures. Tenant agrees to execute any and all further documents that may be required in order to facilitate collection by Landlord of any and all such awards. Tenant and any person or entity having an interest in Tenant's share of the award, in cooperation with Landlord, shall have the right to participate in any condemnation proceedings or agreement as aforesaid for the purpose of protecting Tenant's interests hereunder.

c.     Total Taking. If at any time during the term of the Lease the whole or substantially all of the Premises shall be so taken or condemned, this Lease shall terminate and expire on earlier of the date upon which possession shall vest in the condemning authority or, if earlier, at Tenant's option, on the second anniversary of the commencement of the eminent domain action, and the rent provided to be paid by Tenant shall be apportioned and paid to such date. For the purposes of this Section, "substantially all of the Premises" shall be deemed to have been taken if taking into consideration the amount of the net award available for such purposes, the portion of the Premises not so taken cannot be so repaired or rebuilt as to constitute a complete, rentable structure suitable for continuing the use to which Tenant was putting the Premises prior to such taking and capable of producing a proportionately fair and reasonable net annual income after payment of all operating expenses thereof, the net rent, as the same may be reduced as a result of such taking, additional rent and all other charges payable hereunder, and after performance of all covenants, agreements, terms and provisions herein and by laws provided to be performed and paid by Tenant.

d.     Distribution of Award. In the event of a taking which shall result in the termination of this Lease, the rights of Landlord and Tenant in any award shall be as follows and in the following order of priority:

     i.     There shall first be paid to the holder of any mortgage on the Premises (regardless of whether this Lease is or shall be subject and subordinate to said mortgage) the unpaid balance of principal and interest due on such mortgage.

     ii.     Landlord shall then retain that part of the award attributable to the land and improvements (reduced by any payment to a mortgagee under (a) above), and consequential and severance damages for the value of Landlord's interest in the remaining term of this Lease.

     iii.     Tenant shall be entitled to receive the balance of the award, if any.

Notwithstanding the above, Tenant shall be entitled to collect the entirety of any separate award for moving expenses, loss of going concern or immovable fixtures.

e.     Partial Taking. In the event of a partial taking which shall not result in the termination of this Lease, Landlord shall promptly proceed to repair, rebuild or restore the remainder of any building on the premises affected thereby to a complete and self-contained architectural unit, for the purposes and uses to which Tenant was putting the Premises

1460051v3

-18-

before the taking. However, if the aforementioned taking renders the Premises unsuitable for Tenant's use, Tenant may terminate this Lease as of the date when Tenant is required to yield possession.

f.    Rent Adjustment. During the period of any restoration of the Premises the rent shall be abated in proportion to the amount of the Premises that Tenant is unable to use for the serving of customers. If any amount of the condemnation proceeds is paid to the holder of any mortgage on the Premises or to Landlord on account of the taking of Land and/or improvements, and such payment is not applied to reconstruction of the Premises, the annual rent shall be reduced by an amount equal to the amount of such payment multiplied by 10.5% (or the substitute factor originally used pursuant to Article 3 to originally set the rent) commencing with the first post restoration rent payment.

## ARTICLE 14.
## ASSIGNMENT AND SUBLETTING

a.    Prohibition Against Assignment. Subject to 14.b. below, Tenant shall not assign this Lease or sublet the whole of the Premises either voluntarily or by operation of law without the prior written consent of Landlord; and such consent shall not be unreasonably withheld based on the financial credit worthiness and expertise in restaurant operations of the proposed or potential transferee. Tenant shall not hypothecate or pledge this Lease except as security for the financing of leasehold improvements. Any such assignment or subletting not provided for below, without Landlord's prior written consent shall be void and, at Landlord's option, shall terminate this Lease. Any assignment or transfer of this Lease shall not be effective unless the assignee or transferee shall, at the time of such assignment or transfer, assume in writing all the terms, covenants and conditions of this Lease thereafter to be performed by the Tenant, and shall agree in writing to be bound thereby. Tenant specifically understands and agrees that any assignment or sublease shall in no way release (unless by written agreement with Landlord) the Tenant from any of its obligations and covenants under this Lease, nor should said assignment or sublease be construed or taken as a waiver of any of Landlord's rights or remedies hereunder against or as relating to Tenant. In order for Landlord to consider an assignment or sublease, Tenant shall provide the following:

     i.    Tenant shall give Landlord a twenty (20) day prior written notice of its desire to assign or sublet, which notice shall include reliable information, including but not limited to, the name of the proposed assignee or subtenant, its financial responsibility evidenced by financial statements and/or credit reports, a description of its business activities and specific terms as to the assignment or sublease agreement including rental, term and the date said assignment or sublease is to take effect. Tenant shall comply with all reasonable requests of Landlord for additional information.

    ii.    Provided Landlord submits a preliminary approval of such assignment or sublet, such consent shall be conditioned upon the delivery to the Landlord within thirty (30) days after such preliminary approval of two executed copies of the assignment which shall include an assumption by the assignee, from and after the effective date of the assignment of the performance and observance of the covenants and conditions of this Lease contained on Tenant's part to be performed and observed, or should a sublease be involved, two executed copies of the sublease agreement which shall include an agreement on the part of the subtenant to be obligated, from and after the effective date of the sublease, to the performance and observance of the covenants and conditions of this Lease contained on Tenant's part to be performed and observed.

b.    <u>Permitted Assignments</u>.

    i.    The provisions of this Articles shall not be deemed to prohibit (1) transfers of stock among existing stockholders or among spouses, children or grandchildren of existing stockholders or inter vivos or testamentary transfers or other transfers to trusts limited liability companies, limited liability partnerships, family limited partnerships, corporations or other entities established for the benefit of such persons, (2) a public offering of the stock of Tenant, (3) the transfer of outstanding stock which are traded on a recognized securities exchange or (4) a transfer of all of Tenant's stock to any one person or entity.

    ii.    Tenant may assign this lease or sublease the entire Premises to a parent, affiliate or wholly owned subsidiary of Tenant or to any entity with which or into which Tenant may consolidate or merge or to whom all or substantially all of the assets of Tenant are sold or transferred.

c.    <u>Landlord Assignment</u>.  Landlord may assign his interest in this Net Lease Agreement without the consent of the Tenant, provided Landlord provides Tenant with a copy of such assignment as a precondition to the effectiveness of such assignment.

### ARTICLE 15.
### SECURITY INTEREST

    <u>Purchase Money Security Interest</u>.  Landlord's leasehold interest is and shall remain subject and subordinate to any lien securing bona fide purchase money financing of any of the Tenant's personal property in question in favor of a party unaffiliated with Tenant.  Landlord shall not have any lien for performance of any obligations of Tenant upon any fixtures, machinery or equipment, or goods, wares or merchandise or other personal property, and Landlord hereby expressly waives the provisions of any law giving to it such a lien.  Landlord hereby waives any lien which Landlord may have thereupon by operation of law for the performance of any obligations of Tenant hereunder, and Landlord shall promptly execute and deliver to Tenant any instrument so requested of it.

1460051v3

-20-

## ARTICLE 16.
## EVENTS OF DEFAULT: REMEDIES

a.   Events of Default.  Each of the following events shall be an Event of Default hereunder by Tenant and a breach of this Lease:

    i.    If Tenant shall file a petition in bankruptcy or insolvency or for reorganization or arrangement under the bankruptcy laws of the United States or any insolvency act of any state or shall voluntarily take advantage of any such law or act by answer or otherwise or shall be dissolved or shall make an assignment for the benefit of creditors.

    ii.    If involuntary proceedings under any such bankruptcy law or insolvency act shall be instituted against Tenant or if a receiver or trustee shall be appointed for all or substantially all of the property of Tenant, and such proceedings shall not be dismissed or such receivership or trusteeship vacated within sixty (60) days after institution or appointment.

    iii.    If Tenant shall fail to pay Landlord any rent or additional rent as and when the same shall become due and payable and shall not make such payment within five (5) days after written notice thereof.

    iv.    If this Lease or the estate of Tenant hereunder shall be transferred to any other person or party, except in a manner permitted under Article 14 hereof.

    v.    If Tenant shall make an assignment for the benefit of creditors or shall apply for or consent to the appointment of a receiver for itself or any of its property.

    vi.    If Tenant shall fail to keep, observe or perform any of the other covenants and agreements herein contained to be kept, observed and performed by Tenant, and such failure shall continue for thirty (30) days after notice thereof in writing to Tenant by Landlord, provided, however, should remedial activity on the part of Tenant reasonably require a period in excess of the said period provided, Tenant shall not be considered to have committed an event of Default provided it diligently pursues said remedial activity for a reasonable period of time as may be required as long as it diligently pursues such remedial activity.  In the event that Landlord reasonably determines that the condition of the Premises poses a risk of imminent harm to persons or property and cannot await the thirty (30) day remedial period and Tenant has not commenced such remedial action, Landlord may enter the Premises immediately upon written notice to Tenant for purposes of immediately remediating such condition.  In such event, Tenant shall reimburse Landlord its costs within ten (10) days of Landlord's written demand.

1460051v3

b.    Remedies.  Upon the occurrence and continuance of Tenant's Event of Default for failure to pay Rental when due, Landlord shall give Tenant ten (10) days' written notice that Tenant's Event of Default has occurred, specifying Tenant's Event of Default and the action required necessary to cure Tenant's Event of Default.  Upon the occurrence and continuance of Tenant's Event of Default other than the failure to pay Rent when due, Landlord shall give Tenant thirty (30) days' written notice of Tenant's Event of Default, specifying Tenant's Event of Default and the action required to cure Tenant's Event of Default.  If Tenant fails to cure Tenant's Event of Default within the time provided to cure, Landlord may resort to any and all legal remedies or combination of legal remedies which Landlord may desire to assert including but not limited to Landlord bringing an action for ejectment of Tenant and obtain an order for the sheriff to enter the Premises and removing all persons and chattels therefrom and Landlord shall not be liable for damages or otherwise by reason of re-entry or termination.  Notwithstanding such termination, the liability of Tenant for the rent provided for hereinabove shall not be extinguished for the balance of the term remaining after said termination.

Should termination of Tenant's estate occur as herein provided, or should Landlord take possession pursuant to legal proceedings or pursuant to any notice provided by law, it may either terminate this lease or it may from time to time without terminating this Lease, make such alterations and repairs as may be necessary in order to relet the premises, and relet said premises or any part thereof for such term or terms (which may be for a term extending beyond the term of this lease) and at such rental or rentals and upon such other terms and conditions as reletting all rentals received by Landlord from such reletting shall be applied, first, to the payment of any indebtedness other than rent due hereunder from Tenant to Landlord; second, to the payment of any costs and expenses of such reletting, including brokerage fees and attorneys' fees and of costs of such alterations and repairs; third, to the payment of rent due and unpaid hereunder, and the residue, if any, shall be held by Landlord and applied in payment of future rent as the same may become due and payable hereunder.

If such rentals received from such reletting during any month be less than that to be paid during that month by Tenant hereunder, Tenant shall pay any such deficiency to Landlord. Such deficiency shall be calculated and paid monthly.  No such re-entry or taking possession of said premises by Landlord shall be construed as an election on its part to terminate this lease unless a written notice of such intention be given to Tenant or unless the termination thereof be decreed by a court of competent jurisdiction.

Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this lease for such previous breach.  Should Landlord at any time terminate this lease for any breach, in addition to any other remedies it may have, it may recover from Tenant all damages it may incur by reason of such breach, including the worth at the time of such termination of the excess, if any, of the amount of rent and charges equivalent to rent reserved in this lease for the remainder of the stated term over the then reasonable rental value of the Premises for the remainder of the stated term, all of which amounts shall be immediately due and payable from Tenant to Landlord.  In determining the rent which would be payable by Tenant hereunder, subsequent to default, the rent for the

1460051v3

-22-

unexpired term shall be equal to the base monthly rent, for each remaining month plus Tenant's share of taxes, insurance, and maintenance from the commencement of the term to the time of default. The "worth" of such sum shall be determined by determining the sum of the present value of all such payments using a 10.5% interest factor. Upon termination of the Lease, Tenant shall surrender possession and vacate the Premises immediately, and deliver possession thereof to Landlord.

c.      Cure of Default. If Tenant defaults in the making of any payment, or in the doing of any act herein required to be made or done by Tenant, or does or suffers any act prohibited herein, beyond applicable cure periods, then Landlord may, but shall not be required to, make such payment or do such act, or correct any damage caused by such prohibited act and to enter the Premises as appropriate in connection therewith, and the amount of the expense thereof, if made or done so by Landlord, with interest thereon at the Interest Rate (as hereinafter defined) from the date paid by Landlord, shall be paid by Tenant to Landlord and shall constitute additional rent hereunder due and payable with the next monthly installment of rent.

d.      Landlord's Default. Should Landlord be in default under the terms of this lease, Landlord shall have thirty (30) days in which to cure the same after written notice to Landlord by Tenant, provided however should remedial action on the part of Landlord reasonably require a period in excess of said period, Landlord shall have a reasonable amount of time to cure such default provided Landlord diligently pursues such cure. If Tenant is not able to operate its customary business during the time Landlord is pursuing such cure, the rent shall be reduced pro rata based on the percentage of the customer seating area Tenant is able to operate. If the default is not cured within the applicable time period, Tenant may terminate the lease upon written notice to Tenant given prior to completion of any cure of the default.

e.      Waiver of Redemption. Tenant hereby expressly waives, to the full extent waivable, any and all rights or redemption granted by or under any present or future laws in the event of Tenant being evicted or dispossessed for any cause, or in the event of Landlord obtaining possession of the Premises, by reason of the violation of Tenant of any of the covenants or conditions of this lease, or otherwise.

f.      Remedies Cumulative. No remedy herein or otherwise conferred upon or reserved to Landlord or Tenant shall be considered to exclude or suspend any other remedy, but the same shall be cumulative and shall be in addition to every other remedy given hereunder now or hereafter existing at law or by statute and every power and remedy given by this Lease to Landlord or Tenant may be exercised from time to time and as often as occasion may arise or may be deemed expedient. No delay or admission of Landlord or Tenant to exercise any right or power arising from any event of default shall impair any such right or power or shall be construed to be a waiver of any such event of default or acquiescence therein. Notwithstanding the above Landlord shall not be entitled to double recovery or inequitable accumulation of remedies.

1460051v3

g.   Miscellaneous.  If any installment of rent is not paid by Tenant within five days after the same becomes due and payable:  (i) a late charge in the amount of $100.00 shall become immediately due and payable as compensation to Landlord for administrative costs; and (ii) the unpaid balance due Landlord shall bear interest at the Interest Rate from the date such installment became due and payable to the date of payment thereof by Tenant, and such interest shall constitute additional rent hereunder which shall be immediately due and payable.  The "Interest Rate" as used herein means 12%.

## ARTICLE 17.
## SURRENDER OF PREMISES

Tenant shall, upon the expiration or earlier termination of this Lease, peaceably vacate and surrender the Premises to Landlord in good order, condition and repair, reasonable wear and tear excepted.  Tenant shall leave the Premises and appurtenances thereto free and clear of rubbish and broom clean.

## ARTICLE 18.
## SUBORDINATION

a.   Definition of Mortgage.  For the purposes of this Article, the term "Mortgage" shall mean at any time, any mortgage of record now or hereafter placed against the Premises, any increase, amendment, extension, refinancing or recasting of a Mortgage and, in the case of a sale or lease and leaseback by Landlord of all or any part of the Premises, the lease creating the leaseback.  For the purposes hereof, a Mortgage shall be deemed to continue in effect after foreclosure thereof and during the period of redemption therefrom.

b.   Subordination of Lease.  Landlord shall provide Tenant a recordable subordination, non disturbance and attornment agreement executed by every holder of a mortgage against the Premises prior to commencement of construction of the Building and subsequently within thirty (30) days of recording any mortgage.  Such document shall provide that such holder shall not disturb Tenant's possession of the Premises under this Lease provided Tenant is not in default of the Lease beyond applicable cure periods.  Such document shall not contain any modifications to the substantive lease terms.  As long as there is an executed Subordination, Non-Disturbance and Attornment Agreement between the Landlord, Tenant and any Mortgagee, this Lease is subject and subordinate to the lien of any Mortgage which may now or hereafter encumber the Premises or any development of which the Premises is a part.  In confirmation of such subordination, Tenant shall, at Landlord's request from time to time, promptly execute any certificate or other document requested by the holder of the Mortgage.  Tenant agrees that in the event that any proceedings are brought for the foreclosure of any Mortgage, Tenant shall immediately and automatically attorn to the purchaser at such foreclosure sale, as Landlord under this Lease, and Tenant waives the provisions of any statute or rule of law, nor or hereafter in effect, which may give or purport to give Tenant any right to terminate or otherwise adversely affect this Lease or the obligations of Tenant hereunder in the event that any such foreclosure proceeding is prosecuted or completed.  Neither the holder of the

Mortgage (whether it acquires title by foreclosure or by deed in lieu thereof) nor any purchaser at foreclosure sale shall be liable for any act or omission of Landlord or bound by any prepayment by Tenant of more than one month's installment of Base Rent and additional rent or by any modification of this Lease made subsequent to the granting of the Mortgage.

## ARTICLE 19.
## CERTIFICATES BY TENANT AND LANDLORD

a.     <u>Certificate by Tenant</u>.  Tenant shall, at any time and from time to time, upon not less than twenty (20) days' prior notice by Landlord, execute and acknowledge to Landlord a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there shall have been modifications that the Lease is in full force and effect as modified and stating the modifications), and the dates to which the base rent and the additional rent have been paid, and stating whether or not to the best knowledge of the signer of such certificate, Landlord is in default in keeping, observing or performing any term, covenant, agreement, provision, condition or limitation contained in this Lease, and, if in default, specifying each such default of which the signer may have knowledge, it being intended that any such statement delivered pursuant to this Article 19(a) may be relied upon by Landlord or any prospective purchaser of the fee or any mortgage thereto or any assignee of any mortgage upon the fee of the Premises, but reliance on such certificate may not extend to any default of Landlord as to which the signer for Tenant shall have had no actual notice.  Such certificate shall not contain any amendments to the substantive terms of the Lease.

b.     <u>Certificate by Landlord</u>.  Landlord shall, at any time and from time to time, upon not less than twenty (20) days' prior notice by Tenant execute and acknowledge to Tenant a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there shall have been modifications that the Lease is in full force and effect as modified and stating the modifications), and the dates to which the base rent and additional rent have been paid, and stating whether or not, to the best knowledge of the signer of such certificate, Tenant is in default in keeping, observing or performing any term, covenant, agreement, provision, condition, or limitation contained in this Lease, and if in default, specifying each such default of which the signer may have knowledge, it being intended that any such statement delivered pursuant to this Article 19(b) may be relied upon by any prospective assignee of Tenant's interest in this Lease, any prospective sublessee of the entire Premises or any mortgagee of this Lease or of any sublease of the entire Premises, or any assignee of any mortgage upon the leasehold estate created hereby or by any sublease, but reliance on such certificate may not extend to any default of Tenant as to which the signer for Landlord shall have had no actual knowledge.

1460051v3

## ARTICLE 20.
## NOTICE

All notices or demands which shall be required or permitted by law or any provisions of this Lease shall be sent by United States certified mail, postage prepaid, to the addresses set out below for Landlord and Tenant, and such notices shall be properly given if directed to those addresses until notices given in the manner described above to change such address.

To Tenant:                          Granite City Food & Brewery, Ltd.
                                    c/o Steven Wagenheim
                                    5831 Cedar Lake Road
                                    St. Louis Park, MN 55416

To Landlord:                        Donald A. Dunham, Jr.
                                    230 South Phillips Avenue, Suite 202
                                    Sioux Falls, SD 57104

## ARTICLE 21.
## WAIVER

Failure of Landlord to insist upon the strict performance of any or all of the terms or conditions herein shall not constitute, nor be construed as, a waiver of Landlord's right to thereafter enforce any such terms or conditions, but the same shall continue in full force and effect.

## ARTICLE 22.
## HOLDING OVER

In the event Tenant shall continue to occupy the Premises after the expiration of the term hereof, such holding over shall not operate to extend or renew this Lease, but shall be construed as a tenancy from month to month which may be terminated by either party upon thirty (30) days' prior written notice. Such month-to-month tenancy by Tenant shall be subject to all the terms and provisions of this Lease.

## ARTICLE 23.
## COVENANTS

a.    Covenant of Faithful Performance. It is mutually agreed that this Lease is made upon and subject to the terms, covenants, and conditions herein contained, and that Tenant covenants, as a material part of the consideration for this Lease, to keep and perform each and all of said terms, covenants and conditions to be kept and performed by it and that this Lease is made upon the condition of such performance.

1460051v3

b.    Provisions Deemed Covenants and Conditions.  The parties hereto agree that all the
      provisions hereof are to be construed as covenants and conditions as though the words
      imparting such covenants and conditions were used in each instance.

## ARTICLE 24.
## RIGHT OF FIRST REFUSAL

If at any time during the term of this Lease or any renewal period thereof, Landlord receives a bona fide offer from a third party for the sale to said third party of the Landlord's interest in the Premises, Landlord shall give Tenant the right to purchase the Premises at the same price and on the same terms as contained in said bona fide offer.  Upon receipt of written notice (and a copy of said offer) from Landlord that Landlord has received a bona fide offer it is willing to accept, Tenant shall, within fifteen (15) days after receipt of said notice, give written notice to Landlord as to whether Tenant has elected to exercise its right to purchase the Premises, or said part interest, on the same terms and conditions as contained in said bona fide offer.  In the event that Tenant exercises said right to purchase the Premises, Tenant shall be required to close its acquisition of the Premises within ninety (90) days, and upon the terms and conditions as third party offeror would have been required to close its acquisition of the Premises.  In the event that Tenant does not exercise said right to purchase the Premises Landlord shall require as a condition of sale that the third party offeror agree that the Tenant's interest in this Lease shall not be affected by said transfer of ownership and the third party offeror shall assume all of the Landlord's obligations hereunder.

It is understood that, for purposes of this paragraph, a bona fide offer shall refer to an offer where the earnest money deposited with Landlord by said third party is equal to at least five percent (5%) of the purchase price offered by said third party.

This right of first refusal is a continuing right and if Tenant does not exercise its right of first refusal shall continue with regard to further offers so long as this Lease is in effect.

## ARTICLE 25.
## OPTION TO PURCHASE

So long as this Lease is in full force and effect and Tenant is not in default hereunder, Tenant shall have the option to purchase, at any time after the nineteenth anniversary of the Commencement Date and prior to the twentieth anniversary of the Commencement Date, all right, title and interest of Landlord in and to the Premises for the fair market value as defined below and as determined below.

a.    Fair Market Value.  "Fair Market Value" shall mean the price a willing buyer would pay
      a willing seller for the Premises with the buyer having no necessity to purchase the
      Premises and the seller having no necessity to sell the Premises.

b.    Determination of Fair Market Value.  Within fifteen (15) days of the date Tenant gives
      notice to Landlord of Tenant's election to have the fair market value and the Premises
      determined, Tenant shall give Landlord written notice of an appraiser and Landlord shall

1460051v3

-27-

give Tenant written notice of an appraiser. Within thirty (30) days after the Election Date the two appraisers shall select a third appraiser. All appraisers shall be independent from the Landlord and Tenant and have no conflict of interest, shall have MAI certification and at least ten (10) years experience appraising real estate including appraising at least five (5) restaurants. Each appraiser shall complete and deliver to Tenant and Landlord an appraisal of the Premises in compliance with MAI standards within 120 days of the Election Date.

Any appraisal that is ten percent (10%) more or less then the average of the appraisals shall not be used. The average of the remaining appraisals shall be deemed the fair market value of the Premises. The appraisers shall give each party copies of the appraisals and final written notice of the fair market value. The decision shall be final and not subject to appeal in the absence of fraud or other failure to follow the requirements set forth herein. The parties shall each pay one-half the cost of the appraisers.

Such option shall be exercised, if at all, by Tenant giving written notice thereof to Landlord, said notice period to be within thirty (30) days after having received a Final Written Notice of the fair market value as described above. Landlord shall provide Tenant with a warranty deed conveying marketable title to Tenant and with a current title insurance commitment to insure marketable title to the Premises. The title insurance company may use the sales proceeds to pay such encumbrances and costs as are necessary to insure marketable title in the name of Tenant subject to Tenant's mortgage financing. Subsequent closing of the sale and purchase must occur within ninety (90) days from the date the option is exercised.

## ARTICLE 26.
## GENERAL PROVISIONS

a.  Captions. The captions of the Articles of this Lease are for convenience only and are not a part of this Lease, and do not in any way limit or amplify the terms or provisions of this Lease.

b.  Successors and Assigns. Subject to the provisions hereof, this Lease shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

c.  Attorney's Fees. In the event either of the parties hereto commences any action or proceeding against the other under or on account of this Lease, then and in each such event, the successful party in such action or proceeding shall be entitled to receive, and the parties hereto respectively agree to pay, a reasonable attorneys' fee on account of such action or proceeding.

d.  Construction. The language in all parts of this Lease shall be in all cases construed according to its fair meaning and not strictly for or against Landlord or Tenant.

If any term, covenant, condition or provision of this Lease is held by a court of competent jurisdiction to be invalid, void or unreasonable, the remainder of the provisions hereof shall

1460051v3

remain in full force and effect and shall in no way be affected, impaired or invalidated thereby.

The parties intend that the obligations herein of Tenant are the joint and several obligations of the corporation and the Guarantors named in attached Lease Guaranty.

e.  Unavoidable Delay.  Whenever a date is herein provided for either party to do or perform any act or thing, that date shall be subject to Unavoidable Delay.  Unavoidable Delay shall mean delays in the performance or obligations under this Lease due to acts of God, acts of the public enemy, the direct unavoidable result of strikes, walk outs and lockouts which could not be reasonably anticipated, fire, floods, epidemics and quarantines, unavailability of power, unavailability of materials which would not reasonably be anticipated, the requirement to remediate environmental conditions other than as noted in environmental audits procured prior to commencing construction, the requirement to correct concealed conditions not revealed by adequate soil tests, action or inaction of governmental authorities, unusually severe weather not reasonably anticipatable, casualty to the Project improvements, and litigation which delays construction by injunction, provided no such occurrence shall constitute "Unaviodable Delay" for a party unless the party gives written notice to the other party of such occurrence within ten (10) days of its first occurrence.  For each day of Unavoidable Delay, one day shall be added to the date under this Lease for completion of the affected task and any subsequent task the commencement of which is dependent on completion of the affected task.

f.  Law Governing.  This Lease shall be governed by and construed in accordance with the laws of the State of South Dakota.

g.  Landlord Rules and Regulations.  Tenant and its employees shall observe and comply with any reasonable rules and regulations that Landlord or Landlord's agents may from time to time adopt for the Premises and that are applicable to Tenant provided Tenant has received notice of such rules and regulations pursuant to the notice provisions of Article 20 hereof, and provided such rules and regulations do not deprive Tenant of any rights set forth in this Lease or materially and unreasonably interfere with the benefits of the Lease.

h.  Initial Tenant Covenant.  Tenant covenants and warrants that it has full right and lawful authority to enter into this Lease for the full term herein granted and for any and all extensions herein provided.

i.  Entire Agreement.  This Lease, together with any written modifications or amendments hereto, hereinafter entered into, shall constitute the entire agreement between the parties relative to the subject matter hereof and shall supersede any prior agreements or understandings, whether written or oral, which the parties may have had relating to the subject matter hereof.  No subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by them.  Tenant shall not record this Lease without Landlord's written consent.

1460051v3

j.    Counterparts.  This Lease may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

k.    Consent of Landlord.  Wherever in this Lease the consent of Landlord is required, it is agreed that such consent will not be unreasonably withheld and will be promptly considered, and in the event Landlord does not refuse to grant such consent in writing within thirty (30) days after request by Tenant thereof, the same shall be deemed to have been given.

l.    Tenant Financial Statements.  On an annual basis, Tenant hereby agrees to provide to Landlord a copy of its audited financial statements.

m.    Brokerage Commission.  Landlord will pay the brokerage commission payable in connection with this Lease.

## ARTICLE 27.

## ADDITIONAL PROVISIONS

a.    Private Storm Sewer Easement.  This Lease is subject to Tenant assuming responsibility for the actions required and costs associated with the items set forth in this easement dated February 3, 2003 relating to the private storm sewer.

b.    Easement and Agreement.  This Lease is subject to Tenant assuming responsibility for the actions required and costs associated with the items set forth in this easement dated January 31, 2003 relating to the monument sign, maintenance of the detention pond, architectural agreement and miscellaneous.

IN WITNESS WHEREOF, the parties hereto have executed this Net Lease Agreement as of the day and year first above written.

LANDLORD: Donald A. Dunham, Jr.

By: _____

Its: _____

TENANT: Granite City Food & Brewery, Ltd.

By: _____Steve J. Wagenheim_____

Its: _____President_____

1460051v3

## Exhibits

| | | | |
|---|---|---|---|
| 1. | A-1 | -- | Legal Description of Land |
| 2. | A-2 | -- | Depiction of Land |
| 3. | B | -- | Fixtures and Equipment Installed by Landlord |
| 4. | C | -- | Tenant's Work |
| 5. | D | -- | Project Costs |

## EXHIBIT A-1

### Legal Description of Land

Lot 1 Huntington Ridge Commercial Plat 2, Clive, Iowa.

## EXHIBIT A-2

### Depiction of Land



1460051v3

## EXHIBIT B

### Fixtures and Equipment Installed by Landlord


**All light fixtures**

1460051v3

## EXHIBIT C

### Tenant's Work

Furniture, Fixtures and Equipment to include but not be limited to: premier equipment, brewery equipment including truck, ancillary brewery equipment, audio equipment and installation, visual equipment and installation, point of sale equipment, office furniture, additional cabinetry, pre-shift furniture and equipment, FOH menu boards, FOH art work and signage, FOH neon, miscellaneous installation labor, railings, divider glass, change orders, telephone system, accounting software, fax machine, printers, administrative systems and computers, safe, security systems and office start-up supplies.

1460051v3

**EXHIBIT D**

**Project Costs**

The following items are included in, but not limited to, "Project Costs" identified in Section 3.a. of the Lease.

HARD COSTS TO INCLUDE:

- Building Permit(s)
- Soil Test(s)
- Survey & Stakeout
- Demolition and Clearing of Site
- Excavation, Fill, Grading, Final Grade
- Sewer and Water
- Footings and Foundations
- Damproofing
- Building Floor
- Exterior Concrete/Flatwork
- Patio
- Curb & Gutter
- Asphalt Paving
- Parking Lot Striping
- Lawn Sprinkler System, Sod, Landscaping
- Fences and Enclosures
- Exterior Signage
- Tools and Equipment
- Clean Up
- Temporary Power and Utilities
- Temporary Facilities
- Miscellaneous Materials & Labor
- HVAC
- Plumbing
- Electrical
- Electrical Fixtures (Some)
- Building Sprinkler Systems
- Framing
- Insulation
- Drywall
- Finish Labor
- Painting and Staining
- Acoustical Ceiling
- Quarry/Ceramic Tile, Carpet, Vinyl, Cove Base

1460051v3

-36-

Plaintiff's
Exhibit
1 — R

- Building Package System, Building Materials, Trusses, Steel, Finish Materials
- Aluminum Entrance Assemblies/Exterior Doors
- Windows
- Roof, Gutters, Downspouts
- Fire Extinguishers
- Mini-Blinds
- Bathroom Accessories
- Cabinets
- Shelving
- Laminate/Marble Tops
- Furniture, Fixtures and Equipment installed and paid for by Landlord, if any.

LAND AND SOFT COSTS TO INCLUDE:

- Land Cost
- Title Insurance
- Architect
- Civil Engineer
- Mechanical Engineer
- Electrical Engineer
- Project Management Fee
- Legal Fees incurred in the acquisition and development of the Premises
- Appraisal
- Recording Fees
- Financing Fees
- Construction Interest
- Real Estate Taxes
- Drafting Fees
- Builders Risk Insurance
- Blueprints and Spec Books
- Project Sign
- Soil Test Costs
- Environmental Audit Costs including a Phase I Audit
- Developer's Fee as set forth in the Development Agreement

COSTS TO EXCLUDE:

- Any cost excluded from Cost of the Work by Article 8, AIA Document A111
- Any salaries and compensation of Developer's personnel other than the Developer's Fee set forth in the Development Agreement between the Landlord and Tenant
- Any overhead costs of Developer

1460051v3

- Any other costs not specifically included above unless the Landlord and Tenant have agreed in writing to add the cost of such item to the Project
- Any costs which would cause the Guaranteed Maximum Costs set forth in Section 3.a. herein, as it may be amended, to be exceeded

## ASSIGNMENT OF LANDLORD'S INTEREST IN LEASE

THIS AGREEMENT, dated this 7th day of February, 2003, is entered into by and between **DUNHAM CAPITAL MANAGEMENT, L.L.C.**, a South Dakota limited liability company, whose address is 230 South Phillips Avenue, Suite 202, Sioux Falls, South Dakota 57104 ("Assignor") and **GC DES MOINES LIMITED PARTNERSHIP,** a South Dakota limited partnership, whose address is 230 South Phillips Avenue, Suite 202, Sioux Falls, South Dakota 57104 ("Assignee").

### WITNESSETH:

WHEREAS, pursuant to an Assignment in Landlord's Interest in Lease dated February 7, 2003, Assignor is Lessor under a certain Lease dated February 7, 2003, described in Exhibit A attached hereto; and

WHEREAS, the property is legally described as follows:

Lot 1 Huntington Ridge Commercial Plat 2, Clive, Iowa.

WHEREAS, Assignor desires to assign its interest as Lessor in said Lease listed in Exhibit A to Assignee, and Assignee desires to accept the assignment thereof.

NOW, THEREFORE, in consideration of the promises and conditions contained herein, the parties hereby agree as follows:

1.     Assignor hereby assigns to Assignee all of its right, title, and interest in and to the Lease described in Exhibit A.

2.     Assignor warrants and represents that:

(a)     The attached Lease affects the property being acquired by Assignee from Assignor.  Assignor has not assigned or agreed to assign said Lease to any other party.

(b)     The Lease is in full force and effect and there exist no defaults thereunder, nor any acts or events which with the passage of time or the giving of notice could become defaults thereunder, on the part of the Assignor or any tenant thereunder.

3.     Assignor hereby agrees to indemnify and hold Assignee harmless from any and all cost, liability, damage or expense, including without limitation, reasonable attorneys' fees, originating prior to the date hereof and arising out of the Lease described in Exhibit A.

4.     Assignee hereby assumes all of the Lessor's obligations under the Lease described in Exhibit A and agrees to indemnify and hold Assignor harmless from any and all cost, liability, damage or expense, including without limitation reasonable attorneys' fees, originating subsequent to the date hereof and arising out of said Lease.

5.      This Agreement shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors in interest and assigns.

IN WITNESS WHEREOF, the parties have caused these presents to be executed on the day and year first above written.

ASSIGNOR:

DUNHAM CAPITAL MANAGEMENT, L.L.C.
A South Dakota limited liability company

By _____
Donald A. Dunham, Jr.
Its President

ASSIGNEE:

GC DES MOINES LIMITED PARTNERSHIP
A South Dakota limited partnership
By: Dunham Equity Management, L.L.C.
Its:  General Partner

By _____
Donald A. Dunham, Jr.
Its Authorized Member

2

## EXHIBIT A

**Lease Agreement**

3

09/03/2003 11:49 FAX 5159619408   CITY OF INDIANA LAND   002/002

SEP. 3.2003 10:37AM   FIRST DAKOTA TITLE   NO.814   P.2

## AMENDMENT NO. 1 TO LEASE AGREEMENT
### BETWEEN
### GC DES MOINES LIMITED PARTNERSHIP
#### AND
### GRANITE CITY FOOD & BREWERY, LTD.
#### DATED FEBRUARY 7, 2003

THIS AMENDMENT NO. 1 TO LEASE AGREEMENT BETWEEN GC DES MOINES LIMITED PARTNERSHIP AND GRANITE CITY FOOD & BREWERY, LTD., DATED FEBRUARY 7, 2003, is made by and between GC Des Moines Limited Partnership, a South Dakota limited partnership ("Landlord") and Granite City Food & Brewery, Ltd. ("Tenant").

### WITNESSETH:

WHEREAS, the Landlord and Tenant entered into a Lease Agreement dated February 7, 2003 ("Lease"); and

WHEREAS, the Tenant is required to pay a base rent equal to the sum of 10.5% of the Approved Construction Costs to Landlord; and

WHEREAS, this Amendment reflects the Agreement between the parties to specifically state what the Approved Construction Costs shall be and therefore what the resultant monthly rent will be during the initial term of the Lease.

NOW, THEREFORE, the parties hereby agree as follows:

1. **Approved Construction Costs.** The parties hereby agree that the Approved Construction Costs as defined within the Lease pursuant to Article 3 shall be $2,800,000, as defined as Project Costs in Exhibit D of the Lease.

2. **Monthly Rent.** Based on the formula set forth in Article 3 of the Lease, the annual rent payable by Tenant to Landlord shall be $294,000.

3. **Lease Commencement.** Pursuant to Article 2a, the parties hereby agree that the Lease Commencement Date is September 2, 2003.

All other provisions of the Lease Agreement Between GC Des Moines Limited Partnership and Granite City Food & Brewery, Ltd. dated February 7, 2003, are hereby ratified and confirmed.

LANDLORD:

GC DES MOINES LIMITED PARTNERSHIP
By: Dunham Equity Management, L.L.C.
Its: General Partner

By _____

TENANT:

GRANITE CITY FOOD & BREWERY, LTD.

By _Steven J. Wagenheim_

AMENDMENT NO. 2 TO LEASE AGREEMENT
BETWEEN
GC DES MOINES LIMITED PARTNERSHIP AND
GRANITE CITY FOOD & BREWERY, LTD.
DATED DECEMBER 6th, 2007

THIS AMENDMENT NO. 2 TO LEASE AGREEMENT BETWEEN GC DES MOINES LIMITED PARTNERSHIP AND GRANITE CITY FOOD & BREWERY, LTD., DATED DECEMBER 6th, 2007, is made by and between GC Des Moines Limited Partnership, a South Dakota limited partnership ("Landlord") and Granite City Food & Brewery, LTD. ("Tenant").

## WITNESSETH:

WHEREAS, Landlord and Tenant are parties under a certain Lease dated February 7, 2003, ("Lease") described in Exhibit A attached hereto; and

WHEREAS, the property is legally described as follows:

**Lot 1 in Huntington Ridge Commercial Plat Two, an Official Plat, now included in and forming a part of the City of Clive, Polk County, Iowa**

WHEREAS, Landlord and Tenant have agreed to certain Rental Increases during the Initial Term (twenty years) of the above referenced Lease;

WHEREAS, this Amendment reflects the agreement between the parties to specifically state what the Approved Rental Increases shall be and therefore what the resultant Annual Base Rent will be during the initial twenty year term of the Lease;

NOW, THEREFORE, in consideration of the promises and conditions contained herein, the parties hereby agree as follows:

1. **Annual Base Rent**. Landlord and Tenant agree to the following:

    Annual Base Rent for the period of September 2, 2003 through December 31, 2012 shall be $294,000.00.

    Annual Base Rent for the period of January 1, 2013 through December 31, 2017 shall be increased 10% to the annual amount of $323,400.

    Annual Base Rent for the period of January 1, 2018 through December 31, 2022 shall be increased 10% to the annual amount of $355,740.00.

    Annual Base Rent for the period of January 1, 2023 through September 2, 2023 shall be increased 10% to the annual amount of $391,314.00.

    These Annual Base Rent amounts do not include other additional costs as set forth in the lease agreement.



All other provisions of the Lease Agreement between the parties are hereby ratified and confirmed.

LANDLORD:         GC DES MOINES LIMITED PARTNERSHIP

By: _____
     Dunham Equity Management, LLC, Its General Partner
     By: Donald A. Dunham, Jr., Authorized Member

TENANT: GRANITE CITY FOOD & BREWERY, LTD.

By: _____
     Steven J. Wagenheim, President

STATE OF SOUTH DAKOTA   )
                            :ss

COUNTY OF MINNEHAHA   )

On the 17th day of December 2007, before me, the undersigned officer, personally appeared Donald A. Dunham, Jr., who acknowledged himself to be the Authorized Member of Dunham Equity Management, LLC, the General Partner of GC Des Moines Limited Partnership, and that as such Authorized Member, being authorized so to do, executed the foregoing instrument for the purpose therein contained, by signing the name of the company by himself as Authorized Member

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

<table>
<tr><td>Nancy J. Hughes<br>(SEAL) NOTARY PUBLIC (SEAL)<br>SOUTH DAKOTA</td><td>_____<br>Notary Public - South Dakota<br>My commission expires: 9/30/09</td></tr>
</table>

STATE OF ~~MINNESOTA~~ SD   )
                          :ss

COUNTY OF Minnehaha   )

On the 6th day of December 2007, before me, the undersigned officer, personally appeared Steven J. Wagenheim, who acknowledged himself to be the President of Granite City Food & Brewery, Ltd., and that as such President, being authorized so to do, executed the foregoing instrument for the purpose therein contained, by signing the name of the company by himself as President.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

<table>
<tr><td>Nancy J. Hughes<br>(SEAL) NOTARY PUBLIC (SEAL)<br>SOUTH DAKOTA</td><td>_____<br>Notary Public - South Dakota<br>My commission expires: 9/30/09</td></tr>
</table>

2

# EXHIBIT A

## Lease Agreement

## THIRD AMENDMENT TO LEASE

THIS THIRD AMENDMENT TO LEASE (the "Third Amendment") entered into effective the 1st day of January, 2009, by and between GC Des Moines Limited Partnership ("Landlord"), successor in interest to Donald A. Dunham, Jr. ("Dunham") and Dunham Capital Management, L.L.C., and Granite City Restaurant Operations, Inc. ("GCROI"), assignee of Granite City Food & Brewery, Ltd. ("GCFB").

### WITNESSETH:

WHEREAS, Dunham entered into a lease (the "Lease") with GCFB dated February 7, 2003, as amended by Amendment No. 1 to Lease Agreement dated February 7, 2003, as further amended by Amendment No. 2 to Lease Agreement dated December 6, 2007, and as further amended by a Master Amendment to Leases by and among GC Omaha Limited Partnership, Dunham Capital Management, L.L.C., GC Rosedale, L.L.C., GC Lincoln Limited Partnership, GC Olathe Limited Partnership, GC Eagan Limited Partnership, GC Cedar Rapids/Davenport Limited Partnership, Landlord, GC Holdings Limited Partnership, GC Wichita Limited Partnership, and GCFB dated as of October 5, 2009 (which by its terms does not affect the Lease terms past the first anniversary of its execution), and as assigned to GCROI by an Assignment and Assumption of Lease dated March 3, 2009 for the Premises located in Des Moines, Iowa, and legally described on Exhibit A attached to this Third Amendment to Lease, and

NOW THEREFORE, for good and valuable consideration, the nature, receipt and sufficiency of which is hereby acknowledged, the parties have agreed to amend the Lease as set forth below.

1.  Reduction of Rent. The base rent due from January 1, 2009 through February 28, 2009 will be reduced to $14,400.00 per month. The base rent due from March 1, 2009 through December 31, 2010 will be reduced to $8,500.00 per month. On January 1, 2011 the base rent will be increased to $24,500.00 per month which is the amount currently provided in the Lease. The base rent for the remainder of the Lease term after 2010 will be as currently stated in the Lease including escalations of rent as currently stated in the Lease.

2.  Article 2(b) of the Lease is hereby amended so that the Initial Term of the Lease shall end eight (8) years from the effective date of this Third Amendment.

3.  Article 2(c)(i) of the Lease is hereby modified to replace "five (5)" with "three (3)" so that Tenant has three consecutive options to extend the Initial Term of the Lease.

4.  This Amendment consists of the above three paragraphs and no others. All other terms and conditions of the Lease are ratified.

IN WITNESS WHEREOF, the Landlord and GCROI have executed this Agreement as of the 5th day of October, 2009.

LANDLORD

GC DES MOINES LIMITED PARTNERSHIP

By:

Name:  Donald A. Dunham, Jr.
Managing Member of Dunham Equity
Management, LLC
Its:  General Partner


TENANT

GRANITE CITY RESTAURANT
OPERATIONS, INC.

By:

Name:  Steven J. Wagenheim
Its:  President and Chief Executive Officer


**CONSENT**

Granite City Food & Brewery Ltd. ("GCFB") consents to the above Third Amendment to Lease and agrees to be bound by its terms and conditions as if GCFB were a party for the amendment.


GRANITE CITY FOOD & BREWERY LTD.

By:

Name:  Steven J. Wagenheim
Its:  President and Chief Executive Officer

## EXHIBIT A

Lot 1 in Huntington Ridge Commercial Plat Two, an Official Plat, now included in and forming a part of the City of Clive, Polk County, Iowa.

EXECUTION COPY

## FOURTH AMENDMENT TO LEASE

THIS FOURTH AMENDMENT TO LEASE (the "Fourth Amendment") entered into effective the 1ˢᵗ day of June, 2010, by and between GC Des Moines Limited Partnership ("Landlord"), successor in interest to Donald A. Dunham, Jr. ("Dunham") and Dunham Capital Management, L.L.C., and Granite City Restaurant Operations, Inc. ("GCROI"), assignee of Granite City Food & Brewery, Ltd. ("GCFB").

### WITNESSETH:

WHEREAS, Dunham entered into a lease (the "Lease") with GCFB dated February 7, 2003, as amended by Amendment No. 1 to Lease Agreement dated February 7, 2003, as further amended by Amendment No. 2 to Lease Agreement dated December 6, 2007, as further amended by the Third Amendment to Lease effective as of January 1, 2009, and as amended by a Master Amendment to Leases by and among GC Omaha Limited Partnership, Dunham Capital Management, L.L.C., GC Rosedale, L.L.C., GC Lincoln Limited Partnership, GC Olathe Limited Partnership, GC Eagan Limited Partnership, GC Cedar Rapids/Davenport Limited Partnership, GC Wichita Limited Partnership, Landlord, and GCFB dated as of October 5, 2009 (which by its terms does not affect the Lease terms past the first anniversary of its execution), and as assigned to GCROI by an Assignment and Assumption of Lease dated March 3, 2009, for the Premises located in Des Moines, Iowa, and legally described on Exhibit A attached to this Fourth Amendment to Lease, (the "Premises"),

WHEREAS, the parties desire to amend the Annual Base Rent, the term of the Lease and other terms of the Lease as reflected below.

NOW THEREFORE, for good and valuable consideration, the nature, receipt and sufficiency of which is hereby acknowledged, the parties have agreed to amend the Lease as set forth below.

1.    Rent.  Effective as of June 1, 2010, Article 3(a) of the Lease is hereby amended and replaced in its entirety to read as follows:

a.  Rent.

   i.    Base Rent.  For that part of the Initial Term beginning June 1, 2010 Tenant covenants and agrees to pay to Landlord Annual Base Rent in the annual amount of $294,000.00.  The Annual Base Rent shall be payable in equal monthly installments of $24,500.00 in advance on or before the first day of each month.

2.    Future Rent Increases.  The Annual Base Rent shall increase as stated in Amendment No. 2 to the Lease Agreement.

3.    Term.  Article 2(b) of the Lease is hereby amended so that the Initial Term of the Lease shall end on September 2, 2023.

4.   <u>Maintenance and Repairs</u>.   The third sentence of Article 6(a) of the Lease is hereby amended to read:

"Tenant shall replace and maintain the heating, ventilation and air conditioning, grease traps, and other equipment and maintain, repair and replace interior walls, interior ceiling, painting, floor coverings, plate glass and doors, canopies, and concrete repairs in the parking lot at Tenant's sole expense."

5.   <u>SNDA</u>.   This Fourth Amendment will become effective as of June 1, 2010, provided, however, that the effectiveness of this Fourth Amendment is subject to the satisfaction of the following condition precedent: GCROI's receipt within fifteen (15) days of the execution of this Fourth Amendment of a recordable Subordination, Non-Disturbance and Attornment Agreement, in form and substance satisfactory to GCROI, and duly executed by Landlord and the Security National Bank.

6.   <u>Replacement</u>.   The rent provisions outlined in this Fourth Amendment are intended to replace all previous agreements relating to the payment of Annual Base Rent for the Term of this Lease.

7.   <u>Successors and Assigns</u>.   This Fourth Amendment inures to the benefit of and is binding upon the parties hereto and their respective successors and assigns.

8.   <u>Counterparts</u>.   This Fourth Amendment may be executed in any numbers of counterparts; each counterpart is deemed to be an original document, but all counterparts together constitute but one Fourth Amendment.

9.   <u>Provisions Severable</u>.   The unenforceability or invalidity of any provision of this Fourth Amendment does not render any other provision of this Fourth Amendment unenforceable or invalid.

10.   <u>Captions</u>.   The captions at the beginning of the several paragraphs are for convenience only and do not control or affect the meaning or construction of any provision of this Fourth Amendment.

11.   <u>Applicable Law</u>.   This Fourth Amendment is governed by and construed in accordance with the laws of the State of Iowa.

12.   <u>Force and Effect</u>.   Except as expressly modified herein, Landlord and GCROI ratify, confirm, and affirm the Lease.

[SIGNATURE PAGE TO FOLLOW]

2

IN WITNESS WHEREOF, the Landlord and GCROI have executed this Agreement as of the 1st day of June, 2010.

LANDLORD

GC DES MOINES LIMITED PARTNERSHIP

By: _____
Donald A. Dunham, Jr., Managing Member
of Dunham Equity Management, LLC
Its: General Partner

TENANT

GRANITE CITY RESTAURANT
OPERATIONS, INC.

By: _____
Its: _____ CFO.

CONSENT

Granite City Food & Brewery Ltd. ("GCFB") consents to the above Fourth Amendment to Lease and agrees to be bound by its terms and conditions as if GCFB were a party for the Amendment.

GRANITE CITY FOOD & BREWERY LTD.

By: _____
Its: _____ CFO.

EXHIBIT A

Lot 1 in Huntington Ridge Commercial Plat Two, an Official Plat, now included in and forming a part of the City of Clive, Polk County, Iowa.

# AFFIDAVIT OF
# RETURN OF SERVICE

**STATE OF IOWA**                                                                    **CASE #**

**POLK COUNTY**

**CASE NAME:**                              **NOTICE OF DEFAULT**


I, the undersigned, being duly sworn on oath, do hereby depose and state that I received the
**NOTICE OF DEFAULT**

Received on the 2 day of November, 2019; served on the 4 day November, 2019 at 12:35pm

I served the same on the within name Granite City Restaurant Operations, Inc.
At 400 E. Court Avenue, **DES MOINES, IOWA**

by delivering a true and identical copy of each such item in the following manner:

_____          I served the same by delivering a copy thereof to the above personally.

_____          I served the same on the above person at the person's dwelling house or usual place

          of abode, by there delivering a copy thereof to a member of the family, or a manager, clerk,
          proprietor or custodian named and described below, a person who was then at least eighteen
          years old, who resides at this address.

   X             I served to above company, corporation, etc., by delivering a copy to the person

          named and described below.  Said service was made at the address shown below, if any
          otherwise at the above address.


Service Fee        _____      Located at      _____

                                                          National Registered Agents, Inc., Registered
Mileage            _____      Remarks         Agent / Lisa Darrell
                                                          _____

Service Charge     _____                      _____


Total Charges:  $40.00                    By: _____
                                              C Miller Investigations, Inc.

Subscribed and sworn to before by the said Raymond Miller (R. Miller)
In Polk County, Iowa on this the 6 day of November, 2019
                                          By: _____
                                              Notary Public for the State of Iowa



**PLAINTIFF'S
EXHIBIT**
2



DONNA C RAY
Commission Number 781706
My Commission Expires
December 06, 2022



**DICKINSON**LAW
*Dickinson Mackaman Tyler & Hagen P.C.*

David L. Wetsch
(515) 246-4555
dwetsch@dickinsonlaw.com

## NOTICE OF DEFAULT

November 2, 2019

TO:   **GRANITE CITY RESTAURANT OPERATIONS, INC.**
**c/o National Registered Agents, Inc., Registered Agent**
**400 E. Court Avenue**
**Des Moines, IA 50309**

TO:   **GRANITE CITY FOOD & BREWERY, LTD.**
**Attention: Steven Wagenheim**
**3600 American Boulevard West, Suite 400**
**Bloomington, MN 55431**

Re:   **1220 NW 128th Street, Clive, Iowa, Location**

**YOU AND EACH OF YOU ARE HEREBY NOTIFIED** that this office has been retained by **Francis Properties, LLC,** the Successor Landlord under a Lease Agreement dated February 7, 2003, for the property locally known as 1220 NW 128th Street, Clive, Iowa.

**YOU AND EACH OF YOU ARE HEREBY NOTIFIED** that you are now in default of the terms and conditions of the Lease in the following particulars:

| | | |
|---|---|---|
| a) | Failure to pay the November 1, 2019, Rent | $29,645.00 |
| | Failure to pay the November 1, 2019, Taxes | 7,237.50 |
| | BALANCE DUE | $36,882.50 |

**YOU AND EACH OF YOU ARE HEREBY NOTIFIED** that pursuant to Article 16 of the Lease Agreement, if the above amounts are not paid to the Landlord, Francis Properties, LLC, within FIVE (5) days from the date of service of this Notice upon you, the Landlord may initiate further proceedings.

FRANCIS PROPERTIES, LLC

By:_____
DAVID L. WETSCH, Attorney
Dickinson, Mackaman, Tyler & Hagen, P.C.
699 Walnut St., Ste. 1600
Des Moines, IA 50309
Telephone (515) 246-4555
Facsimile (515) 246-4550
dwetsch@dickinsonlaw.com

# AFFIDAVIT OF
# RETURN OF SERVICE

**STATE OF IOWA )**                                                                                    **CASE #**

 **POLK COUNTY )**

**CASE NAME:**                                **NOTICE OF INTENT**


I, the undersigned, being duly sworn on oath, do hereby depose and state that I received the
**Notice of Intent To Terminate Lease**

On the 15 day of November 2019_; that on the 15 day of November  2019, at 210:50 am
I served the same on the within name Granite City Restaurant Operations Inc
At  400 E Court Avenue, Des Moines, **IOWA**

by delivering a true and identical copy of each such item in the following manner:

_____            I served the same by delivering a copy thereof to the above personally.


_____            I served the same on the above person at the person's dwelling house or usual place

of abode, by there delivering a copy thereof to a member of the family, or a manager,
clerk, proprietor or custodian named and described below, a person who was then at
least eighteen years old, who resides at this address.

 X            I served to above company, corporation, etc., by delivering a copy to the person
_____
named and described below.  Said service was made at the address shown below, if
any otherwise at the above address.


Service Fee       _____    Located at       _____

Mileage                                                                National Registered Agents Inc,
                                                                       Lisa Darrell
Service Charge    _____    Remarks          _____

                  _____                     _____


Total Charges :  $40.00                   By_____
                                          C Miller Investigations, Inc

Subscribed and sworn to before by the said Raymond Miller(R Miller)
In Polk County, Iowa on this the 18 day of November   2019

                                          _Debra S Davis_
                                          Notary Public for the State of Iowa

DEBRA S. DAVIS
Commission Number 103353
My Commission Expires
8-31-22



**DICKINSON**LAW
*Dickinson Mackaman Tyler & Hagen P.C.*

David L. Wetsch
(515) 246-4555
dwetsch@dickinsonlaw.com

## NOTICE OF INTENT TO TERMINATE LEASE

November 15, 2019

TO:    **GRANITE CITY RESTAURANT OPERATIONS, INC.**
**c/o National Registered Agents, Inc., Registered Agent**
**400 E. Court Avenue**
**Des Moines, IA 50309**

TO:    **GRANITE CITY FOOD & BREWERY, LTD.**
**Attention: Steven Wagenheim**
**3600 American Boulevard West, Suite 400**
**Bloomington, MN 55431**

Re:    **1220 NW 128th Street, Clive, Iowa, Location**

**YOU AND EACH OF YOU ARE HEREBY NOTIFIED** that this office has been retained by **Francis Properties, LLC,** the Successor Landlord under a Lease Agreement dated February 7, 2003, for the property locally known as 1220 NW 128th Street, Clive, Iowa.

**YOU AND EACH OF YOU ARE FURTHER NOTIFIED** that you have failed to cure this default pursuant to a Notice dated November 2, 2019, served upon you November 4, 2019. As a result, you and each of you are hereby notified that pursuant to Article 16 of the Lease Agreement, if the above amounts are not paid to the Landlord, Francis Properties, within ten (10) days from the date of service of this Notice upon you, your possessory rights under the Lease Agreement shall be terminated.

FRANCIS PROPERTIES, LLC

By: _____
DAVID L. WETSCH, Attorney
Dickinson, Mackaman, Tyler & Hagen, P.C.
699 Walnut St., Ste. 1600
Des Moines, IA 50309
Telephone (515) 246-4555
Facsimile (515) 246-4550
dwetsch@dickinsonlaw.com



# NOTICE TO QUIT

TO:  Granite City Restaurant Operations, Inc. c/o National Registered Agents, Inc., Registered Agent,
400 E. Court Avenue, Des Moines, IA 50309

    You and each of you are hereby notified that the undersigned now demands that you vacate and surrender to said undersigned within three (3) days from the date of service of this notice upon you, the possession of the premises now occupied by you and described as follows:

1220 NW 128th Street, Clive, Iowa

because  YOU HAVE FAILED TO PAY RENT FOR SAID PREMISES WHEN DUE.

    You will therefore take notice and govern yourselves accordingly.

FRANCIS PROPERTIES, L.L.C., Landlord

By _____
    David L Wetsch, Attorney- Landlord
    ICIS PIN No: AT0008399

699 Walnut Street, Suite 1600
Des Moines, Iowa 50309
Telephone (515) 246-4555
Address

Section 648.3, Code of Iowa.
NOTE:  If the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., applies to this communication, attach Form No.
172, Notice of Validation of Debt.

© The Iowa State Bar Association 2019                                  Form No. 174, Notice to Quit
IowaDocs®                                                     Revised December 2018

# AFFIDAVIT OF
# RETURN OF SERVICE

**STATE OF IOWA**                                                    **CASE #**

**POLK COUNTY**

**CASE NAME:**                          **NOTICE TO QUIT**

I, the undersigned, being duly sworn on oath, do hereby depose and state that I received the
**NOTICE TO QUIT**

Received on the 25 day of November, 2019; served on the 25 day November, 2019 at 10:20am

I served the same on the within name Granite City Restaurant Operations, Inc.
At 400 E. Court Avenue, **DES MOINES, IOWA**

by delivering a true and identical copy of each such item in the following manner:

_____ I served the same by delivering a copy thereof to the above personally.

_____ I served the same on the above person at the person's dwelling house or usual place

of abode, by there delivering a copy thereof to a member of the family, or a manager, clerk,
proprietor or custodian named and described below, a person who was then at least eighteen
years old, who resides at this address.

X       I served to above company, corporation, etc., by delivering a copy to the person

named and described below.  Said service was made at the address shown below, if any
otherwise at the above address.

Service Fee _____      Located at

Mileage _____      Remarks    National Registered Agents, Inc., Registered
                                         Agent / Lisa Darrell

Service Charge _____           _____

Total Charges:  $35.00           By: _____
                                         C Miller Investigations, Inc.

Subscribed and sworn to before by the said Raymond Miller (R. Miller)
In Polk County, Iowa on this the 26 day of November, 2019     By: _____
                                                                   Notary Public for the State of Iowa



DONNA C RAY
Commission Number 781706
My Commission Expires
December 06, 2022

E-FILED  2019 NOV 29 6:56 AM POLK - CLERK OF DISTRICT COURT

**EXHIBIT E**

Small Claims Form 3.6: *Original Notice and Petition for Forcible Entry and Detainer*

In the Iowa District Court for _____Polk_____ County

| Plaintiff(s) | **Original Notice and Petition** |
|---|---|
| FRANCIS PROPERTIES, L.L.C. | **for Forcible Entry and Detainer** |
| (Name) | **(Iowa Code chapter 648)** |
| 5507 Valley Drive, #6, Bettendorf, IA 52722 | |
| (Address) | |

SCSC 646788

| (Name) | |
| (Address) | |

vs.

Defendant(s)

GRANITE CITY RESTAURANT OPERATIONS, INC.

(Name)

c/o National Registered Agents, Inc., 400 E. Court Ave, Des Moines, IA

(Address)

(Name)

(Address)

If you need assistance to participate in court due to a disability, call the disability coordinator (information at https://www.iowacourts.gov/for-the-public/ada/).  Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942).  **Disability coordinators cannot provide legal advice.**

To Defendant(s):

**1. You are notified** that Plaintiff(s) demand(s) from you possession of (state exact address of real property): 1220 NW 128th Street, Clive, Iowa

because (state basis of demand): YOUR TENANCY HAS BEEN TERMINATED.

2. **Hearing is set for** the date, time, and court location listed on the last page of this Original Notice and Petition.  The court will electronically record the hearing.  If either party desires that a certified court reporter report the hearing, that party must arrange and pay for the costs of reporting.  **Failure to appear at the hearing may result in judgment entered against you for possession of the property and court costs.**

**Plaintiff(s):** The court shall set the date of hearing to occur within **8 days** from the filing date of the Original Notice unless you check the box below:

☒ Plaintiff(s) request(s) or consent(s) to the court setting the date of hearing to occur no later than **15 days** from the filing of the Original Notice.

| /s/ David L Wetsch, #AT0008399 | /s/ |
|---|---|
| Filing Plaintiff or Attorney | Second Plaintiff, if applicable |
| Dickinson Mackaman Tyler & Hagen PC, 699 | |
| Law firm, or entity for which filing is made, if applicable | Law firm, or entity for which filing is made, if applicable |
| Walnut Street, Suite 1600, Des Moines, Iowa 50309 | |
| Mailing address | Mailing address |
| (515) 246-4555 | |
| Telephone number | Telephone number |
| dwetsch@dickinsonlaw.com | |
| Email address | Email address |
| Additional email address, if applicable | Additional email address, if applicable |

Small Claims Form 3.6, page 1 of 2*

*Upon electronic filing, a clerk's signature page will be attached to this document as page 2.

E-FILED  2019 DEC 02 8:54 AM POLK - CLERK OF DISTRICT COURT

### IN THE IOWA DISTRICT COURT IN AND FOR POLK COUNTY

FRANCIS PROPERTIES LLC
     Plaintiff(s)

Small Claims Case No.  05771  SCSC646788

vs.

**NOTICE OF HEARING**

GRANITE CITY RESTAURANT OPERATIONS INC
     Defendant(s)

You are hereby notified a  Hearing is scheduled on 12/16/2019 at 08:45 AM at the Polk County
Justice Center, 222 5th Ave, DSM, IA 50309.

YOU MUST REPORT FOR HEARING 15 MINUTES PRIOR TO HEARING TIME.

The court will electronically record the trial.  If either party desires that the trial be reported by a
certified court reporter, that party must arrange for and pay for the costs of such reporting.

                    Clerk of District Court
                    POLKCounty Iowa

If you need assistance to participate in court  due to a disability, call the disability coordinator
at (515) 286-3394 . Persons who are hearing or speech impaired may call Relay Iowa TTY at
(1-800-735-2942). **Disability coordinators cannot provide legal advice.**

E-FILED  2019 DEC 16 10:35 AM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

FRANCIS PROPERTIES LLC
Plaintiff (s)

VS

GRANITE CITY RESTAURANT OPERATIONS
INC
Defendant (s)

05771  SCSC646788

ORDER FOR FORCIBLE ENTRY
AND DETAINER

Judgment is entered based on the following:
Trial held
Record made

**IT IS ORDERED:**

That Defendant(s) be removed from the premises described below and that Plaintiff(s) be put in possession of the premises. Upon issuance of the Writ of Execution, the court commands the Sheriff of POLK County, Iowa, to remove Defendant(s) from the premises in the daytime, put Plaintiff(s) in possession of the premises, and remove from the property all persons claiming to hold property under or by virtue of authority of permission of Defendant(s). The court **further orders** that judgment be entered in favor of Plaintiff(s) and against Defendant(s) for the costs of this action and for all costs accrued on the Writ of Possession.

Description of Property: GRANITE CITY RESTAURANT OPERATIONS INC: 1220 NW 128TH STREET CLIVE, IA 50323.

Writ of Possession shall issue on:Immediately .

Issue Writ.

Appeal bond: $77329.85.

1 of 3

E-FILED  2019 DEC 16 10:35 AM POLK - CLERK OF DISTRICT COURT

☑Plaintiff Attorney
☐Plaintiff
☑Defendant Attorney
☐Defendant

**If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at 515-286-3394.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.) Disability coordinators cannot provide legal advice.**

E-FILED  2019 DEC 16 10:35 AM POLK - CLERK OF DISTRICT COURT



State of Iowa Courts

| | |
|---|---|
| **Case Number**<br>SCSC646788 | **Case Title**<br>FRANCIS PROPERTIES LLC VS GRANITE CITY<br>RESTAURANT |
| **Type:** | JUDGMENT DEFAULT |

So Ordered

Jeffrey M. Lipman, Magistrate,
Fifth Judicial District of Iowa

Electronically signed on 2019-12-16 10:35:50

E-FILED  2019 DEC 16 11:08 AM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT IN AND FOR POLK COUNTY

**FRANCIS PROPERTIES LLC**
    Plaintiff(s)

Case: 05771  SCSC646788

vs.

**WRIT OF REMOVAL
AND POSSESSION**
Docket Event Code:  WOPO

**GRANITE CITY RESTAURANT OPERATIONS INC**
    Defendant(s)

TO THE COUNTY SHERIFF OF IOWA:

On 12/16/19, judgment was entered in the court named above. The judgment requires that the defendant(s) be removed from and the plaintiff(s) be put in possession of the following property:

Granite City Restaurant Operations Inc
1220 NW 128th Street, Clive IA 50323
You are commanded to remove the above named defendant(s) from the premises and to place the above named plaintiff(s) in possession. Based on 648.22 Code of Iowa you are also commanded to collect from the defendant(s) the costs in the same manner as in ordinary cases. After performing as commanded by this writ you will file with the court a return describing your actions in execution of the writ.

Dated: December 16, 2019

/s/ Kevin Barron
_____
Clerk of Court/Designee
POLK County



# Writ of Removal and Possession- Direction to Sheriff

Plaintiff    FRANCIS PROPERTIES LLC                                 Case No.  SCSC 646788

Versus

Defendant(s)  GRANITE CITY RESTAURANT OPERATIONS INC.

Address for Removal    Address    1220 NW 128th Street

City    Clive, IA  50325

Is this property a secured building?    ◯ Yes  ⦿ No    If yes, you must provide keys or
an access code to the building

Contact Person for Plaintiff at the Time of Removal

Name    GARY HARKIN

Cell Phone No.    (563) 529-2572    Home Phone No.

Business Phone No.    (563) 529-2572

To the Sheriff:  You are hereby directed to REMOVE ALL PERSONAL PROPERTY BELONGING TO THE DEFENDANT to:

⦸  City or County
Right of Way

◯ Place in Storage    Location

Name

Address

City                 Phone No.

⦿  Other, Describe

Sheriff's Use Only

Process Fee

Deputy Fee    $10.00

Mileage                              Plaintiff or Attorney Signature

Total                              Address    699 WALNUT STREET, SUITE 1600

City    DES MOINES IA    Phone No.    (515) 246-4555

Date    DECEMBER 16, 2019

## Wetsch, David L.

| | |
|---|---|
| **From:** | Gary Harkin <garyharkin1@gmail.com> |
| **Sent:** | Tuesday, December 17, 2019 12:40 PM |
| **To:** | Wetsch, David L. |
| **Subject:** | Fwd: Granite City - Clive IA |

**[External Email]**

**This email originated outside of the Dickinson Law Firm. Please DO NOT CLICK links or open attachments unless you recognize the sender and know the content is safe.**

---------- Forwarded message ---------
From: **Gary Harkin** <garyharkin1@gmail.com>
Date: Tue, Dec 17, 2019 at 12:27 PM
Subject: Fwd: Granite City - Clive IA
To: Wetsch, David <dawetsch@midwestlawgroup.com>

---------- Forwarded message ---------
From: **Schumer, Jake** <JSchumer@hilcoglobal.com>
Date: Tue, Dec 17, 2019 at 12:01 PM
Subject: Granite City - Clive IA
To: garyharkin1@gmail.com <garyharkin1@gmail.com>

Gary,

It was a pleasure speaking with you earlier.  As discussed, Granite City Food & Brewery was forced to file for Chapter 11 bankruptcy on 12/16.  The company's assets will now be sold in a 363 bankruptcy auction within the next 60 days to raise proceeds for creditors.  Unfortunately, this restaurant is currently under critical review for rejection based on poor performance.  Our goal is to reposition this restaurant to avoid a closure/lease rejection and sell this restaurant as an asset to a new restaurant operator.

If there is no buyer for this restaurant, the unit will close and the lease will be rejected under US Bankruptcy Code.  With heavy amounts of secured debt that the tenant must pay in full prior to payment to any unsecured creditors (i.e. landlords), landlords of rejected leases should expect no payout on their 502(b)(6) lease rejection damage claims.

Please review the following lease modifications in an effort to attract a buyer for this unit:

1

- Effective 2/1/20 thru 1/31/22, base rent shall be adjusted to $210,000/year
- All currently outstanding rent shall be waived, if applicable
- The lease shall now expire on 1/31/22
- Tenant shall be granted four 5-year lease options, each at a 10% base rental increase
- All other lease terms shall remain unchanged

Please review and let me know if you have any questions on the terms above or the bankruptcy process.

Thanks, Jake

_____

Jake Schumer

 **Hilco** Global

Senior Vice President | Hilco Real Estate, LLC

**Direct:** 847.849.2993 | **Fax:** 847.897.0816

5 Revere Drive, Suite 320, Northbrook, IL 60062

www.hilcorealestate.com | jschumer@hilcoglobal.com


REDACTED

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>Granite City Food & Brewery Ltd.<br>Granite City Restaurant Operations, Inc.<br>Granite City of Indiana, Inc.<br>Granite City of Kansas Ltd.<br>Granite City of Maryland, Inc. | Jointly Administered under<br>19-43756 (WJF)<br><br>19-43756<br>19-43757<br>19-43758<br>19-43759<br>19-43760<br><br>Chapter 11 Cases |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
FRANCIS PROPERTIES, L.L.C. FOR RELIEF FROM THE AUTOMATIC STAY**

Francis Properties, L.L.C. ("Francis Properties") submits this Memorandum of Law in support of its Motion for Relief from the Automatic Stay ("Motion"). Francis Properties is entitled to relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) for cause and pursuant to 11 U.S.C. §362(d)(2) because the Debtor has no equity in the Premises and the Premises is not necessary to an effective reorganization.

## FACTS

Francis Properties relies on the facts set forth in the Motion. For brevity, those facts are not repeated here but are incorporated herein. All capitalized terms not specifically defined in this memorandum of law shall be defined as set forth in the Motion.

## ARGUMENT

Francis Properties is entitled to immediate relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2). Under 11 U.S.C. § 362(d)(1), a bankruptcy court may terminate the automatic stay "for cause, including the lack of adequate protection of an interest in

1

property of such party in interest." The bankruptcy court must grant stay relief "if the movant either proves cause, or proves that there is no equity in the property and that it is not necessary for a successful reorganization. *In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005); *see also In re Wieseler,* 934 F.2d 965, 968 (8th Cir. 1991) (noting that Sections 362(d)(1) and 362(d)(2) are alternative means of obtaining relief and a creditor is not required to pursue relief under Section 362(d)(2)).

### A. Francis Properties is Entitled to Relief Pursuant to 11 U.S.C. § 362(d)(1) for Cause.

The term "cause" in Section 362 is not defined in the Bankruptcy Code. *In re Wiley*, 288 B.R. 818, 822 (8th Cir. B.A.P. 2003). Whether cause exists to lift the stay must be decided on a case-by-case basis. *Murray Industries, Inc. v. Aristech Chemical Corporation*, 121 B.R. 635, 636 (Bankr. M.D. Fla. 1990). Courts have defined cause generally as "any reason whereby a creditor is receiving less than his bargain from a debtor and is without a remedy because of the bankruptcy proceeding." *In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005) (quoting *In re Food Barn Stores, Inc.,* 159 B.R. 264, 266 (Bankr.W.D.Mo.1993)). "Given the complexities and variations in debtor/creditor relations, adequate protection is a flexible concept, and its meaning therefore is derived from a case-by-case interpretation." *In re Johnson,* 90 B.R. 973, 979-980 (Bankr. D. Minn. 1988). Courts generally consider several factors when determining if a secured creditor's interest is adequately protected, including "equity; necessity of property to an effective reorganization; ability to pay interest or give replacement liens or indubitable equivalents; and the debtor's care in keeping property insured and repaired." *In re Johnson,* 90 B.R. 973, 979-980 (Bankr. D. Minn. 1988).

A lease that is terminated before the Debtor's bankruptcy filing "has 'expired', or ceased to be executory within the meaning of Section 365 of the Code." *In re Acorn Investments, Ltd. Ptrshp.*, 8 B.R. 506 (Bankr. S.D. Ca. 1981).  11 U.S.C. § 365(c)(3) provides:

> (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
> . . .
> (3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief.

11 U.S.C. § 365(c)(3).  Where a lease was terminated before the debtor filed bankruptcy, cause exists to lift the stay.  *See In re Masterworks, Inc.*, 94 B.R. 262, 268 (Bankr. D. Conn 1988) (finding cause to lift the automatic stay where lease terminated pre-petition); *In re Huffman*, 171 B.R. 649, 653 (Bankr. W.D. Mo. 1994); *In re Memphis-Friday's Associates*, 88 B.R. 830, 843 (Bankr. W.D. Tenn. 1988); *In* re Watts, 2013 WL 5979814, 2013 Bankr. LEXIS 4882 (Bankr. N.D. Iowa Nov. 12, 2013) ("When a lease is not assumable under § 365(c)(3), cause exists to lift the stay for actions regarding the property under the lease.").

Here, cause exists under § 362(d)(1), because (a) Francis Properties terminated the Lease before the Petition Date, and (b) the Iowa Court issued the Order granting Francis Properties possession of the Premise and the Writ was issued on December 16, 2019, before the Debtor filed its Petition.

The Lease was terminated before the Petition Date (December 16, 2019).  On November 15, 2019, the Debtor was served with the Notice of Intent to Terminate.  That notice informs the Debtor that if the Debtor fails to pay within ten (10) days of the service of the notice, its "possessory rights under the Lease shall be terminated."  The Debtor did not pay the amounts in default, so the Lease was terminated.  The Debtor also received a Notice to Quit on November 25, 2019, thereby confirming that the Lease had been terminated for Debtor's failure to cure the

default. Moreover, the Eviction Petition again notified the Debtor that "YOUR TENANCY HAS BEEN TERMINATED."

Additionally, on December 16, 2019, the Iowa Court's Order that the Debtor "be removed from the premises" was entered at 10:35 AM and the Writ was issued at 11:08 AM, which is before the Debtor filed its Petition at 3:49 PM. *See, e.g., In re Knight Jewelry,* 168 B.R. 199 (Bankr. W.D. Mo. 1994) (concluding that, under Missouri law, judgment for possession terminated lease before the debtor's bankruptcy filing); *In re Fitness World West, Inc*., 1991 Bankr. LEXIS 2266 (Bankr. S.D. Iowa April 17, 1991) (finding cause to lift the stay where lease was terminated pre-petition and Iowa state court had issued a warrant for removal and the next day the debtor/tenant filed for bankruptcy protection).

These circumstances constitute cause, warranting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

**B.     Francis Properties is Entitled to Relief Pursuant to 11 U.S.C. § 362(d)(2) Because Debtor Has No Equity in the Property and the Property is Not Necessary for Reorganization.**

Pursuant to 11 U.S.C. § 362(d)(2), relief from the stay is appropriate when a debtor has no equity and the property is not necessary to an effective reorganization. *In re Knight Jewelry*, 168 B.R. 199, 204 (Bankr. W.D.Mo. 1994).

Francis Properties is entitled to relief from the automatic stay pursuant to 11 U.S.C. §362(d)(2) because (1) the Debtor has no equity in the Premises, and (2) the Premises is not necessary to an effective reorganization. The Debtor has no equity on the Premises, because the Debtor held only rights as tenant under a lease, and, in any event, the Lease was terminated before the Debtor filed its Petition so any lease rights have been terminated.

4

The Premises is also not necessary to an effective reorganization.  The Debtor's advisor at Hilco Global informed Francis Properties, by email on December 17, 2019, that this restaurant "is currently under critical review for rejection based on poor performance."  The advisor also stated that "the goal is to reposition this restaurant to avoid a closure/rejection and sell this restaurant as an asset to a new restaurant operator."  The advisor stated that "to attract a buyer for this unit," it asked for lease modifications including a substantial decrease in annual base rent,  a waiver of past due rent, a shortening of the lease term, and the addition of extension options.  Given that this location suffers from "poor performance" and would require "repositioning" to assume and sell, the Lease (if it had not been terminated) is not necessary to an effective reorganization.

Accordingly, Francis Properties is entitled to relief from the automatic stay pursuant to the terms of 11 U.S.C. § 362(d)(2).

## **CONCLUSION**

Francis Properties is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause, because (a) Francis Properties terminated the Lease before the Petition Date, and (b) the Iowa Court issued the Order granting Francis Properties possession of the Premise, and the Writ was issued on December 16, 2019 before the Debtor filed its Petition.  Francis Properties is also entitled to relief from the automatic stay pursuant to 11 U.S.C. §362(d)(2) because (1) the Debtor has no equity in the Premises as its rights were of a tenant and the Lease has been terminated, and (2) the Premises is not necessary to an effective reorganization due to "poor performance."

Accordingly, Francis Properties respectfully requests an Order granting relief from the automatic stay to permit Francis Properties to exercise its rights and remedies under applicable

nonbankruptcy law with respect to the Premises, including but not limited to:  (a) deliver the Writ to the sheriff and have the sheriff execute the Writ, (b) remove the Debtor from the Premises, (c) enter upon and take possession of the Premises, and (d) store and/or dispose or sell of any personal property therein pursuant to applicable state law.  By reason of the foregoing, Francis Properties is entitled to have the automatic stay lifted and vacated.

Dated:  January 3, 2020                          FAFINSKI MARK & JOHNSON, P.A.

                                                 By: /s/ Lorie A. Klein
                                                 David E. Runck (#0289954)
                                                 Lorie A. Klein (#0311790)
                                                 400 Flagship Corporate Center
                                                 775 Prairie Center Drive
                                                 Eden Prairie, Minnesota 55344
                                                 Telephone: (952) 995-9500
                                                 Facsimile: (952) 995-9577
                                                 david.runck@fmjlaw.com
                                                 lorie.klein@fmjlaw.com
                                                 Attorneys for Francis Properties, L.L.C.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| In re: | Jointly Administered under 19-43756 (WJF) |
|---|---|
| Granite City Food & Brewery Ltd.<br>Granite City Restaurant Operations, Inc.<br>Granite City of Indiana, Inc.<br>Granite City of Kansas Ltd.<br>Granite City of Maryland, Inc. | 19-43756<br>19-43757<br>19-43758<br>19-43759<br>19-43760<br><br>Chapter 11 Cases |

**ORDER FOR RELIEF FROM THE AUTOMATIC STAY**

The above-entitled matter came before the Court upon Francis Properties, L.L.C.'s Motion for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d).  Upon all of the files, records and proceedings herein,

IT IS HEREBY ORDERED:

1.     The motion for relief from stay is granted as follows.

2.     The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that Francis Properties, L.L.C. may exercise its rights and remedies under applicable nonbankruptcy law with respect to real property commonly known as 1220 NW 128th Street, Clive, Iowa (the "Premises"), including but not limited to, that Francis Properties, L.L.C. may:  (a) deliver the Writ of Removal and Possession entered on December 16, 2019 to the Sheriff of Polk County, Iowa, and have the sheriff execute that writ, (b) remove the Debtor Granite City Restaurant Operations, Inc. from the Premises, (c) enter upon and take possession of the Premises, and (d) store and/or dispose or sell of any personal property therein pursuant to applicable state law.

3.     Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this order is effective immediately.

Dated:_____          _____
                                         William J. Fisher
                                         United States Bankruptcy Judge