**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Jointly Administered under 19-43756 (WJF) |
| Granite City Food & Brewery Ltd. | 19-43756 |
| Granite City Restaurant Operations, Inc. | 19-43757 |
| Granite City of Indiana, Inc. | 19-43758 |
| Granite City of Kansas Ltd. | 19-43759 |
| Granite City of Maryland, Inc. | 19-43760 |
| Debtors. | Chapter 11 Cases |

**APPLICATION FOR ORDER AUTHORIZING**
**EMPLOYMENT OF DUFF & PHELPS SECURITIES, LLC AS INVESTMENT**
**BANKERS AND FINANCIAL ADVISORS**

TO:    THE PARTIES-IN-INTEREST AS SPECIFIED IN LOCAL RULE 9013-3(A)(2).

The above-captioned debtors and debtors in possession (together the "Debtors") respectfully submit this application ("Application") for entry of an order (the "Order") substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ Duff & Phelps Securities, LLC ("Duff & Phelps") as the Debtors' investment bankers and financial advisors as of the Petition Date.  This Application is filed under Local Rules 2014-1 and 9013-4.

In support of this Application, the Debtors submit the Declaration of Brian Cullen, Duff & Phelps' Managing Director of Restructuring and Special Situations (the "Cullen Declaration"), which is attached hereto as **Exhibit B**.  In further support of the Application, the Debtors state as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure 5005, and Local Rule 1070-1.  This a core

proceeding pursuant to 28 U.S.C. § 157(b).

2.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are Sections 327(a), 328(a) and 330 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2014-1.

## BACKGROUND

4.     On December 16, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The cases are now pending before this Court.  The Debtors are currently operating their businesses and managing their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 case.

5.     Contemporaneously with the filing of this Application, the Debtors caused to be filed their *Joint Motion for Order Granting Expedited Relief and Authorizing Joint Administration of Chapter 11 Cases Pursuant to Rule 1015(B)* [Doc. # 8], pursuant to which the Debtors seek, *inter alia*, joint administration of the above-captioned Chapter 11 cases.  Each of the Debtors joins in this Application.

6.     A detailed description of the Debtors' business, their capital structure, and the facts and circumstances supporting this Application and Debtors' Chapter 11 cases, appears in the *Declaration of Richard H. Lynch in Support of Chapter 11 Petitions and First Day Motions* [Doc. # 4], filed on December 16, 2019.

## RELIEF REQUESTED

7.     Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors seek entry of the accompanying Order authorizing the employment of Duff & Phelps: (a) as

financial advisors, to assist the Debtors in the performance of their management, budgeting, accounting and financial reporting obligations under the Bankruptcy Code, and (b) as investment bankers to assist the Debtors in designing and implementing a process for the sale or sales of all or substantially all of the Debtors' assets.

8.      The services of Duff & Phelps are necessary to assist the Debtors in the Chapter 11 process.  Such services will include, but will not limited be limited to, updating the Debtors' books and records, preparing financial documents and disclosures, balance sheets, income statements, and monthly operating reports, and providing the Debtors with assistance preparing schedules, statements and other pleadings as required by the Bankruptcy Code.

9.      The Debtors also require Duff & Phelps' assistance in carrying out an auction process aimed at maximizing value for creditors while simultaneously creating a mechanism to transfer the Debtors' restaurants and other assets in a manner that preserves large numbers of jobs in thirteen states.

## RETENTION OF DUFF & PHELPS

10.      Duff & Phelps is uniquely qualified to advise the Debtors in connection with their strategic alternatives and the anticipated sale and restructuring transactions that are currently contemplated in these Chapter 11 cases.

11.      Duff & Phelps was founded in 1932 to provide high quality investment research. Over the next six decades, the firm diversified by adding investment banking services.  In 2005, Duff & Phelps strengthened its core valuation capabilities with the acquisition of Standard & Poor's Corporate Value Consulting business.  Since then, Duff & Phelps has continued to expand.  In 2006, it acquired Chanin Capital Partners, LLC, a leading provider of restructuring advisory services, and has subsequently completed acquisitions of over ten specialty valuation

and corporate finance practices.

12.     Duff & Phelps has expanded to become a leading independent investment banking advisory firm.  Duff & Phelps' corporate finance practice provides financial advice on mergers and acquisitions, transaction opinions, financings, recapitalizations, restructurings, distressed sales, and other strategic transactions.  Duff & Phelps and its affiliates serve a diverse set of clients around the world, as the firm has nearly 3,500 professionals in 28 countries around the world.  Duff & Phelps' restructuring advisory group has advised on over $850 billion of transactions.  Its restructuring professionals provide investment banking services in financially distressed situations, including advising debtors, creditors, and other constituents in chapter 11 proceedings and out-of-court restructurings.

13.     Duff & Phelps and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in Chapter 11 cases.  Duff & Phelps professionals have actively been retained as professionals in numerous cases, including, among others: *In re Café Holdings Corp* Case No. 18-05837 (Bankr. S.C. November 15, 2018); *In re Relativity Media* Case No. 18-11358 (MEW) (Bankr. S.D.N.Y. July 30, 2018); *In re Cenveo, Inc.,* Case No. 18-2218 (Bankr. S.D.N.Y. July 6, 2018); *Mac Acquisition* Case No. 17-12226 (MFW) (D. Del. October 18, 2017); *In re Arch Coal, Inc.*, Case No. 16-40120-705 (Bankr. E.D. Mo. Aug. 11, 2016) (approving the retention of Duff & Phelps to provide valuation services); *In re Cengage Learning, Inc.,* Case No. 13-44106 (Bankr. E.D.N.Y. March 31, 2014) (same); *In re The Reader's Digest Ass'n*, Case No. 09-23529 (Bankr. S.D.N.Y. Jan. 19, 2010) (same); *In re Chemtura Corp.*, Case No. 09-11233 (Bankr. S.D.N.Y. Oct. 24, 2017) (same); In re American Airlines, (AMR Corp.); Friendly Ice Cream Corp.; Citadel Broadcasting Corp.; and DBSD North America Inc.

14.    The resources, capabilities and experience of Duff & Phelps in advising debtors will be of significant assistance to the Debtors during the course of the Chapter 11 cases.  A financial advisor and investment banker with a deep bench of experience, such as Duff & Phelps, fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.

15.    The Debtors have selected Duff & Phelps as their investment banker and financial advisor based upon, among other things, (i) the Debtors' need to retain an investment banking and financial advisory firm to provide advice with respect to the Debtors' restructuring and possible sale transactions, and (ii) the extensive experience and excellent reputation of Duff & Phelps' professionals in providing investment banking services and financial advisory services.

16.    Prior to the Petition Date, the Debtors engaged Duff & Phelps to assist the Debtors in pursuing a sale of the Debtors' business assets or some other form of recapitalization or restructuring.  In connection with the engagement, Duff & Phelps (a) contacted hundreds of potential buyers, lenders and investors, (b) helped the Debtors create and populate a digital due diligence room; (c) negotiated confidentiality agreements with interested parties; (d) drafted a teaser memo and Confidential Information Memorandum; (e) solicited indications of interest; (f) negotiated letters of intent; and (g) negotiated Stalking Horse Asset Purchase Agreements intended to set the baseline for competitive bidding in a Section 363 sale assuming the Bankruptcy Court provides authorization to conduct the sale.

17.    Duff & Phelps also canvassed potential lenders, identified JMB Capital as a viable source of liquidity during these Chapter 11 cases, and negotiated the terms of a $5 million debtor-in-possession loan package on the Debtors' behalf.

18.      Prior to the Petition Date, Duff & Phelps also performed financial advisory services for the Debtors and assisted in the preparations for the filing of these cases.  Among other things, Duff & Phelps helped the Debtors to create a rolling budget forecast for use in measuring financial performance and complying with monthly reporting requirements under the Bankruptcy Code and the Debtors' debtor in possession loan.  Duff & Phelps also provided the Debtors assistance gathering information used in connection with the various first day motions.

19.      Duff & Phelps has indicated a willingness to act on the Debtors' behalf and to render necessary professional services as investment bankers and financial advisors for the Debtors.

### SCOPE OF SERVICES

20.      The Debtors request authorization to employ Duff & Phelps to assist the Debtors and their estates in all financial matters relating to the administration of the Debtors' Chapter 11 estates.  The scope of services to be provided by Duff & Phelps is set forth in that certain engagement letter dated as of August 5, 2019, and as amended by that certain Addendum dated September 6, 2019 (collectively, the "Engagement Letter").

21.      Services Duff & Phelps may render as investment bankers to the Debtors include, but are not limited to, the following:

• Review and analyze the financial and operating statements of the Debtors;

• Evaluate the Debtors' strategic and financial alternatives;

• Review and analyze the Debtors' business and financial condition;

• Assist the Debtor in evaluating, structuring, negotiating and implementing the terms (including pricing) and conditions of any sale or other transaction;

• Assist the Debtor in preparing, revising, or updating descriptive material to be provided to potential parties to any transaction, including a teaser and confidential information memorandum and a summary;

- Prepare, revise, or update a list or lists of potential purchasers and investors;

- Contact potential purchasers and investors to solicit their interest in any transaction and to provide them with the confidential information memorandum;

- Disseminate due diligence materials to prospective purchasers and investors and maintain a secure data vault for review of due diligence materials;

- Participate in due diligence visits, meetings and consultations between the Debtors and interested potential purchasers or investors, and coordinate and track distribution of all information related to a Transaction with such parties;

- Attend auctions and, to the extent required, provide affidavits in support, in any U.S. Bankruptcy Court with respect to any matters in connection with or arising out of Duff & Phelps engagement by the Debtors;

- Render financial advice and participate in meetings or negotiations with the Debtors' stakeholders in connection with any transaction;

- Assist the Debtors with the design and implementation of key employee incentive and retention programs;

- Assist the Debtors in the creation of a communications plan for interested stakeholders;

22. Services Duff & Phelps may render as financial advisors to the Debtors include, but are not limited, the following:

- Review or prepare financial projections;

- Review and monitor the Debtors' term liquidity, including monitoring of the Debtors' weekly cash flows and preparation of a weekly variance report comparing the Debtors' actual to budgeted results;

- Work with the Debtors and senior management to identify and implement short-term and long-term liquidity generating initiatives;

- Work with Debtors and senior management to oversee the operations of the Debtors through execution of selected courses of action;

- Advise and assist the Debtors' management in the preparation of financial information that may be required by the Bankruptcy Court or the Debtors' creditors and other stakeholders, and in coordinating communications with the parties in interest and their respective advisors;

- Advise on business plans, cash flow forecasts and financial projections;

12164711v2

•	Advise and assist the Debtors and counsel in preparing for, meeting with and presenting information to parties-in-interest and their respective advisors;

•	Advise and assist the Debtors in the development of a plan of reorganization and disclosure statement; and

•	Provide other appropriate financial advice as may be required by the Debtors from time to time.

## PROFESSIONAL COMPENSATION

23.	Duff & Phelps has agreed to be compensated in accordance with the applicable provisions of the Bankruptcy Code and will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, this Court's Instructions for Filing a Chapter 11 case and orders of this Court.

24.	Prior to the commencement of the above-captioned cases, the Debtors paid Duff & Phelps retainers in the aggregate amount of $691,957.00, in monthly installments of $50,000.00, to act as the Debtors' investment banker (the "Monthly Fees") and hourly fees for provided financial advisory services (the "Hourly Fees"), to compensate Duff & Phelps for all work performed in connection with these Chapter 11 cases prior to the Petition Date.  During this prepetition period, in addition to general financial advice, Duff & Phelps provided comprehensive advice and assistance to aid the Debtors' efforts to restructure, including: (a) identifying potential strategies to refinance, recapitalize or restructure existing indebtedness; (b) assisting in negotiations with the Debtors' secured lenders; (c) structuring and implementing a solicitation and sale process; (d) managing liquidity needs and negotiating a senior, secured pre-petition bridge loan and post-petition loan agreement; (e) gathering information and data needed to initiate a Chapter 11 case; (f) providing assistance in determining the Debtors' needs as of the date of filing and in the identification and preparation of first day motions and other

first day filings; (g) developing budget to satisfy reporting requirements prior to and during the bankruptcy cases.   Duff & Phelps applied $541,957.00 on account of prepetition work, leaving a balance of $150,000.00.  The Debtors have agreed that Duff & Phelps will hold the remaining balance in trust for application against its final allowed fees, and the fees and expenses incurred the day prior to the Petition Date which may not have been fully paid prior to filing.

25.     Duff & Phelps intends to apply for compensation for professional services rendered on an hourly basis with respect to its financial advisory services, and for monthly fees with respect to investment banking services, as well as for reimbursement of expenses Duff & Phelps incurs in these cases, all subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the orders of this Court.

26.     The hourly rates and rate structure that Duff & Phelps will use in these Chapter 11 cases are the same as the hourly rates and rate structure that Duff & Phelps uses in other complicated restructuring matters and in similarly complex corporate and securities matters. The rates are based upon, among other things, the level and sophistication of each professional's experience, his or her area of specialization, the expertise, performance and reputation, the size and complexity of the matter, and other factors.

27.     Duff & Phelps' current hourly rates for financial advisory services related to these Chapter 11 cases range as follows:

| Billing Category | Hourly Rate |
| --- | --- |
| Managing Directors | $750.00 |
| Directors | $677.00 |
| Vice Presidents | $538.00 |
| Associates | $325.00 |
| Analysts | $285.00 |
| Administration | $114.00 |

Duff & Phelps' hourly rates are designed to compensate Duff & Phelps fairly for the work of its professionals. Hourly rates vary with experience and seniority. The Debtors believe that Duff & Phelps' rates are fair and reasonable.

28.     In addition to the hourly fee paid for financial advisory services, Duff & Phelps charges a monthly fee of $50,000.00 for its investment banking work with Debtors. This fee is due in advance on the first business day of each month. Duff & Phelps will segregate and exclude from hourly billings related to financial advisory services the time Duff & Phelps professionals spend providing investment banking services covered by the above-described monthly fee.

29.     If a Restructuring Transaction, Sale Transaction or Financing Transaction occurs (as defined in the Engagement Letter), Debtors shall pay to Duff & Phelps a non-refundable cash fee as follows:

- Restructuring Transaction Fee: $1,250,000.00;

- Sale Transaction Fee: $1,250,000.00;

- Financing Transaction: a cash fee equal to the sum of: (i) 1.0% of the principal amount of any secured debt raised, plus (ii) 3% of the principal amount of any unsecured or mezzanine debt raised, plus (iii) 5% of the agreed value of any equity raised.

30.     Duff & Phelps' policy is to charge clients for its reasonable and documented out-of-pocket expenses incurred in connection with the client's matter. Such expenses include reasonable travel expenses, pre-approved computer and research charges, reasonable attorney fees of outside counsel, messenger services and long-distance telephone calls. Duff & Phelps intends to seek reimbursement for such expenses in connection with the fee application process.

31.     The Debtors propose that Duff & Phelps be authorized to file interim fee applications to be heard on 30-day intervals from and after the Petition Date.

32.     The Debtors are affiliated companies with common ownership and common secured lenders and have a unity of interest in these cases.  Except for potential claims under cross-guarantees, the Debtors do not believe they have claims against each other.  The Debtors believe their estates should jointly employ Duff & Phelps in these bankruptcy cases.  Retaining separate investment bankers and financial advisors for each of the Debtors would be cost-prohibitive and would result in needless duplication of effort and expenditure of estate resources.  The Debtors therefore request that the Court authorize Duff & Phelps' employment by all of the Debtors.

## DUFF & PHELPS' DISINTERESTEDNESS

33.     The Debtors have reviewed the accompanying Cullen Declaration.  To the best of the Debtors' knowledge, and as set forth more fully in the Cullen Declaration, (a) Duff & Phelps does not represent any other entity in connection with these cases; (b) Duff & Phelps is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code, as required by Section 327(a) of the Bankruptcy Code; (c) Duff & Phelps does not hold or represent an interest adverse to Debtors' estates; and (d) except as may be set forth in the Cullen Declaration, Duff & Phelps does not have any connection with the Debtors, their creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, except as may be set forth in the Cullen Declaration.

34.     Based on the information set forth in the Cullen Declaration, the Debtors believe that Duff & Phelps is a "disinterested person" under Section 327 of the Bankruptcy

Code. The Debtors have been informed that Duff & Phelps will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, Duff & Phelps will supplement its disclosure to the Court. The Debtors do not believe that the information disclosed in the Cullen Declaration should preclude Duff & Phelps from representing the Debtors in these Chapter 11 cases.

35.     In the event the United States Trustee, the Court, or another party asserts or is concerned that Duff & Phelps is not disinterested, the Debtors request that a hearing be scheduled.

## NOTICE

36.     Notice of this Application has been provided in accordance with Local Rule 2014-1(a).

## NO PRIOR APPLICATION

37.     No prior request for any of the relief sought in this Application has been made to this or any other court.

**Granite City Food & Brewery Ltd.**

Dated: January   , 2020          By: _____
                                   Richard H. Lynch
                                   Its: Chief Executive Officer

**Granite City Restaurant Operations, Inc.**

Dated: January 6 2020

By: _____
Richard H. Lynch
Its: Chief Executive Officer

**Granite City of Indiana, Inc.**

Dated: January 6, 2020

By: _____
Richard H. Lynch
Its: Chief Executive Officer

**Granite City of Kansas Ltd.**

Dated: January 6, 2020

By: _____
Richard H. Lynch
Its: Chief Executive Officer

**Granite City of Maryland, Inc.**

Dated: January 6 2020

By: _____
Richard H. Lynch
Its: Chief Executive Officer

12164711v2

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

| | |
|---|---|
| In re: | Jointly Administered under 19-43756 (WJF) |
| | |
| Granite City Food & Brewery Ltd. | 19-43756 |
| Granite City Restaurant Operations, Inc. | 19-43757 |
| Granite City of Indiana, Inc. | 19-43758 |
| Granite City of Kansas Ltd. | 19-43759 |
| Granite City of Maryland, Inc. | 19-43760 |
| | |
| Debtors. | Chapter 11 Cases |

---

### ORDER

---

Upon application by the Debtors for an Order approving the retention of Duff & Phelps Securities, LLC, 11150 Santa Monica Boulevard, Floor 6, Los Angeles, California 90025, as investment bankers and financial advisors for the Debtors in the above-captioned proceeding, the Court, having reviewed the Debtors' Application and the Declaration of Brian Cullen filed therewith and the certificate of review and recommendation for employment by the office of the United States Trustee, and the files and records herein,

IT IS ORDERED:

1.      The employment of Duff & Phelps Securities, LLC as investment bankers and financial advisors to the debtors-in-possession in carrying out their duties under Title 11 of the United States Bankruptcy Code is approved upon the terms set forth in the parties' Engagement Letter and Addendum.

2.      Fee applications by Duff & Phelps Securities, LLC may be heard on thirty (30) day intervals from the commencement of the case.

**BY THE COURT:**

Dated:                                          _____
                                                William J. Fisher
                                                United States Bankruptcy Judge

# EXHIBIT B

12164711v2

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

| | |
|---|---|
| In re: | Jointly Administered under 19-43756 (WJF) |
| | |
| Granite City Food & Brewery Ltd. | 19-43756 |
| Granite City Restaurant Operations, Inc. | 19-43757 |
| Granite City of Indiana, Inc. | 19-43758 |
| Granite City of Kansas Ltd. | 19-43759 |
| Granite City of Maryland, Inc. | 19-43760 |
| | |
| Debtors. | Chapter 11 Cases |

---

## DECLARATION OF BRIAN CULLEN

---

I, Brian Cullen, make the following declaration ("Declaration") in support of the Application ("Application") of the above-captioned debtors (the "Debtors") to employ Duff & Phelps Securities, LLC ("Duff & Phelps") as investment bankers and financial advisors effective as of December 16, 2019 (the "Petition Date").

1.      I am the Managing Director of Restructuring and Special Situations with Duff & Phelps, 11150 Santa Monica Boulevard, Floor 6, Los Angeles, California 90025.  Except as otherwise indicated, the facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto.

2.      I submit this Declaration in support of the Debtors' *Application for Orders Authorizing Employment of Duff & Phelps Securities, LLC as Investment Bankers and Financial Advisors* ("Application") pursuant to 11 U.S.C. §§ 327 and 328 and Rule 2014 of the Federal Rules of Bankruptcy Procedure.  I have read the Application and hereby incorporate its factual statements.

3.      Duff & Phelps is familiar with the Debtors' financial affairs and many of the potential financial issues that may arise in these Chapter 11 cases and has experience in all financial aspects of proceedings under Chapter 11.

## SERVICES TO BE PROVIDED

4.      Subject to further order of the Court and that certain engagement letter dated as of August 5, 2019, and as amended by that certain Addendum dated September 6, 2019 (collectively, the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to this Declaration, the financial services to be rendered by Duff & Phelps to the Debtors include, but may not be limited to, the following:

• Review and analyze the financial and operating statements of the Debtors;

• Evaluate the Debtors' strategic and financial alternatives;

• Review and analyze the Debtors' business and financial condition;

• Assist the Debtor in evaluating, structuring, negotiating and implementing the terms (including pricing) and conditions of any sale or other transaction;

• Assist the Debtor in preparing, revising, or updating descriptive material to be provided to potential parties to any transaction, including a teaser and confidential information memorandum and a summary;

• Prepare, revise, or update a list or lists of potential purchasers and investors;

• Contact potential purchasers and investors to solicit their interest in any transaction and to provide them with the confidential information memorandum;

• Disseminate due diligence materials to prospective purchasers and investors and maintain a secure data vault for review of due diligence materials;

• Participate in due diligence visits, meetings and consultations between the Debtors and interested potential purchasers or investors, and coordinate and track distribution of all information related to a Transaction with such parties;

• Attend auctions and, to the extent required, provide affidavits in support, in any U.S. Bankruptcy court with respect to any matters in connection with or arising out of this Agreement;

• Render financial advice and participate in meetings or negotiations with the

Debtors' stakeholders in connection with any transaction;

•    Assist the Debtors with the design and implementation of key employee incentive and retention programs;

•    Assist the Debtors in the creation of a communications plan for interested stakeholders;

•    Review, or prepare financial projections;

•    Review and monitor the Debtors' term liquidity, including monitoring of the Debtors' weekly cash flows and preparation of a weekly variance report comparing the Debtors' actual to budgeted results;

•    Work with the Debtors and its senior management to identify and implement short-term and long-term liquidity generating initiatives;

•    Work with Debtors and its senior management to oversee the operations of the Debtors through execution of any selected course of action;

•    Advise and assist the Debtors' management in preparation of financial information that may be required by the Bankruptcy Court or the Debtors' creditors and other stakeholders, and in coordinating communications with the parties in interest and their respective advisors;

•    Advise on business plans, cash flow forecasts and financial projections;

•    Advise and assist the Debtors' and counsel in preparing for, meeting with and presenting information to parties-in-interest and their respective advisors;

•    Advise and assist the Debtors' in the development of a plan of reorganization and disclosure statement; and

•    Provide other appropriate financial and investment banking advice as may be required by Debtors from time to time.

## DUFF & PHELPS' DISINTERESTEDNESS

5.    In connection with its proposed retention by the Debtors and in preparing this

Declaration, Duff & Phelps undertook to determine whether it had any conflicts or other

relationships that might cause it not to be disinterested or to hold or represent an interest adverse

to the Debtors.  Specifically, Duff & Phelps researched its client database to determine whether it

has any relationship with the Debtors, their officers and directors, and all of their creditors (the

"Parties-in-Interest"). Duff & Phelps obtained the names of the Parties-In-Interest from the Debtors.

6.      Duff & Phelps then researched its internal records to determine whether Duff & Phelps has any connections with the Debtors and the Parties-in-Interest.

7.      Duff & Phelps has completed a conflict check with the list of Parties-In-Interest. It may be that other creditors or potential Parties-In-Interest may hereafter be identified. Should that occur during the pendency of these Chapter 11 cases, Duff & Phelps will promptly supplement the information set forth in this Declaration.

8.      Based on the results of the conflict check, and to the best of my knowledge, neither I nor Duff & Phelps have represented or had any connection with the Debtors, their creditors, or any other person employed within the Office of the United States Trustee within the meaning Bankruptcy Rule 2014, except as stated below.

## PRIOR WORK FOR THE DEBTORS

9.      As more fully outlined in the Application, prior to the Petition Date, Duff & Phelps performed investment banking and financial advisory work for the Debtors and assisted the Debtors in their preparation for the filing of this case. Duff & Phelps has assisted the Debtors and their counsel in the preparation of the schedules and statement of financial affairs to be filed by the Debtors and represented the Debtors in connection with the preparation and filing of their respective bankruptcy petitions and related documents.

## DUFF & PHELPS' CONNECTION WITH OTHER PARTIES

10.      During the course of its conflict check, Duff & Phelps determined that it has connections with certain current and former clients who are creditors or potential creditors in the above Chapter 11 cases as identified in Exhibit 2. Duff & Phelps has verified that the work

performed on behalf of such current and/or former clients is unrelated to any of the work to be performed by Duff & Phelps in connection with these cases, and as such, Duff & Phelps does not by virtue of its connections with such clients and former clients hold or represent any interest adverse to the Debtors or their estates.

11.    In addition to the foregoing client connections, Duff & Phelps has connections with the following individuals or entities which may constitute "connections" within the meaning of Bankruptcy Rule 2014:

(a)    Taft Stettinius & Hollister LLP (formerly known as Briggs and Morgan, P.A.) ("Taft") is the proposed counsel to the Debtors.  Duff & Phelps has worked with Taft and has been adverse to Taft in connection with other bankruptcy cases.

12.    Based upon my review of the disclosures as set forth above, I believe that Duff & Phelps qualifies as a "disinterested person" for purpose of Section 101(14) of the Bankruptcy Code.  In that regard, Duff & Phelps, its directors, officers, and employees:

(a)    are not creditors or insiders of the Debtors;

(b)    are not, and were not, within two (2) years before the filing of the Debtors' Chapter 11 petitions, directors, officers or employees of the Debtors; and

(c)    do not have an interest materially adverse to the interests of the estate or of any class of creditors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

13.    Based upon the same disclosures and analyses, I believe that Duff & Phelps does not hold or represent an interest adverse to the Debtors' estates.

14.    There may be other persons within the scope of Bankruptcy Rule 2014 that, unknown to me, Duff & Phelps has represented in particular matters in the past.  Duff & Phelps

agrees not to represent such persons or parties in interest in this case while representing the Debtors, without further disclosure. Duff & Phelps will supplement its disclosures to the extent additional connections as contemplated under Bankruptcy Rule 2014 may be discovered.

15.    I do not know the identity of any attorneys or accountants who will appear in this case as counsel for creditors or any other party in interest. When their appearances are made, the firm will check their names against the firm's conflicts database, and supplemental disclosures will be made to the extent connections as contemplated under Rule 2014 may be discovered.

## **PROFESSIONAL COMPENSATION**

16.    Duff & Phelps has agreed to be compensated in accordance with the provisions set forth in Section 330 of the Bankruptcy Code and will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, this Court's Instructions for Filing a Chapter 11 case and orders of this Court.

17.    Prior to the commencement of the above-captioned cases, the Debtors paid Duff & Phelps retainers in the aggregate amount of $691,957.00, in monthly installments of $50,000.00 to act as the Debtors' investment banker (the "Monthly Fees"), and hourly fees for provided financial advisory services (the "Hourly Fees"), to compensate Duff & Phelps for all work performed in connection with these Chapter 11 cases prior to the Petition Date. During this prepetition period, in addition to general financial advice, Duff & Phelps provided comprehensive advice and assistance to aid the Debtors' efforts to restructure, including: (a) identifying potential strategies to refinance, recapitalize or restructure existing indebtedness; (b) assisting in negotiations with the Debtors' secured lenders; (c) structuring and implementing a solicitation and sale process; (d) managing liquidity needs and negotiating a senior, secured pre-petition bridge loan and post-petition loan agreement; (e) gathering information and data

needed to initiate a Chapter 11 case; (f) providing assistance in determining the Debtors' needs as of the date of filing and in the identification and preparation of first day motions and other first day filings; (g) developing a budget to satisfy reporting requirements prior to and during the bankruptcy cases.

18.     Duff & Phelps applied $541,957.00 on account of prepetition work, leaving a balance of $150,000.00.  The Debtors have agreed that Duff & Phelps will hold the remaining balance in trust for application against its final allowed fees, and the fees and expenses incurred the day prior to the Petition Date which may not have been fully paid prior to filing.

19.     Duff & Phelps intends to apply for compensation for financial advisory services rendered on an hourly basis, and monthly fees for investment banking advisory services, and for reimbursement of expenses Duff & Phelps incurs in these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the orders of this Court.  The hourly rates and rate structure that Duff & Phelps will use in these Chapter 11 cases are the same as the hourly rates and rate structure that Duff & Phelps uses in other complicated restructuring matters and in similarly complex corporate and securities matters.  The rates are based upon, among other things, the level and sophistication of each professional's experience, his or her area of specialization, the expertise, performance and reputation, the size and complexity of the matter, and other factors.

20.     Duff & Phelps' current hourly rates for financial advisory services related to these Chapter 11 cases range as follows:

| Billing Category | Hourly Rate |
|---|---|
| Managing Directors | $750.00 |
| Directors | $677.00 |
| Vice Presidents | $538.00 |
| Associates | $325.00 |
| Analysts | $285.00 |

| Administration | $114.00 |
|---|---|

Duff & Phelps' hourly rates are designed to compensate Duff & Phelps fairly for the work of its professionals. Hourly rates vary with experience and seniority. The Debtors believe that Duff & Phelps' rates are fair and reasonable.

21.    In addition to the hourly fee paid for financial advisory services, Duff & Phelps charges a monthly fee of $50,000.00 for its investment banking work with Debtors. This fee is due in advance on the first business day of each month. Duff & Phelps will exclude hours spent providing investment banking services from the hourly fees it charges for financial advisory services.

22.    If a Restructuring Transaction, Sale Transaction or Financing Transaction occurs (as defined in the Engagement Letter), Debtors shall pay to Duff & Phelps a non-refundable cash fee as follows:

i.    Restructuring Transaction Fee: $1,250,000.00;

ii.    Sale Transaction Fee: $1,250,000.00;

iii.    Financing Transaction: a cash fee equal to the sum of: (i) 1.0% of the principal amount of any secured debt raised, plus (ii) 3% of the principal amount of any unsecured or mezzanine debt raised, plus (iii) 5% of the agreed value of any equity raised.

23.    Although Duff & Phelps may arrange for more than one Sale Transaction or Restructuring Transaction, or a combination of Restructuring Transaction or Sale Transaction, Duff & Phelps understands that it is limited to a single $1,250,000 fee in connection with any one or more Restructuring Transaction(s) or Sale Transaction(s) or any combination thereof.

24.    Duff & Phelps' policy is to charge clients for its reasonable and documented out-of-pocket expenses incurred in connection with the client's matter. Such expenses include

reasonable travel expenses, pre-approved computer and research charges, reasonable attorney fees, messenger services and long-distance telephone calls. Duff & Phelps intends to seek reimbursement for such expenses in connection with the fee application process.

25.    The Debtors propose that Duff & Phelps be authorized to file interim fee applications to be heard on 30-day intervals from and after the Petition Date.

26.    The Debtors are affiliated companies with common ownership and common secured lenders and have a unity of interest in these cases. Except for potential claims under cross-guarantees, the Debtors do not believe they have claims against each other. The Debtors believe their estates can and should be represented jointly by Duff & Phelps. Retaining separate investment bankers and financial advisors for each of the Debtors would be cost-prohibitive and would result in needless duplication of effort and expenditure of estate resources. The Debtors therefore request that the Court authorize Duff & Phelps to represent all of the Debtors.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

27.    Duff & Phelps intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors Chapter 11 cases in compliance with Sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court.

Dated: January 6, 2020                                Signed: _____
                                                                              Brian Cullen

# EXHIBIT 1



PRIVILEGED AND CONFIDENTIAL

August 5, 2019

Granite City Food & Brewery, Ltd.
3600 American Boulevard West Suite 400
Bloomington, MN 55431
Attention: Richard H. Lynch, Chief Executive Officer

Re: Granite City Food & Brewery, Ltd.

Dear Richard:

This letter confirms the understanding and agreement (the "Agreement") with Granite City Food & Brewery, Ltd., and its wholly and majority owned subsidiaries, (collectively, the "Company"), concerning the engagement of Duff & Phelps Securities, LLC ("Duff & Phelps"). This Agreement reflects the terms and conditions of Duff & Phelps' engagement by the Company as financial advisor, as more fully described below. The Company, by executing this letter, acknowledges and agrees to be responsible for the payment and other obligations to Duff & Phelps, and agrees to be bound by the acknowledgements made by it in this Agreement.

1.    Engagement: Duff & Phelps is being retained to provide financial advisory services to the Company in connection with any potential Transaction (as defined below) involving the Company. Upon retention, Duff & Phelps will work at the reasonable request and direction of the Company and in conjunction with other advisors retained by the Company to:

(a)    Review and analyze the financial and operating statements of the Company;

(b)    Evaluate the Company's strategic and financial alternatives;

(c)    Review and analyze the Company's business and financial condition;

(d)    Assist the Company in evaluating, structuring, negotiating and implementing the terms (including pricing) and conditions of any Transaction;

(e)    Assist the Company in preparing, revising, or updating descriptive material to be provided to potential parties to any Transaction, including a teaser and confidential information memorandum and a summary;

(f)    Prepare, revise, or update a list or lists of potential purchasers and investors;

(g)    Contact potential purchasers and investors to solicit their interest in any Transaction and to provide them with the confidential information memorandum;

(h)    Disseminate due diligence materials to prospective purchasers and investors and maintain a secure data vault for review of due diligence materials;

Duff & Phelps Securities, LLC        T +1 310 689 0070        www.duffandphelps.com        Member: FINRA/SIPC
11150 Santa Monica Boulevard        F +1 310 689 0361
Floor 6
Los Angeles, CA 90025

11995554v2

(i)     Participate in due diligence visits, meetings and consultations between the Company and interested potential purchasers or investors, and coordinate and track distribution of all information related to a Transaction with such parties;

(j)     Attend auctions and, to the extent required, provide affidavits in support, in any U.S. Bankruptcy Court with respect to any matters in connection with or arising out of this Agreement;

(k)     Render financial advice and participate in meetings or negotiations with the Company's stakeholders in connection with any Transaction;

(l)     Assist the Company with the design and implementation of key employee incentive and retention programs;

(m).     Assist the Company in the creation of a communications plan for interested stakeholders; and

(n)     Provide other appropriate general restructuring advice as may be requested by the Company from time to time.

The advisory services and compensation arrangements set forth herein do not encompass investment banking or financial advisory services not set forth in this Paragraph 1, if any, for which Duff & Phelps may be later retained by the Company. Any other services will be evidenced by a separate agreement or agreements between the necessary parties. Duff & Phelps will be compensated for any testimony in any court with respect to any matters in connection with or arising out of this Agreement at its standard hourly rates, in addition to any fees due hereunder. In performing its services pursuant to this Agreement, Duff & Phelps is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction; and Duff & Phelps will not act, or be deemed to have acted or assumed the duties of acting, in any managerial or fiduciary capacity whatsoever for the Company. Duff & Phelps makes no representations or warranties concerning the Company's ability to improve its operations, maintain or secure sufficient liquidity to operate its business or successfully complete a Transaction or other transaction. The Company agrees that Duff & Phelps shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any valuation opinions, fairness opinions, or any advice or opinions with respect to solvency in connection with any Transaction, but may provide advice with respect to the foregoing to the Company in connection with the performance of the financial advisory duties described above. The Company confirms that it will rely on its own counsel, accountants, and similar expert advisors for legal, accounting, tax and other similar advice.

2.     Term of Agreement: This Agreement shall commence as of the effective date of this letter and shall continue until the expiration of 15 days after either the Company or Duff & Phelps gives written notice of termination to the other party. Upon any termination, the provisions of this Paragraph 2 and Paragraph 3 shall survive the termination of this Agreement to the extent such provisions relate to the payment of fees and expenses due or accrued on or before the effective date of termination. The provisions of Paragraphs 4 through 16 and Schedule I shall also survive the termination of this Agreement and shall remain in effect. Additionally, if this Agreement is terminated, Duff & Phelps shall be entitled to payment of a Transaction Fee and/or a Financing Fee (each as defined below), if an agreement with respect to a Transaction is consummated within 15 months of the effective date of such termination. The Company's board of directors shall be deemed to have determined the services rendered under this Agreement to have been satisfactorily

performed <u>unless</u> written, good faith notice of the contrary is delivered by the Company to Duff & Phelps by no later than the effective date of termination.

3.    <u>Fees and Expenses</u>:  The Company agrees that it shall be solely responsible for, and shall pay, the compensation and other amounts that are payable to Duff & Phelps hereunder and for certain other obligations specified herein (including without limitation the indemnification and other obligations in Schedule I).  As consideration for the services rendered and to be rendered by Duff & Phelps, the Company agrees to pay Duff & Phelps the following non-refundable amounts:

(a)    <u>Monthly Fees</u>:  The Company shall be liable for and shall pay to Duff & Phelps a non-refundable cash fee of $50,000 per month ("Monthly Fees"), which amount shall be paid in advance on the first business day of each month for each month of the engagement through the earlier of (i) termination of this Agreement in accordance with paragraph 2 hereof; or (ii) the effective date of a Restructuring Transaction or a Sale Transaction.  The first Monthly Fee shall be paid by the Company upon execution of this Agreement, such first Monthly Fee to be reduced pro rata to the number of days expired in such month prior to the execution of this Agreement.  50% of any Monthly Fees paid shall be credited against any Transaction Fee payable under this Agreement.

(b)    <u>Transaction Fee</u>:  If a Restructuring Transaction or Sale Transaction (as defined below) occurs during the term of this engagement or within 15 months following the termination of the engagement (such 15 month period being the "Tail Period"), at the closing of such Restructuring Transaction or Sale Transaction, the Company shall pay to Duff & Phelps a non-refundable cash fee as follows:

i)    *Restructuring Transaction Fee.*  Upon the date of consummation of a transaction that embodies a Restructuring Transaction, Duff & Phelps shall earn, and the Company shall promptly pay Duff & Phelps, a cash fee of $1,250,000 ("Restructuring Transaction Fee");

ii)    *Sale Transaction Fee.*  Upon the closing of a Sale Transaction (as defined below), Duff & Phelps shall earn, and the Company shall thereupon pay immediately,  a cash fee of $1,250,000 ("Sale Transaction Fee").

(c)    <u>Financing Fee</u>.  Upon the closing of each Financing Transaction (as defined below) ) that occurs during the term of this engagement or within the Tail Period, Duff & Phelps shall earn, and the Company shall thereupon pay immediately and directly from the proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee ("Financing Fee") equal to the sum of: (i) 1.0% of the principal amount of any secured debt raised, plus (ii) 3% of the principal amount of any unsecured or mezzanine debt raised, plus (iii) 5% of the agreed value of any equity raised.

(d)    Any Restructuring Transaction Fee or Sale Transaction Fee is referred to herein as a "Transaction Fee" and are collectively referred to herein as "Transaction Fees."  For purposes of clarification, in the event substantially all of the assets of the Company are sold, the Company shall be responsible for paying only a single Transaction Fee.

(e)    <u>Expense Reimbursement</u>:  The Company shall reimburse Duff & Phelps for its reasonable and documented out-of-pocket expenses incurred in connection with the services (e.g., travel, meals, lodging, etc.) to be provided under this Agreement and the preparation of this Agreement on the first day of each month.  Out-of-pocket expenses shall include, but not be limited to, all reasonable travel expenses, pre-approved computer and research

charges, reasonable attorney fees, messenger services and long-distance telephone calls incurred by Duff & Phelps in connection with the services to be provided.

"Transaction" shall mean any of the following:,

i)  *Restructuring Transaction.* Any transaction or series of transactions that constitute a recapitalization or restructuring of the Company's equity and/or debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, preferred stock, partnership interests, lease obligations, trade credit facilities, collective bargaining agreements and other contract or tort obligations), including accrued and or accreted interest thereon, which are outstanding as of the Effective Date, including, without limitation, interest bearing trade debt which recapitalization or restructuring is effected pursuant to an exchange transaction, tender offer, a plan of reorganization under the Bankruptcy Code, a solicitation of consents, waivers, acceptances or authorizations, any change of control transaction, any refinancing, sale, acquisition, merger, repurchase, exchange, conversion to equity, cancellation, forgiveness, retirement and/or a modification or amendment to the terms, conditions or covenants (including, without limitation, the principal balance, accrued or accreted interest, payment term, other debt service requirement and/or financial or operating covenant) of any agreements or instruments governing any of the Company's equity and/or debt securities (such modification or amendment shall include, without limitation, any forbearance for at least 6 months with respect to any payment obligation) or any combination of the foregoing transactions (each a "Restructuring Transaction"); provided, however, that continued forbearance by the Company's lenders shall not, without more, constitute a Restructuring Transaction;

ii. *Sale Transaction.* Any transaction or series of related transactions that constitute the disposition to one or more third parties (including, without limitation, any person, group of persons, partnership, corporation or other entity, and also including, among others, any of the Company's existing owners shareholders, employees, creditors and/or the affiliates of each) in one or a series of related transactions of (a) all or a material portion of the equity securities of the Company or any of its direct or indirect subsidiaries or affiliates or any interest held by the Company, any direct or indirect subsidiary or affiliate in any joint venture or partnership or other entity formed by any of them and/or (b) any significant portion of the assets (including the assignment of any executory contracts and any intangible assets), business, revenue, income or operations of the Company, any of its direct or indirect subsidiaries or any joint venture or partnership or other entity formed by it, in either case, including, without limitation, through a sale or exchange of capital stock, operations or assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction, including, without limitation, any sale transaction under Sections 363, 1129 or any other provision of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") or Article 9 of the Uniform Commercial code and/or any applicable state law (each a "Sale Transaction"); or

i)  *"Financing Transaction"* shall mean any of the following: (a) any transaction or series of related transactions that constitutes any refinancing of all or any portion of the Company's existing obligations and/or (b) the placement, raising or issuance of any form of equity, equity-linked or debt securities (including without limitation any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt) or any loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under

the Bankruptcy Code by the Company (any or all of which being "Securities"), from any source including, without limitation, any of the Company's existing owners, shareholders, employees, creditors or affiliates (whether or not such transaction is effectuated in-court, out-of-court, through the confirmation of a plan of reorganization or otherwise under the Bankruptcy Code, or whether the requisite consents to such transaction(s) are obtained in-court or out-of-court) (each a "Financing Transaction").

The foregoing notwithstanding, term "Transaction" shall not include any transfer to Michael Staenberg of the Company's existing indebtedness owed to Citizens Bank that occurs within sixty (60) days from the date of this Agreement or any ensuing forbearance in the collection of such indebtedness.

4.    <u>Company Information and Coordination</u>: The Company recognizes and confirms that in rendering services hereunder, Duff & Phelps will be using and relying on, and assuming the accuracy of, without any independent verification, data, material and other information (collectively, the "Information") furnished to Duff & Phelps by or on behalf of the Company or other third parties (including their agents, counsel, employees and representatives). The Company understands that Duff & Phelps will not be responsible for independently verifying the accuracy of the Information and shall not be liable for inaccuracies in any such Information. The Company will assure that all Information supplied to Duff & Phelps by or on behalf of the Company will, as of its respective dates, be accurate and complete in all material respects. Furthermore, the Company will cooperate with Duff & Phelps in all phases of its financial advisory services. Unless required by law (including pursuant to a subpoena or other legal process) and, to the extent practical, prior written notice is provided to the Company so that the Company may challenge such disclosure, Duff & Phelps will not disclose to any third party (other than Duff & Phelps' counsel) any confidential and proprietary Information provided by the Company to Duff & Phelps, except (i) with the Company's consent or (ii) in furtherance of Duff & Phelps' engagement hereunder.

5.    <u>Indemnification</u>: The Company shall provide indemnification and shall satisfy other obligations set forth in Schedule I hereto, which is an integral part hereof and is hereby incorporated by reference. Further, if an Indemnified Person (as defined in Schedule I) is requested or required to appear as a witness in any Action (as defined in Schedule I) that is brought by or on behalf of or against the Company or that otherwise relates to this Agreement or the services rendered by Duff & Phelps hereunder, the Company shall reimburse Duff & Phelps and the Indemnified Person for all expenses incurred by them in connection with such Indemnified Person appearing or preparing to appear as such a witness, including without limitation, the fees and disbursements of legal counsel.

6.    <u>Bankruptcy Court Approval</u>: In the event the Company commences a case under chapter 11 ("Chapter 11") of the Bankruptcy Code, this Agreement is subject to the entry of an order of the court having jurisdiction over such Chapter 11 case approving the retention of Duff & Phelps pursuant to the terms hereof. The Company shall use commercially reasonable efforts to seek within ten (10) days of such case commencement court authorization of the retention of Duff & Phelps, nunc pro tunc to the date of this Agreement or (to the extent this Agreement pre-dates the Chapter 11 case commencement date), the commencement date of the Company's reorganization case, on the terms and provisions in this Agreement pursuant to section 328(a) of the Bankruptcy Code. The Company shall supply Duff & Phelps with a draft of the retention application and proposed order prior to the filing of that application and proposed order to enable Duff & Phelps and its counsel to review and comment thereon. The form of order approving the Agreement and authorizing the retention of Duff & Phelps shall be acceptable to Duff & Phelps in its sole discretion. If the order authorizing the employment of Duff & Phelps is not obtained, or is later reversed or set aside for any reason, Duff & Phelps may terminate this Agreement, and the Company shall reimburse Duff & Phelps for all fees and expenses reasonably incurred prior to the date of expiration

Granite City Food & Brewery, Ltd.
August 5, 2019
Page 6 of 12

or termination, subject to the requirements of the Bankruptcy Code. The parties acknowledge that a substantial professional commitment of time and effort will be required by Duff & Phelps and its professionals hereunder, and that such commitment may foreclose other opportunities for Duff & Phelps. Moreover, the actual time and commitment required by the engagement may vary substantially from week to week or month to month, creating 'peak load' issues for Duff & Phelps. Given the numerous issues which may arise in this engagement, Duff & Phelps' commitment to the variable level of time and efforts necessary to address these issues, and the market prices for Duff & Phelps' engagements of this nature, the parties agree that the fee arrangement hereunder, pursuant to section 328(a) of the Bankruptcy Code, fairly compensates Duff & Phelps and provides certainty for the Company. Duff & Phelps acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Duff & Phelps' fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders. In the event that the Company becomes a debtor under the Bankruptcy Code and Duff & Phelps' engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Duff & Phelps hereunder as promptly as practicable in accordance with the terms hereof. Prior to commencing a Chapter 11 case, the Company shall pay all invoiced amounts to Duff & Phelps in immediately available funds by wire transfer. The terms of this paragraph are solely for the benefit of Duff & Phelps, and may be waived, in whole or in part, only by Duff & Phelps.

7.    <u>Entire Agreement; Counterparts; Validity and Enforceability</u>:  This Agreement constitutes the entire Agreement between the parties and supersedes and cancels any and all prior or contemporaneous arrangements, understandings and agreements, written or oral, between them relating to the subject matter hereof. This Agreement may be executed in any number of counterparts and by different parties on separate counterparts. Each of such counterparts shall be deemed to be an original, and all of such counterparts, taken together, shall constitute but one and the same agreement. Delivery of an executed counterpart of this letter by telefacsimile or electronic mail shall be equally effective as delivery of a manually executed counterpart. This Agreement may not be amended or modified, nor may any provision be waived, except in writing signed by both parties. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.

8.    <u>Affiliation</u>:  The Company recognizes that Duff & Phelps has been retained only by the Company and that the Company's engagement of Duff & Phelps is not deemed to be on behalf of and is not intended to and does not confer rights upon any security holders of the Company or any officers, agents, employees or representatives of either the Company or any of the Company's affiliates. No one other than the Company is authorized to rely upon the engagement of Duff & Phelps hereunder or any statements, advice, opinions or conduct of Duff & Phelps.

9.    <u>Confidentiality</u>:  Except as contemplated by the terms hereof or as otherwise may be necessary for Duff & Phelps to carry out its obligations hereunder, and except as required by applicable law and regulations or by a governmental authority or court of competent jurisdiction, Duff & Phelps shall keep confidential all nonpublic information provided to it by, or on behalf of the Company until the earlier to occur of (i) the date two years from the date of this Agreement or (ii) the date such information shall have been made publicly available by the Company or by others without breach of a confidentiality agreement, and shall not disclose such information to third parties other than to its employees and advisors as Duff & Phelps determines have agreed to keep such information confidential and have a need to know without the consent of the Company. Except as may be required by applicable law and regulations or by a governmental authority or court of competent jurisdiction, any advice to be provided by Duff & Phelps pursuant to its engagement hereunder shall not be disclosed publicly or made available to third parties by the Company.

10.     <u>Advertisements</u>:  Upon completion of the transactions contemplated by this Agreement, Duff & Phelps may place advertisement in financial and other media at its own expense describing its services to the Company hereunder.

11.     <u>Governing Law and Arbitration</u>:  This Agreement will be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in such State, without giving effect to the choice of law provisions thereof. Except for the Company's seeking of Chapter 11 reorganization relief, each of the parties hereto agrees to submit any claim or dispute arising out of or related to this Agreement to private and confidential arbitration by a single arbitrator selected in accordance with the rules of the American Arbitration Association.  The arbitration proceedings shall be governed by the Commercial Rules of Arbitration of the American Arbitration Association and shall take place in the Borough of Manhattan, New York City, New York.  The arbitrator shall have the power to order discovery and the authority to award any remedy or relief that a court of the State of New York could order or grant, including, without limitation, specific performance.  The decision of the arbitrator shall be final and binding on each of the parties and judgment thereon may be entered in any court having jurisdiction.  This arbitration procedure is intended to be the exclusive method of resolving any claim arising out of or related to this Agreement, including any claim as to the validity of this Agreement.  Each party agrees to the personal and subject matter jurisdiction of the arbitrator for the resolution of any such claim, including any issue relating to this arbitration position.  In the event of any arbitration arising out of or in connection with this Agreement, the prevailing party shall be entitled to an award of actual attorneys' fees and costs incurred in connection with the arbitration. If the Company becomes a debtor under Chapter 11 of the Bankruptcy Code while an arbitration is pending, any claims otherwise subject to arbitration hereunder may be heard and determined before the Bankruptcy Court.

THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATING TO OR ARISING OUT OF THE ENGAGEMENT OF DUFF & PHELPS PURSUANT TO, OR THE PERFORMANCE BY DUFF & PHELPS OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT.

12.     <u>Power and Authority</u>:  The Company has all requisite corporate power and authority to enter into this Agreement and the transactions contemplated hereby (including, without limitation, a Transaction).  This Agreement has been duly authorized by all necessary corporate action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

13.     <u>No Third Party Claims</u>:  No (a) direct or indirect holder of any equity interests or securities of Duff & Phelps whether such holder is a limited or general partner, member, stockholder or otherwise, (b) affiliate of Duff & Phelps, or (c) director, officer, employee, representative, or agent of Duff & Phelps, or of an affiliate of Duff & Phelps or of any such direct or indirect holder of any equity interests or securities of Duff & Phelps (collectively, the "Party Affiliates") shall have any liability or obligation of any nature whatsoever in connection with or under this letter Agreement or the transactions contemplated hereby, and the Company waives and releases all claims against such Party Affiliates related to any such liability or obligation.

14.     <u>Successors and Assigns</u>:  The benefits of this Agreement, together with Schedule I hereto, shall inure to the respective successors and permitted assigns of the parties hereto and any Indemnified Person, and their respective successors, permitted assigns and representatives, and

Granite City Food & Brewery, Ltd.
August 5, 2019
Page 8 of 12

the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns.  This Agreement and Schedule I hereto may not be assigned without the prior written consent of the nonassigning party (or parties).

15.    Other Matters:  If this letter correctly sets forth our Agreement on the matters covered herein, please so indicate by signing and returning the enclosed copy of this letter and signing and retaining the duplicate we are enclosing for your records.  Upon execution by each party, this letter will constitute a legally binding Agreement between the Company and Duff & Phelps.

16.    Notices:  All notices required or permitted to be delivered under this Agreement shall be sent, if to Duff & Phelps, to the address set forth at the head of this letter, to the attention of Brian Cullen, and if to the Company, to the address set forth above to your attention, or to such other name or address as may be given in writing to the other party.  All notices under this Agreement shall be sufficient if delivered by facsimile or overnight mail.  Any notice shall be deemed to be given only upon actual receipt.

**[Remainder of page intentionally left blank.  Signature page follows.]**

11995554v2

Granite City Food & Brewery, Ltd.
August 5, 2019
Page 9 of 12

We trust the foregoing terms and provisions are agreeable to you, and request that you sign and return the enclosed copy of this Agreement to us at your earliest convenience.

Very truly yours,

**DUFF & PHELPS SECURITIES, LLC**

By: _____

Name: B. CULLEN

Title: MD

Agreed and Accepted:

**GRANITE CITY FOOD & BREWERY, LTD.**

By: _____

Name:

Title: CEO

11995554v2

### Schedule I

### <u>INDEMNIFICATION PROVISIONS</u>

This Schedule I is a part of and is incorporated into that certain letter agreement (the "Agreement"), dated July___, 2019 by Granite City Food & Brewery, Ltd. and its wholly and majority owned subsidiaries, (collectively, the "Company"), concerning the engagement of Duff & Phelps Securities, LLC ("Duff & Phelps"). Capitalized terms not defined herein shall have the same meaning assigned in the Agreement.

The Company shall indemnify and hold harmless Duff & Phelps and its affiliates and their respective directors, officers, employees, attorneys and other agents appointed by any of the foregoing and each other person, if any, controlling Duff & Phelps or any of its affiliates (Duff & Phelps and each such person and entity being referred to as an "Indemnified Person"), from and against any finally determined losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "Liabilities"), and will reimburse each Indemnified Person for all fees and expenses (including the reasonable fees and expenses of counsel) (collectively, "Expenses") as they are incurred in investigating, preparing, pursuing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party (collectively, "Actions"), arising out of or in connection with advice or services rendered or to be rendered by an Indemnified Person pursuant to the Agreement, the transaction contemplated thereby or any Indemnified Persons' actions or inactions in connection with any such advice, services or transaction (the "Services"); provided that the Company will not be responsible for any Liabilities or Expenses of any Indemnified Person that are determined by a judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted from such Indemnified Person's gross negligence or willful misconduct in connection with any of the advice, actions, inactions or services referred to above. The Company shall also reimburse such Indemnified Person for all Expenses as they are incurred in connection with enforcing such Indemnified Persons' rights under the Agreement (including without limitation its rights under this Schedule I). Such Indemnified Person shall reasonably cooperate with the defense of any Actions.

Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which indemnity may be sought under the Agreement, such Indemnified Person shall promptly notify the Company in writing; provided that failure to so notify the Company shall not relieve the Company from any liability which the Company or any other person may have on account of this indemnity or otherwise, except to the extent the Company shall have been materially prejudiced by such failure. The Company shall, upon receipt of notice, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Duff & Phelps or any other Indemnified Person, as applicable. Any Indemnified Person shall have the right to employ separate counsel in any Action and participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person, unless: (i) the Company has failed promptly to assume the defense and employ counsel or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Person and the

Company, and such Indemnified Person shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible hereunder for the fees and expenses of more than one separate counsel in connection with any Action in the same jurisdiction, in addition to any local counsel. The Company shall not be liable for any settlement of any Action effected without its written consent (which shall not be unreasonably withheld). In addition, the Company will not, without prior written consent of Duff & Phelps (which shall not be unreasonably withheld), settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes an unconditional release of such Indemnified Person from all liabilities arising out of such Action.

In the event that the foregoing indemnity is not available to an Indemnified Person in accordance with the Agreement pursuant to the requirements of applicable law, the Company shall contribute to the Liabilities and Expenses paid or payable by such Indemnified Person in such proportion as is appropriate to reflect (i) the relative benefits to the Company, on the one hand, and to Duff & Phelps, on the other hand, of the matters contemplated by the Agreement, or (ii) if the allocation provided by the immediately preceding clause is not permitted by the applicable law, not only such relative benefits but also the relative fault of the Company, on the one hand, and Duff & Phelps, on the other hand, in connection with the matters as to which such Liabilities or Expenses relate, as well as any other relevant equitable considerations. For purposes of this paragraph, the relative benefits to the Company, on the one hand, and to Duff & Phelps, on the other hand, of the matters contemplated by this Agreement shall be deemed to be in the same proportion as (a) the total value paid or received or contemplated to be paid or received by the Company in the transaction, whether or not any transaction is consummated, bears to (b) the fees paid or payable to Duff & Phelps under the Agreement.

No Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection with any such advice, services or transactions except for Liabilities (and related Expenses) of the Company that are determined by a judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted solely from such Indemnified Person's gross negligence or willful misconduct in connection with any such advice, actions, inactions or services.

These indemnification, contribution and other provisions of this Schedule I shall (i) remain operative and in full force and effect regardless of any termination of the Agreement or completion of the engagement by Duff & Phelps; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of any Indemnified Person; and (iii) be in addition to any other rights that any Indemnified Person may have.

Should a Chapter 11 case be commenced by the Company, and if, before the earlier of (i) the entry of an order confirming a Chapter 11 plan for the Company (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Company's Chapter 11 cases, Duff & Phelps believes that it is entitled to the payment of any amounts by the Company on account of the Company's indemnification, contribution and/or reimbursement obligations under the Engagement Letter and Schedule I, including without limitation the advancement of defense costs, Duff & Phelps will file an application therefor in the Bankruptcy Court and the Company shall not pay any such amounts to Duff & Phelps before the entry of a final order by the Bankruptcy Court approving the payment.  This paragraph is intended only to specify the period of time under which the Bankruptcy Court shall have jurisdiction over any request for fees and expenses by Duff & Phelps for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Company's obligation to indemnify Duff & Phelps.

Subject to the preceding paragraph, the Company shall indemnify Duff & Phelps, in accordance with the Agreement and this Schedule I thereto for any claim arising from, related to, or in connection with the Services, but not for any claim arising from, related to, or in connection with Duff & Phelps' performance of any services other than the Services occurring following the commencement of Chapter 11 proceedings over the Company unless such post-petition services and indemnification therefore are approved by the Bankruptcy Court.



PRIVILEGED AND CONFIDENTIAL

September 6, 2019

Granite City Food & Brewery, Ltd.
3600 American Boulevard West Suite 400
Bloomington, MN 55431
Attention: Richard H. Lynch, Chief Executive Officer

Re: Granite City Food & Brewery, Ltd.

Dear Richard:

We are pleased to enter into this addendum (the "Addendum Agreement") to the engagement letter between the Granite City Food & Brewery, Ltd. and its wholly and majority owned subsidiaries (collectively, the "Company") and Duff & Phelps Securities, LLC ("Duff & Phelps") dated August 5, 2019 (the "August Letter"), which provisions of the August Letter are incorporated herein and shall apply with respect to the additional Financial Advisory Services (herein defined) except as otherwise expressly set forth herein, and  and capitalized words and expressions that are not otherwise defined herein shall bear the meaning attributed to them in the August Letter.

1.      Engagement:  In addition to the services detailed in the August Letter, Duff & Phelps is being retained to provide the following financial advisory services (the "Financial Advisory Services") to the Company.  Upon retention, Duff & Phelps will work at the reasonable request and direction of the Company and in conjunction with other advisors retained by the Company to:

a.    Review, or prepare, a 13-week financial projection;

b.   Review and monitor the Company's 13 week and longer term liquidity, including monitoring of the Company's weekly cash flows and preparation of a weekly variance report comparing the Company's actual to budgeted results;

c.   Work with the Company and its senior management to identify and implement short-term and long-term liquidity generating initiatives (including but not limited to increasing revenue, controlling costs, and maximizing cash flow);

d.   Work with the Company and its senior management to oversee the operations of the Company through execution of any selected course of action; Advise and assist the Company's management in its preparation of financial information that may be required by the Bankruptcy Court and/or the Company's creditors and other stakeholders, and in coordinating communications with the parties in interest and their respective advisors;

Duff & Phelps Securities, LLC          T +1 310 689 0070          www.duffandphelps.com          Member: FINRA/SIPC
11150 Santa Monica Boulevard     F +1 310 689 0361
Floor 6
Los Angeles, CA 90025

e.  Advise on and challenge management's assumptions and amounts to be included in the Company's business plans, cash flow forecasts and financial projections.  Such business plans, cash flow forecasts and financial projections, including strategic content, specific action plans and related assumptions will be the responsibility of and be prepared by the management of the Company;

f.  Advise and assist the Company's management and Counsel in preparing for, meeting with and presenting information to parties-in-interest and their respective advisors;

g.  Advise and assist management in its development of the Company's hypothetical liquidation analysis for purposes of its plan of reorganization, by advising on and challenging management's assumptions and amounts to be included in the Company's hypothetical liquidation analysis.  Such hypothetical liquidation analysis including all assumptions, will be the responsibility of and be prepared by management of the Company; and

h.  Such other services as may be requested from time to time by the Company or its counsel.

2.    Term of Agreement:  This Addendum Agreement solely with respect to the Financial Advisory Services herein  shall commence as of the effective date of this Addendum Agreement and shall continue until either the Company or Duff & Phelps gives written notice of termination to the other party.  Upon any termination, the provisions of this Paragraph 2 and Paragraph 3 shall survive the termination of this Agreement to the extent such provisions relate to the payment of fees and expenses due or accrued on or before the effective date of termination.  The provisions of Paragraphs 4 through 16 and Schedule I of the August Letter incorporated herein shall also survive the termination of this Agreement and shall remain in effect.  The Company's board of directors shall be deemed to have determined the services rendered under this Agreement to have been satisfactorily performed unless written, good faith notice of the contrary is delivered by the Company to Duff & Phelps by no later than the effective date of termination.

3.    Fees and Expenses:  The Company agrees that it shall be solely responsible for, and shall pay, the compensation and other amounts that are payable to Duff & Phelps hereunder and for certain other obligations specified herein (including without limitation the indemnification and other obligations in Schedule I).  As consideration for the services rendered and to be rendered by Duff & Phelps, the Company agrees to pay Duff & Phelps the following non-refundable amounts with respect to the Financial Advisory Services herein:

(a)    As consideration for the Financial Advisory Services to be rendered by Duff & Phelps under this Agreement, our fees will be based on the actual hours charged at the following hourly rates:

| | |
|---|---|
| Managing Directors | $750 |
| Directors | 677 |
| Vice Presidents | 538 |
| Associates | 325 |
| Analysts | 285 |
| Admin | 114 |

(b)    <u>Expense Reimbursement</u>:  The Company shall reimburse Duff & Phelps for its reasonable and documented out-of-pocket expenses incurred in connection with the services  (e.g., travel, meals, lodging, etc.) to be provided under this Agreement and the preparation of this Agreement on the first day of each month.  Out-of-pocket expenses shall include, but not be limited to, all reasonable travel expenses, pre-approved computer and research charges, reasonable attorney fees, messenger services and long-distance telephone calls incurred by Duff & Phelps in connection with the services to be provided.

4.    Except as set forth in this Addendum Amendment, the August Letter is unaffected and shall continue in full force and effect in accordance with its terms. If there is conflict between this Addendum Agreement and the August Letter, the terms of this Addendum Amendment will prevail with respect to the Financial Advisory Services (and the August Letter shall continue to govern the original services set forth under August Letter).

**[Remainder of page intentionally left blank.  Signature page follows.]**

We trust the foregoing terms and provisions are agreeable to you, and request that you sign and return the enclosed copy of this Agreement to us at your earliest convenience.

Very truly yours,

**DUFF & PHELPS SECURITIES, LLC**

By: _____

Name: BRIAN CULLEN

Title: M.D.

Agreed and Accepted:

GRANITE CITY FOOD & BREWERY, LTD.

By: _____

Name: Richard Lynch

Title: CEO

# EXHIBIT 2

:32:44 PM
Master Download
Company: 74

| Status | Hold | Vendor ID | D&P Client | Status | Vendor Name | Address1 | Address2 | City | State | Zip | DBA |
|--------|------|-----------|------------|--------|-------------|----------|----------|------|-------|-----|-----|
| Active | | 16749 | Yes | Active | COX COMMUNICATIONS INC | PO BOX 2742 | | OMAHA | NE | 68103-27 | COX BUSINESS |
| Active | | 16348 | Yes | Inactive | ACE CASH EXPRESS INC | 1231 GREENWAY DRIVE  STE 600 | | IRVING | TX | 75038 | |
| Active | | 12086 | Yes | Active | ADVANCED DISPOSAL | PO BOX 74008053 | | CHICAGO | IL | 60674-80 | |
| Active | | 11714 | Yes | Active | AIRGAS INC | PO BOX 734445 | | CHICAGO | IL | 60673-44 | AIRGAS USA |
| Active | | 14443 | Yes | Active | AIRGAS INC | PO BOX 734445 | | CHICAGO | IL | 60673-44 | AIRGAS USA |
| Active | | 11768 | Yes | Active | ALLY | PO BOX 78234 | | PHOENIX | AZ | 85062-82 | |
| Active | | 07674 | Yes | Inactive | AMEREN ILLINOIS | PO BOX 88034 | | CHICAGO | IL | 60680-10 | |
| Active | | 16224 | Yes | Active | AMERICAN CANCER SOCIETY | 20450 CIVIC CENTER DRIVE | | SOUTHFIELD | MI | 48016 | |
| Active | | 12783 | Yes | Active | AMERICAN CANCER SOCIETY  IN | 5635 W 96TH ST | SUITE 100 | INDIANAPOLIS | IN | 46278 | |
| Active | | 12630 | Yes | Active | AMERICAN CANCER SOCIETY CANCER ACTION NETWORK INC | 555 11TH ST STE 300 | | WASHINGTON | DC | 20004 | |
| Active | | 17020 | Yes | Active | AMERICAN CANCER SOCIETY INC | 740 COMMERCE DRIVE  STE B | | PERRYSBURG | OH | 43551 | |
| Active | | 18173 | Yes | Active | AMERICAN CANCER SOCIETY INC | 250 WILLIAMS ST STE 4B | | ATLANTA | GA | 30303 | |
| Active | | 10602 | Yes | Active | AMERICAN CANCER SOCIETY INC | 4234 N KNOXVILLE AVE | | PEONA | IL | 61614 | |
| Active | | 13135 | Yes | Active | AMERICAN CANCER SOCIETY INC | 250 WILLIAMS ST | NW SUITE 400 | ATLANTA | GA | 30303-10 | |
| Active | | 14079 | Yes | Active | AMERICAN CANCER SOCIETY INC | 9541 LONGWELL DR | | INDAINAPOLIS | IN | 46240 | |
| Active | | 16767 | Yes | Active | AMERICAN CANCER SOCIETY INC | 1801 MEYERS ROAD  STE 100 | | OAKBROOK TERR | IL | 60181 | |
| Active | | 15009 | Yes | Active | AMERICAN CANCER SOCIETY PINK | HEAT | 7500 GREENWAY CTR DR STE 300 | GREENBELT | MO | 20770 | |
| Active | | 07919 | Yes | Former | AMERICAN COMPRESSED GASES INC | PO BOX 715 | | WESTWOOD | NJ | 07675-07 | |
| Active | | 13636 | Yes | Former | AMERICAN DIABETES ASSOC  LG | 1701 N BEAUREGARD ST | | ALEXANDRIA | VA | 22311 | |
| Active | | 12694 | Yes | Former | AMERICAN DIABETES ASSOCIATION | INDIANA | 8604 ALLISONVILLE RD STE 140 | INDIANAPOLIS | IN | 46250 | |
| Active | | 14303 | Yes | Former | AMERICAN DIABETES ASSOCIATION | 317 7TH AVE STE 202B | | CEDAR RAPIDS | IA | 52402 | |
| Active | | 15397 | Yes | Active | AMERICAN RED CROSS | ST LOUIS AREA CHAPTER | 10195 CORPORATE SQUARE DRIVE | ST LOUIS | MO | 63132 | |
| Active | | 10102 | Yes | Active | APPLE INC | PO BOX 846095 | | DALLAS | TX | 75284-60 | |
| Active | | 13769 | Yes | Former | ARROWEYE SOLUTIONS INC | 549 W RANDOLPH ST | SUITE 200 | CHICAGO | IL | 60661 | |
| Active | | 07523 | Yes | Active | AT&T | PO BOX 105068 | | ATLANTA | GA | 30348-50 | |
| Active | | 07610 | Yes | Active | AT&T | PO BOX 5080 | | CAROL STREAM | IL | 60197-50 | |
| Active | | 11133 | Yes | Active | AT&T | PO BOX 105262 | | ATLANTA | GA | 30348-52 | |
| Active | | 13626 | Yes | Active | AT&T | PO BOX 5014 | | CAROL STREAM | IL | 60197-50 | |
| Active | | 07704 | Yes | Inactive | AT&T MOBILITY  CORP (3057) | PO BOX 6463 | | CAROL STREAM | IL | 60197-64 | |
| Active | | 04246 | Yes | Active | ATMOS ENERGY | PO BOX 790311 | | ST. LOUIS | MO | 63179-03 | |
| Active | | 15339 | Yes | Active | AWC INC | 2719 ROSEHALL LANE | | AURORA | IL | 60503 | |
| Active | | 16451 | Yes | Active | BAKER ELECTRIC INC | 111 JACKSON AVE | | DES MOINES | IA | 50315 | |
| Active | | 16119 | Yes | Former | BEAUMONT HEALTH | 2000 TOWN CENTER  STE 1200 | | SOUTHFIELD | MI | 48075 | |
| Active | | 01006 | Yes | Active | BLUE CROSS BLUE SHIELD | PO BOX 64676 | | ST. PAUL | MN | 55164-06 | |
| Active | | 15020 | Yes | Active | BREAKTHRU BEVERAGE ILLINOIS | LLC | | X | X | X | |
| Active | | 11558 | Yes | Active | BREAKTHRU BEVERAGE MD | X | | X | X | X | |
| Active | | 15022 | Yes | Active | BREAKTHRU BEVERAGE MINNESOTA | WINE & SPIRITS LLC | | X | X | X | |
| Active | | 15023 | Yes | Active | BREAKTHRU BEVERAGE MINNESOTA | BEER LLC | | X | X | X | |
| Active | | 15021 | Yes | Active | BREAKTHRU BEVERAGE WISCONSIN | METRO MILWAUKEE LLC | PO BOX 78465 | MILWAUKEE | WI | 53278 | |
| Active | | 12310 | Yes | Active | BRINKS INCORPORATED | 7373 SOLUTIONS CENTER | | CHICAGO | IL | 60677-70 | |
| Active | | 16356 | Yes | Former | CABLE ONE INC | PO BOX 78000 | | PHOENIX | AZ | 85062-80 | |

Copyright InfoSync Services and RightViewWeb.com

| Active | 15692 | Yes | Active | CARGILL INCORPORATED | 15407 MCGINTY RD W | | WAYZATA | MN | 55391 | |
| Active | 12996 | Yes | Active | CBRE INC | 2415 E CAMELBACK ROAD | | PHOENIX | AZ | 85016 | |
| Active | 14094 | Yes | Inactive | CBS BROADCASTING INC | 22985 NETWORK PLACE | | CHICAGO | IL | 60673 | KDKA TV |
| Active | 13619 | Yes | Former | CBS OUTDOOR LLC | PO BOX 33074 | | NEWARK | NJ | 07188 | |
| Active | 18236 | Yes | Active | CDW LLC | 200 N MILWAUKEE AVE | | VERNON HILLS | IL | 60061 | CDW DIRECT |
| Active | 03420 | Yes | Former | CENTERPOINT ENERGY | PO BOX 4671 | | HOUSTON | TX | 77210-46 | |
| Active | 03377 | Yes | Active | CENTURYLINK | PO BOX 52187 | | PHOENIX | AZ | 85072-21 | |
| Active | 03379 | Yes | Active | CENTURYLINK | PO BOX 29558 | | PHOENIX | AZ | 85062-29 | |
| Active | 09556 | Yes | Active | CENTURYLINK | PO BOX 2961 | | PHOENIX | AZ | 85062-29 | |
| Active | 09569 | Yes | Active | CENTURYLINK | PO BOX 4300 | | CAROL STREAM | IL | 60197-43 | |
| Active | 16770 | Yes | Active | CHARTER COMMUINICATIONS HOLDIN | PO BOX 3019 | | MILWAUKEE | WI | 53201-30 | |
| Active | 16533 | Yes | Active | CHARTER COMMUNICATIONS HOLDIN | PO BOX 790086 | | SAINT LOUIS | MO | 63179-00 | |
| Active | 17249 | Yes | Active | CITRIX SYSTEMS INC | 851 WEST CYPRESS CREEK RD | | FORT LAUDERDAL | FL | 33309 | |
| Active | 17671 | Yes | Inactive | CITY OF CARMEL | ONE CIVIC SQUARE | | CARMEL | IN | 46032 | CARMEL CLAY PARKS AND R |
| Active | 17653 | Yes | Inactive | CITY OF DAVENPORT | 226 W 4TH ST | | DAVENPORT | IA | 52801 | |
| Active | 01061 | Yes | Inactive | CITY OF DAVENPORT | PO BOX 8003 | | DAVENPORT | IA | 52808-13 | |
| Active | 11849 | Yes | Active | CITY OF FRANKLIN | PO BOX 705 | 109 3RD AVE S | FRANKLIN | TN | 37065 | |
| Active | 15723 | Yes | Former | CITY OF INDIANAPOLIS | 2260 CITY COUNTY BUILDING | 200 E WASHINGTON STREET | INDIANAPOLIS | IN | 46204 | |
| Active | 16905 | Yes | Active | CITY OF MADISON | 210 MARTIN LUTHER KING JR BLVD | | MADISON | WI | 53703 | |
| Active | MT283 | Yes | Former | CITY OF PARKERSBURG | PO BOX 1627 | | PARKERSBURG | WV | 00002-61 | |
| Active | MT029 | Yes | Former | CITY OF PHILADELPHIA | PO BOX 8040 | | PHILADELPHIA | PA | 19105-80 | |
| Active | MT210 | Yes | Active | CITY OF SAINT MARY'S | DEPARTMENT OF TAXATION | 106 E SPRING STREET | SAINT MARY'S | OH | 45885-0 | |
| Active | MT292 | Yes | Former | CITY OF SPRINGFIELD | PO BOX 5200 | | SPRINGFIELD | OH | 45501-52 | |
| Active | 03894 | Yes | Active | CITY OF WICHITA | 455 N MAIN ST | | WICHITA | KS | 67202 | |
| Active | MT116 | Yes | Inactive | CITY OF WILMINGTON | LOUIS L. REDDING CITY/COUNTY | 800 FRENCH STREET, 6TH FLOOR | WILMINGTON | DE | 19801-35 | |
| Active | 12940 | Yes | Active | CLEAR CHANNEL OUTDOOR INC | PO BOX 591790 | | SAN ANTONIO | TX | 78258 | |
| Active | 12131 | Yes | Active | COCACOLA  NATIONAL | PO BOX 102703 | | ATLANTA | GA | 30368 | |
| Active | 12327 | Yes | Active | COCACOLA BOTTLING CO | PO BOX 602937 | | CHARLOTTE | NC | 28250 | |
| Active | 12178 | Yes | Active | COCACOLA REFRESHMENTS  IN | PO BOX 602937 | | CHARLOTTE | NC | 28260 | |
| Active | 21432 | Yes | Active | COMCAST | PO BOX 37601 | | PHILADELPHIA | PA | 19101-06 | |
| Active | 04756 | Yes | Active | COMCAST  CORPORATE | PO BOX 3001 | | SOUTHEASTERN | PA | 19398-30 | |
| Active | 13610 | Yes | Active | COMCAST  MAPLE GROVE | PO BOX 34744 | | SEATTLE | WA | 98124-17 | |
| Active | 04007 | Yes | Active | COMCAST CABLE | PO BOX 7500 | | SOUTHEASTERN | PA | 19398-75 | |
| Active | 17043 | Yes | Active | COMCAST CORPORATION | PO BOX 17211 | | CHARLOTTE | NC | 28272 | |
| Active | 13940 | Yes | Active | COMCAST HOLDINGS CORPORATION | PO BOX 35170 | | SEATTLE | WA | 98124-51 | |
| Active | 09291 | Yes | Former | COMDATA INC | PO BOX 500544 | | ST LOUIS | MO | 63150-05 | |
| Active | 07393 | Yes | Inactive | COMED | PO BOX 6111 | | CAROL STREAM | IL | 60197-61 | |
| Active | 16091 | Yes | Active | COMMUNITY HEALTH NETWORK | FOUNDATION INC | 7240 SHADELAND STATION STE 125 | INDIANAPOLIS | IN | 46256 | |
| Active | 09761 | Yes | Inactive | CONSOLIDATED HIGH SCHOOL DIST | 13300 S LAGRANGE ROAD | | ORLAND PARK | IL | 60462 | CARL SANDBURG HIGH SC |
| Active | 15959 | Yes | Inactive | CONSTELLATION NEWENERGY GAS D | 15246 COLLECTIONS CENTER DRIVE | C/O BANK OF AMERICA LOCKBOX SV | CHICAGO | IL | 60693-01 | |
| Active | 13678 | Yes | Inactive | CONSTELLATION NEWENERGY INC | PO BOX 4640 | | CAROL STREAM | IL | 60197-46 | |
| Active | 03814 | Yes | Active | COX COMMUNICATIONS | PO BOX 248871 | | OKLAHOMA CITY | OK | 73124-88 | |
| Active | G1177 | Yes | Inactive | CREDIT ACCEPTANCE CORPORATION | 30665 NORTHWESTERN HWY #202 | | FARMINGTON HILL | MI | 48334 | |
| Active | 03303 | Yes | Inactive | DARLING INGREDIENTS INC | PO BOX 552210 | | DETROIT | MI | 48255-22 | |
| Active | 16234 | Yes | Inactive | DARLING INGREDIENTS INC | PO BOX 552210 | | DETROIT | MI | 48255 | DAR PRO |

Copyright InfoSync Services and RightViewWeb.com

| Active | 15948 | Yes | Inactive | DETROIT AREA AGENCY ON AGING | 1333 BREWERY PK BLVD  STE 200 | | DETROIT | MI | 48207 | |
| Active | 01342 | Yes | Former | DIRECTV | PO BOX 105249 | | ATLANTA | GA | 30348-52 | |
| Active | 15677 | Yes | Former | DIRECTV LLC | PO BOX 5006 | | CAROL STREAM | IL | 60197-500 | |
| Active | 20007 | Yes | Inactive | DISCOVERY BENEFITS INC | PO BOX 9528 | | FARGO | ND | 58106-952 | |
| Active | 11519 | Yes | Active | DTE ENERGY | PO BOX 740786 | | CINCINNATI | OH | 45274-078 | |
| Active | 13942 | Yes | Active | ECOLAB INC | 26397 NETWORK PLACE | | CHICAGO | IL | 60673-12 | ECOSURE |
| Active | 03666 | Yes | Active | ECOLAB INC | PO BOX 70343 | | CHICAGO | IL | 60673-03 | |
| Active | 13873 | Yes | Inactive | EDGEWOOD COLLEGE INC | 1000 EDGEWOOD COLLEGE DR | | MADISON | WI | 53711 | |
| Active | 13533 | Yes | Former | EMR | 9100 YELLOW BRICK RD | SUITE H | ROSEDALE | MD | 21237 | |
| Active | 16890 | Yes | Active | EXELON CORPORATION | PO BOX 5473 | | CAROL STREAM | IL | 60197-54 | CONSTELLATION NEWENER |
| Active | 09021 | Yes | Former | FARMER BROTHERS COMPANY INC | PO BOX 732855 | | DALLAS | TX | 75373-28 | |
| Active | 01506 | Yes | Active | FEDERAL EXPRESS | PO BOX 94515 | | PALATINE | IL | 60094-45 | |
| Active | 10009 | Yes | Active | FEDERAL EXPRESS INC | INFOSYNC ACCOUNT | XXXXX | XXXXX | X | X | |
| Active | 10009 | Yes | Active | FEDERAL EXPRESS INC | INFOSYNC ACCOUNT | XXXXX | XXXXX | X | X | |
| Active | 14187 | Yes | Active | FEDEX | PO BOX 371461 | | PITTSBURGH | PA | 15250-740 | |
| Active | 16442 | Yes | Active | FIDELITY NATIONAL TITLE | INSURANCE COMPANY INC | ONE EAST WASHINGTON ST STE 450 | PHOENIX | AZ | 85004 | |
| Active | 11307 | Yes | Former | FIFTH THIRD BANK | X | | X | X | X | |
| Active | 03721 | Yes | Active | FISHER SCIENTIFIC | 13551 COLLECIONS CTR DR | ACCT 952446-001 | CHICAGO | IL | 60693 | |
| Active | 11123 | Yes | Active | FLORIDA POWER AND LIGHT | GENERAL MAIL FACILITY | | MIAMI | FL | 33188-00 | |
| Active | 11750 | Yes | Former | FOULSTON SIEFKIN LLP | 1551 N WATERFRONT PARKWAY | SUITE 100 | WICHITA | KS | 67206-446 | |
| Active | 10032 | Yes | Active | FRONTIER | PO BOX 740407 | | CINCINNATI | OH | 45274-040 | |
| Active | 14115 | Yes | Active | GRAINGER INC | DEPT 875813388 | | PALATINE | IL | 60038-00 | |
| Active | 16968 | Yes | Inactive | GREAT LAKES WATER AUTHORITY | PO BOX 441370 | ATTN TREASURY | DETROIT | MI | 48224-13 | |
| Active | 13370 | Yes | Inactive | HABITAT FOR HUMANITY | OF OAKLAND CNTY | 150 OSMUN STREET | PONTIAC | MI | 48342 | |
| Active | 15392 | Yes | Inactive | HABITAT FOR HUMANITY | 8380 COLESVILLE ROAD | SUITE 700 | SILVER SPRING | MD | 20910 | |
| Active | 15938 | Yes | Inactive | HABITAT FOR HUMANITY | 144 N ANTELOPE VALLEY PKWY | | LINCOLN | NE | 68503-360 | |
| Active | 02114 | Yes | Inactive | HARLEYSVILLE INSURANCE CO | FLOOD INSURANCE PROCESSING CTR | PO BOX 731178 | DALLAS | TX | 75373-11 | |
| Active | 11652 | Yes | Active | HDR INC | 8404 INDIAN HILLS DRIVE | | OMAHA | NE | 68114 | |
| Active | 18302 | Yes | Former | HEARTLAND INC | 8137 SANTA FE DR | | OVERLAND PARK | KS | 66204 | L ARCHE HEARTLAND |
| Active | 10339 | Yes | Active | HOTSCHEDULESCOM INC | PO BOX 848472 | | DALLAS | TX | 75284 | |
| Active | 18327 | Yes | Active | HY VEE INC | 2200 W KIMBERLY RD | | DAVENPORT | IA | 52806 | |
| Active | 11140 | Yes | Active | INCOMM | PO BOX 935359 | | ATLANTA | GA | 31193 | |
| Active | 15934 | Yes | Active | INDIANA UNIVERSITY | 400 E 7TH STREET | POPLARS RM 501 | BLOOMINGTON | IN | 47405 | |
| Active | 10635 | Yes | Active | INFOR | NW 7418 | PO BOX 1450 | MINNEAPOLIS | MN | 55485-74 | |
| Active | G1239 | Yes | Active | INTERNAL REVENUE SERVICE | PO BOX 802501 | | CINCINNATI | OH | 45280 | |
| Active | 16016 | Yes | Active | INTERNAL REVENUE SERVICE | X | | CINCINNATI | OH | 45999-00 | |
| Active | G1051 | Yes | Active | INTERNAL REVENUE SERVICE | LEVY PROCESSING | | CINCINNATI | OH | 45999-00 | |
| Active | 12384 | Yes | Active | JJ KELLER AND ASSOCIATES INC | PO BOX 6609 | | CAROL STREAM | IL | 60197-660 | |
| Active | 11857 | Yes | Active | KATTEN MUCHIN ROSENMAN LLP | 525 W MONROE ST | | CHICAGO | IL | 60661-369 | |
| Active | 16399 | Yes | Former | KIRKWOOD COMMUNITY COLLEGE | FOUNDATION | 6301 KIRKWOOD BLVD SW | CEDAR RAPIDS | IA | 52404 | |
| Active | 15812 | Yes | Inactive | KIWANIS INTERNATIONAL INC | 5929 S 78TH ST | | LINCOLN | NE | 68516 | SOUTHEAST KIWANIS OF LIN |
| Active | 15962 | Yes | Inactive | KIWANIS INTERNATIONAL INC | PO BOX 133 | | ANGOLA | IN | 46703 | THE KIWANIS CLB OF LAKE A |
| Active | 15626 | Yes | Active | KONICA MINOLTA BUSINESS SOLUTIO | 21146 NETWORK PLACE | | CHICAGO | IL | 60673-12 | |
| Active | 16928 | Yes | Active | KONICA MINOLTA BUSINESS SOLUTIO | DEPT CH 19188 | | PALATINE | IL | 60055-91 | |
| Active | 14603 | Yes | Active | KUTAK ROCK LLP | 1650 FARNAM STREET | | OMAHA | NE | 68102 | |

Copyright InfoSync Services and RightViewWeb.com

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Active | 15092 | Yes | Former | L AND W SUPPLY CORP | 2800 FOSTER AVE | | NASHVILLE | TN | 37210 | ALL INTERIOR SUPPLY |
| Active | 08248 | Yes | Inactive | LACLEDE GAS CO | DRAWER 2 | | ST. LOUIS | MO | 63171 | |
| Active | 13096 | Yes | Former | LEUKEMIA& LYMPHOMA SOCIETY | 333 EAST CARSON ST SUITE 441 | | PITTSBURGH | PA | 15219 | |
| Active | 16953 | Yes | Former | LINCOLN INTERNATIONAL LP | 500 WEST MADISON STREET | SUITE 1900 | CHICAGO | IL | 60661 | LINCOLN PARTNERS ADVISO |
| Active | 16381 | Yes | Active | LITTLER MENDELSON PC | 2301 MCGEE ST, 8TH FLOOR | ATTN  TREASURY | KANSAS CITY | MO | 94145-64 | |
| Active | 16462 | Yes | Active | LOCKTON COMPANIES LLC | PO BOX 802707 | | KANSAS CITY | KS | 64180-270 | |
| Active | 17725 | Yes | Former | LOVES TRAVEL STOPS AND COUNTRY | 10601 NORTH PENNSYLVANIA | | OKLAHOMA CITY | OK | 73120 | |
| Active | 04972 | Yes | Inactive | MADISON GAS AND ELECTRIC | PO BOX 1231 | | MADISON | WI | 53701-123 | |
| Active | 14428 | Yes | Former | MARCO INC | PO BOX 660831 | | DALLAS | TX | 75266 | |
| Active | 14009 | Yes | Active | MCGLADREY LLP | 5155 PAYSPHERE CIRCLE | | CHICAGO | IL | 60674 | |
| Active | 16948 | Yes | Former | MELTZER PURTILL AND STELLE LLC | 1515 E WOODFIELD RD | 2ND FLR | SCHAUMBURG | IL | 60173 | |
| Active | 13878 | Yes | Active | METROPOLITAN LIFE INSURANCE CO | DEPT CH 10579 | | PALATINE | IL | 60055-05 | |
| Active | 16346 | Yes | Active | MINNESOTA STATE COLLEGES | ST CLOUD TECHNICAL & COMM COL | 30 7TH STREET EAST STE 350 | ST PAUL | MN | 55101 | |
| Active | 15822 | Yes | Active | MINNESOTA STATE COLLEGES AND | UNIVERSITIES | 30 7TH STREET EAST STE 350 | ST PAUL | MN | 55101 | |
| Active | 16858 | Yes | Former | MUSEUM OF SCIENCE AND INDUSTRY | 5700 SOUTH LAKE SHORE DRIVE | | CHICAGO | IL | 60637 | |
| Active | 13959 | Yes | Inactive | NAPERVILLE COMMUNITY UNIT | SCHOOL DISTRICT 203 | 203 W HILLSIDE RD | NAPERVILLE | IL | 60540 | |
| Active | 16771 | Yes | Inactive | NATIONAL SAFETY COUNCIL INC | 1121 SPRING LAKE DRIVE | PO BOX 558 | ITASCA | IL | 60143 | |
| Active | 03496 | Yes | Former | NCR CORP | PO BOX 198755 | | ATLANTA | GA | 30384-879 | |
| Active | 15576 | Yes | Inactive | NEBRASKA METHODIST | HOSPITAL FOUNDATION | 8511 W DODGE ROAD | OMAHA | NE | 68114 | |
| Active | 12253 | Yes | Former | NORA& TANZILLO LLP | DEPT 20 5018 PO BOX 5988 | | CAROL STREAM | IL | 60197-598 | |
| Active | 14074 | Yes | Former | NORTHVILLE TOWNSHIP | 215 W MAIN STREET | | NORTHVILLE | MI | 48167 | |
| Active | 14438 | Yes | Former | NORTHVILLE TOWNSHIP | WATER AND SEWER DEPARTMENT | PO BOX 674268 | DETROIT | MI | 48267-426 | |
| Active | 16527 | Yes | Former | NORTHVILLE TOWNSHIP | MARJORIE BANNER  TREASURER | PO BOX 674316 | DETROIT | MI | 48267-43 | |
| Active | 03525 | Yes | Former | NUCO2 INC | PO BOX 417902 | | BOSTON | MA | 02241-790 | NUCO2 |
| Active | 16710 | Yes | Former | OGLETREE DEAKINS NASH SMOAK AN | PO BOX 89 | | COLUMBIA | SC | 29202 | |
| Active | 13773 | Yes | Former | OPENTABLE INC | 29109 NETWORK PLACE | | CHICAGO | IL | 60673-129 | |
| Active | 16484 | Yes | Former | OPTIV SECURITY INC | PO BOX 28216 NETWORK PLACE | | CHICAGO | IL | 60673-128 | |
| Active | 17576 | Yes | Active | ORACLE AMERICA INC | 15612 COLLECTIONS CENTER DRIVE | | CHICAGO | IL | 60693 | |
| Active | 04327 | Yes | Inactive | ORANGE TREE EMPLOYMENT | SCREENING | PO BOX 9202 | MINNEAPOLIS | MN | 55480 | |
| Active | 17733 | Yes | Active | OSF HEALTHCARE SYSTEM | 7800 N SOMMER ST  STE 508 | | PEORIA | IL | 61615 | HEALTHCARE SAINT FRANCI |
| Active | 13999 | Yes | Active | OUTFRONT MEDIA INC | PO BOX 33074 | | NEWARK | NJ | 07188 | |
| Active | 11416 | Yes | Active | PACIFIC LIFE | PO BOX 2030 | | OMAHA | NE | 68103 | |
| Active | 13852 | Yes | Active | PACIFIC LIFE INS CO  ACH | X | | X | X | X | |
| Active | 13395 | Yes | Active | PADDOCK PUBLICATIONS INC | PO BOX 3204 | | ARLINGTON HEIGH | IL | 60006 | THE DAILY HERALD |
| Active | 14495 | Yes | Former | PEOPLES | PO BOX 644760 | | PITTSBURGH | PA | 15264-470 | |
| Active | 11096 | Yes | Inactive | PEPCO | PO BOX 13608 | | PHILADELPHIA | PA | 19101-360 | |
| Active | 10860 | Yes | Active | PEPSI COLA INC | PO BOX 75948 | | CHICAGO | IL | 60675 | |
| Active | 17018 | Yes | Former | PHYSICIANS IMMEDIATE CARE LTD | PO BOX 8798 | | CAROL STREAM | IL | 60197-879 | |
| Active | 14621 | Yes | Active | PILOT TRAVEL CENTERS LLC | PO BOX 11407 | | BIRMINGHAM | AL | 35246-13 | |
| Active | 10763 | Yes | Inactive | PLAYNETWORK INC | PO BOX 21550 | | NEW YORK | NY | 10087-159 | |
| Active | 15271 | Yes | Inactive | PLEXUS COMPANY INC | PO BOX 2925 | | FARGO | ND | 58108-292 | CULINEX |
| Active | 06775 | Yes | Former | PRAXAIR DISTRIBUTION INC | DEPT CH 10660 | | PALATINE | IL | 60055-060 | |
| Active | 01416 | Yes | Former | REPUBLIC SERVICES | PO BOX 9001154 | | LOUISVILLE | KY | 40290-119 | |
| Active | 08040 | Yes | Former | REPUBLIC SERVICES | PO BOX 9001099 | | LOUISVILLE | KY | 40290-109 | |
| Active | 12576 | Yes | Former | RESTORATION HARDWARE | FILE 50081- GROUND LEVEL | 1000 W TEMPLE ST | LOS ANGELES | CA | 90012 | |

Copyright InfoSync Services and RightViewWeb.com

| Active | 17774 | Yes | Former | RIGHT MANAGEMENT INC | 24677 NETWORK PLACE | | CHICAGO | IL | 60673 | |
| Active | 04381 | Yes | Former | ROBERT HALF INTERNATIONAL INC | PO BOX 743295 | | LOS ANGELES | CA | 90074-32 | ACCOUNTEMPS |
| Active | 14594 | Yes | Active | RUSH UNIVERSITY MEDICAL CENTER | 1653 CONGRESS PARKWAY | | CHICAGO | IL | 60612 | |
| Active | 04810 | Yes | Former | SIGMA  ALDRICH INC | PO BOX 535182 | | ATLANTA | GA | 30353-51 | |
| Active | 03286 | Yes | Active | SIMPLEX | DEPT CH 10320 | | PALATINE | IL | 60055-03 | |
| Active | 14233 | Yes | Former | SP PLUS CORPORATION | 150 POTOMAC PASSAGE | | OXON HILL | MD | 20745 | |
| Active | 15177 | Yes | Former | ST JUDE CHILDRENS RESEARCH | HOSPITAL | 501 ST JUDE PLACE | MEMPHIS | TN | 38105 | |
| Active | 01141 | Yes | Former | STAR TRIBUNE | PO BOX 790387 | | ST. LOUIS | MO | 63179-03 | |
| Active | 14348 | Yes | Inactive | STATE INDUSTRIAL PRODUCTS CORP | PO BOX 74188 | | CLEVELAND | OH | 44194-02 | NEUTRON INDUSTRIES |
| Active | 17275 | Yes | Former | STATE OF MICHIGAN | PO BOX 30401 | | LANSING | MI | 48909-79 | |
| Active | MT012 | Yes | Former | STATE OF MICHIGAN | MICHIGAN DEPT. OF TREASURY | DEPARTMENT 77003 | DETROIT | MI | 48277-3 | |
| Active | 07062 | Yes | Former | STATE OF MICHIGAN | PO BOX 30255 | | LANSING | MI | 48909 | |
| Active | 10881 | Yes | Active | STORE CAPITAL CORPORATION | 8377 EAST HARDFORD DR  STE 100 | | SCOTTSDALE | AZ | 85255 | STORE CAPITAL ACQUISTION |
| Active | 03765 | Yes | Former | SUMMIT FIRE PROTECTION | PO BOX 6205 | | CAROL STREAM | IL | 60197-620 | |
| Active | 13879 | Yes | Active | SUN LIFE FINANCIAL | PO BOX 7247-7184 | | PHILADELPHIA | PA | 19170-71 | |
| Active | 15394 | Yes | Former | THE LEUKEMIA AND LYMPHOMA SOC | 12100 W CENTER ROAD | BUILDING 1  SUITE 202 | OMAHA | NE | 68144 | |
| Active | 18313 | Yes | Former | THE LEUKEMIA AND LYMPHOMA SOCI | 3 INTERNATIONAL DR STE 200 | | RYE BROOK | NY | 10573 | |
| Active | 13010 | Yes | Former | THE LEUKEMIA& LYMPHOMA | SOCIETY WHITE PLAINS | 1311 MAMARONECK AVENUE | WHITE PLAINS | NY | 10605-52 | |
| Active | 13088 | Yes | Former | THE LEUKEMIA& LYMPHOMA | SOCIETY CR | 2700 WESTOWN PKWY STE 260 | WEST DES MOINES | IA | 50266 | |
| Active | 03289 | Yes | Inactive | TIME WARNER CABLE | PO BOX 60074 | | CITY OF INDUSTRY | CA | 91716-00 | |
| Active | 04235 | Yes | Inactive | TIME WARNER CABLE  ZR | PO BOX 1104 | | CAROL STREAM | IL | 60132-110 | |
| Active | 16846 | Yes | Inactive | TIME WARNER CABLE LLC | BOX 223085 | | PITTSBURGH | PA | 15251-200 | |
| Active | 08846 | Yes | Former | TRANE US INC | PO BOX 98167 | | CHICAGO | IL | 60693 | |
| Active | 16885 | Yes | Active | TRIBUNE PUBLISHING COMPANY LLC | 14839 COLLECTIONS CENTER DR | | CHICAGO | IL | 60693-01 | CHICAGO TRIBUNE COMPAN |
| Active | 03294 | Yes | Former | TYCO INTEGRATED SECURITY | PO BOX 371967 | | PITTSBURGH | PA | 15250-79 | |
| Active | 08613 | Yes | Inactive | UHAUL | PO BOX 52128 | | PHOENIX | AZ | 85072-21 | |
| Active | 04106 | Yes | Former | ULINE INC | PO BOX 88741 | ATTN  ACCOUNTS RECEIVABLE | CHICAGO | IL | 60680-17 | |
| Active | 10014 | Yes | Former | UNITED STATES POSTAL SERVICE | CORPORATE HILLS STATION | 9350 CORPORATE HILLS DR | WICHITA | KS | 67207-99 | |
| Active | 10018 | Yes | Former | UNITED STATES POSTAL SERVICE | INFOSYNC POC ACCOUNT#6679636 | | X | X | X | |
| Active | MT247 | Yes | Former | UPPER MORELAND TOWNSHIP | BUSINESS TAX OFFICE | 117 PARK AVENUE | WILLOW GROVE | PA | 19090-0 | |
| Active | 11648 | Yes | Active | US BANK  OEFS | PO BOX 790448 | | ST. LOUIS | MO | 63179 | |
| Active | 08066 | Yes | Former | US YELLOW PAGES | PO BOX 48098 | | JACKSONVILLE | FL | 32247-80 | |
| Active | 12808 | Yes | Former | V3 COMPANIES | 7325 JANES AVENUE | SUITE 100 | WOODRIDGE | IL | 60517 | |
| Active | 15550 | Yes | Inactive | VAN METER INC | 850 32ND AVENUE SW | | CEDAR RAPIDS | IA | 52404-39 | |
| Active | 18360 | Yes | Inactive | VANDERBILT UNIVERSITY MEDICAL CE | 1161 21ST AVE S | D-3300 MEDICAL CENTER NORTH | NASHVILLE | TN | 37232-54 | |
| Active | 16517 | Yes | Active | VERIZON | PO BOX 4830 | | TRENTON | NJ | 08650-48 | |
| Active | 01093 | Yes | Active | VERIZON WIRELESS | PO BOX 25505 | | LEHIGH VALLEY | PA | 18002-550 | |
| Active | 11085 | Yes | Active | VERIZON WIRELESS | PO BOX 660720 | | DALLAS | TX | 75266-07 | |
| Active | 11740 | Yes | Active | VERIZON WIRELESS | PO BOX 15124 | | ALBANY | NY | 12212-51 | |
| Active | 11097 | Yes | Active | WASHINGTON GAS | PO BOX 37747 | | PHILADELPHIA | PA | 19101-50 | |
| Active | 03037 | Yes | Active | WASTE MANAGEMENT | PO BOX 4648 | | CAROL STREAM | IL | 60197-46 | |
| Active | 11098 | Yes | Active | WASTE MANAGEMENT | PO BOX 13648 | | PHILADELPHIA | PA | 19101-36 | |
| Active | 13928 | Yes | Active | WEDDINGWIRE INC | 2 WISCONSIN CIR 3RD FLOOR | | CHEVY CHASE | MD | 20815 | |
| Active | 16044 | Yes | Former | WEINGARTEN REALTY INVESTORS | PO BOX 301074 | | DALLAS | TX | 75303 | |
| Active | 03550 | Yes | Active | WELLS FARGO BANK | WF 8113 | PO BOX 1450 | MINNEAPOLIS | MN | 55485-81 | |

Copyright InfoSync Services and RightViewWeb.com

| Active | | 15068 | Yes | Former | WEST SIDE MONTESSORI | 7115 BANCROFT | | TOLEDO | OH | 43615 | |
|--------|--|-------|-----|--------|----------------------|---------------|--|--------|----|-------|--|
| Active | | 14598 | Yes | Former | WILLIAMS CLEANERS INC | 2541 N 48TH STREET | | LINCOLN | NE | 68504-36: | |
| Active | | 03235 | Yes | Active | WINDSTREAM | PO BOX 9001908 | | LOUISVILLE | KY | 40290-19( | |
| Active | | 08024 | Yes | Active | WINDSTREAM | PO BOX 3243 | | MILWAUKEE | WI | 53201-32 | |
| Active | | 06942 | Yes | Former | WSI | 1600 EAST CENTURY AVENUE | SUITE 1 | BISMARCK | ND | 58506-55( | |
| Active | | 14057 | Yes | Active | WW GRAINGER INC | DEPT 874872476 | | PALATINE | IL | 60038-00( | GRAINGER |
| Active | | 14608 | Yes | Active | WW GRAINGER INC | DEPT 886242085 | | PALATINE | IL | 60038-00( | GRAINGER |
| Active | | 11255 | Yes | Active | WW GRAINGER INC | DEPT 868809880 | | PALATINE | IL | 60038-00( | |
| Active | | 14210 | Yes | Active | WW GRAINGER INC | DEPT 886000497 | | PALATINE | IL | 60038-00( | |
| Active | | 14753 | Yes | Active | WW GRAINGER INC | DEPT 886260890 | | PALATINE | IL | 60038-00( | |
| Active | | 14754 | Yes | Active | WW GRAINGER INC | DEPT 871489555 | | PALATINE | IL | 60038-00( | |
| Active | | 03000 | Yes | Active | XCEL ENERGY | PO BOX 9477 | | MINNEAPOLIS | MN | 55484-94: | |
| Active | | 18271 | Yes | Active | XO GROUP INC | 195 BROADWAY | | NEW YORK | NY | 10007 | WEDDING PAGES |
| Active | | 14214 | Yes | Former | YRC INC | PO BOX 93151 | | CHICAGO | IL | 60673-31! | YRC FREIGHT |
| Active | | 16772 | Yes | Active | ZURICH AMERICAN INSURANCE COMF | 1299 ZURICH WAY | | SCHAUMBURG | IL | 60196 | |

Copyright InfoSync Services and RightViewWeb.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

| | |
|---|---|
| In re: | Jointly Administered under 19-43756 (WJF) |
| | |
| Granite City Food & Brewery Ltd. | 19-43756 |
| Granite City Restaurant Operations, Inc. | 19-43757 |
| Granite City of Indiana, Inc. | 19-43758 |
| Granite City of Kansas Ltd. | 19-43759 |
| Granite City of Maryland, Inc. | 19-43760 |
| | |
| Debtors. | Chapter 11 Cases |

---

## ORDER

---

Upon application by the Debtors for an Order approving the retention of Duff & Phelps Securities, LLC, 11150 Santa Monica Boulevard, Floor 6, Los Angeles, California 90025, as investment bankers and financial advisors for the Debtors in the above-captioned proceeding, the Court, having reviewed the Debtors' Application and the Declaration of Brian Cullen filed therewith and the certificate of review and recommendation for employment by the office of the United States Trustee, and the files and records herein,

IT IS ORDERED:

1.     The employment of Duff & Phelps Securities, LLC as investment bankers and financial advisors to the debtors-in-possession in carrying out their duties under Title 11 of the United States Bankruptcy Code is approved upon the terms set forth in the parties' Engagement Letter and Addendum.

2.     Fee applications by Duff & Phelps Securities, LLC may be heard on thirty (30) day intervals from the commencement of the case.

**BY THE COURT:**

Dated:                                    _____
                                          William J. Fisher
                                          United States Bankruptcy Judge