# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Jointly Administered under |
| Granite City Food & Brewery Ltd. | Case No. 19-43756 |
| Granite City Restaurant Operations, Inc. | Case No. 19-43757 |
| Granite City of Indiana, Inc. | Case No. 19-43758 |
| Granite City of Kansas Ltd. | Case No. 19-43759 |
| Granite City of Maryland, Inc. | Case No. 19-43760 |
| Debtors. | Chapter 11 Cases |

**OBJECTION TO MOTION FOR AN ORDER (I) GRANTING EXPEDITED RELIEF; (II) AUTHORIZING THE DEBTORS TO PAY PRE-PETITION REIMBURSEABLE EXPENSE OBLIGATIONS; (III) AUTHROZINIG THE DEBTORS TO PAY PRE-PETITION REIMBURSEABLE OPEARTING EXPENSES; AND (IV) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AN DPROCESS CHECKS AND TRANSFER RELATED TO SUCH RELIEF**

COMES NOW the United States Trustee through the undersigned attorney and objects to the motion for an order (I) granting expedited relief; (II) authorizing the debtors to pay pre-petition reimbursable expense obligations; (III) authorizing the debtors to pay pre-petition reimbursable operating expenses; and (IV) authorizing financial institutions to honor and process checks, and transfers related to such relief.  In support of the objections, the United States Trustee states the following:

1. An expedited hearing on the motion has been scheduled Wednesday, January 8, 2020 at 2:00 p.m. before the U.S. Bankruptcy Court, Courtroom 2A, U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota.

2. The United States Trustee has standing to object under 28 U.S.C. § 586 and 11 U.S.C. § 307.

3. The United States Trustee objects to expedited relief. The filing of the bankruptcy case imposed an automatic stay on any collection action against the estate, and the debtors will not suffer any harm if the motion is heard on regular notice.

4. The authorization of the payment of pre-petition general unsecured debts with post-petition revenues violates the sections of the Bankruptcy Code which provide for the priorities of creditors (11 U.S.C. § 507), and which provide for the promulgation of a fair and equitable plan of reorganization (11 U.S.C. §§ 1122 - 1129); and violates the rule stating that disbursements to pre-petition creditors shall be made only after a proof of claim is filed and such claim is allowed. FED. R. BANKR. P. 3021.

5. The motion requests permission to pay pre-petition general unsecured creditor card claims held by American Express in the following amounts:

>a. Payments of $148,906.17 to American Express Green Cards for expenditures incurred by approximately 25 employees on the basis that the employees are liable if the debtor fails to make the payment.

>b. Payment of $727,442.49 to American Express Plum Card for debt incurred to pay operating expenses in which an insider is also jointly and severally liable.

6. The use of the "necessity of payment" doctrine or the "critical vendors" doctrine is appropriately used in circumstances where the survival of the debtor company is at stake and where preserving the on-going operations will ultimately benefit the creditors of the same priority as those claimants who are being paid. The doctrine was extended to non-railroad bankruptcy cases by bankruptcy judges, even though the use was explicitly rejected when the 1978 Bankruptcy Code was developed, the doctrine went on to meet large skepticism by circuit courts, and therefore, the doctrine is only appropriately used where the payments will benefit all

creditors by advancing the reorganization of a business. *See* Memorandum of Law. The motion does not establish that such circumstances exist in this case.

7. The doctrine is commonly used to pay pre-petition employee wages, benefits, etc. up to the priority amounts set by Section 507(a)(4). The language of Section 507(a)(4) limits the priority to "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual…." This motion does not establish that the employee expenses are "wages, salaries or commissions." The motion is seeking to pay the debtors' pre-petition credit card debts and not the direct reimbursement of employees. Paying priority pre-petition wages up front through Section 507(a)(4) does not harm other general unsecured creditors because priority claims are paid ahead of the other general unsecured claims. However, in this case, the employee expense reimbursement claims are general unsecured claims and are required to be treated the same as other general unsecured debts.

8. The necessary of payment doctrine is not applicable in this case. The estate is moving quickly to sell the business and is not seeking to reorganize the business. The bid procedure motion establishes that the debtors and their professionals spent months meeting with potential purchasers, entered approximately 60 non-disclosure agreements with interested parties, and held several "face-to-face" meetings and negotiations with several potential buyers during October and November 2019. The debtors entered an APA with the stalking horse bidder on approximately the filing date. The estate has also sought to hire Duff & Phelps Securities, LLC as investment banker (Doc. No. 95). The application sets forth that the investment banker has already been extensively involved with the debtors for several months, contacted "hundreds of potential buyers, lenders and investors, negotiated the stalking horse bid, brought in the DIP lender, helped the debtors created budget forecasting and assisted with first

day motions.    Given how far the debtors are in the selling process and how everything was in place to sell the business by the filing date, there is no harm to the bankruptcy estate if the Court denies the motion.    The only remaining event is the auction and evaluation of bids at the auction.  Between the investment banker, the debtors' other professionals, the DIP and secured lenders and their professionals, and the possible input of the unsecured creditors' committee, the debtors have many experienced and intelligent minds to oversee the auction and evaluate the bids, even if the employees or insider left.

9.    The DIP Lender (JMB Capital Partners Lending, LLC) is seeking finally a priority loan of $5,000,000 and the primarily secured lender (Citizens Bank) is owed approximately $40,000,000.  The stalking horse bid in the bid procedures motion is $7,500,000.  The Court has granted those lenders all rights in the chapter 5 avoidance actions.   Granting this motion will not benefit similarly situated unsecured creditors if the Court authorizes these payments.  The irreparable harm cited by the debtors relates to the harm suffered by the employees, not the estate.  For the American Express Plum debt, the insider employee should be motivated to maximize the selling price.  While it is unfortunate to the employees, bankruptcies are unfortunate for a lot of unpaid victims.   Other unsecured creditors also face hardships on account of the failure of the debtors to pay debts.    The purpose of the doctrine of necessity is to enhance the spirit of the bankruptcy code and its intent of reorganization of a business.  Congress has carved out a priority for employees for wages and commissions at Section 507(a)(4) and Congress has also dealt with the repayment of co-debtor claims at Sections 502(e)(1) and 509. If the Court were to approve the motion, particularly in a situation like this case where there is no reorganization, the Court would effectively create new precedent that allows insiders and

employees who are co-debtors to enjoy super-priority treatment that does not exist under the Bankruptcy Code.

9. The United States Trustee does not object to the reimbursement of the expenses incurred on or after the filing date of December 16, 2019. The motion does not itemize which expenses were incurred on or after December 16, 2019.

WHEREFORE, the United States Trustee requests that the Court deny the motion and grant such other relief as appropriate.

Dated: January 8, 2020

JAMES L. SNYDER
Acting United States Trustee
Region 12

/s/ Sarah J. Wencil
Sarah J. Wencil
Trial Attorney Iowa Atty. No. 14014
Office of U.S. Trustee
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
TELE: (612) 334-1350

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Jointly Administered under |
| Granite City Food & Brewery Ltd. | Case No. 19-43756 |
| Granite City Restaurant Operations, Inc. | Case No. 19-43757 |
| Granite City of Indiana, Inc. | Case No. 19-43758 |
| Granite City of Kansas Ltd. | Case No. 19-43759 |
| Granite City of Maryland, Inc. | Case No. 19-43760 |
| Debtors. | Chapter 11 Cases |

## MEMORANDUM OF LAW

The United States Trustee submits this memorandum in opposition to the motion for an order (I) granting expedited relief; (II) authorizing the debtors to pay pre-petition reimbursable expense obligations; (III) authorizing the debtors to pay pre-petition reimbursable operating expenses; and (IV) authorizing financial institutions to honor and process checks, and transfers related to such relief.

The United States Trustee objects to the motion because it permits the debtors to pay pre-petition credit card claims over other general unsecured creditors in violation of the sections of the Bankruptcy Code which provide for the priorities of creditors (11 U.S.C. § 507), and which provide for the promulgation of a fair and equitable plan of reorganization (11 U.S.C. §§ 1122 - 1129); and violates the rule stating that disbursements to pre-petition creditors shall be made only after a proof of claim is filed and such claim is allowed. FED. R. BANKR. P. 3021.

The critical vendors doctrine stems from two common law doctrines recognized by the Supreme Court to provide for post-petition (post-receivership) payments to pre-petition (pre-receivership) claimants; however, the original doctrines were limited to railroad reorganizations: (1) the "necessity of payment" rule, which applies to the payment of pre-petition claims for

materials and supplies, where failure to make the payments will threaten the rehabilitation of the debtor, Miltenberger v. Logansport Ry. Co., 106 U.S. 286, 1 S. Ct. 140, 27 L. Ed. 117 (1882); and (2) the "six months rule," which permits claims for services and goods supplied to a railroad six months before filing bankruptcy to be paid as administrative expense priority claims from a debt fund, Fosdick v. Schell, 99 U.S. 235, 25 L. Ed. 339 (1878). Of the two doctrines, only the "six month" rule was codified in the 1978 Bankruptcy Code, 11 U.S.C. § 1171(b), and this rule is limited to railroad cases by 11 U.S.C. § 103(g). In Miltenberger, the Supreme Court summarized the justification for the doctrines by opining that the "public interest" in maintaining railroad operations was so great as to justify emergency payments of pre-petition claims out of post-petition operating revenues. Miltenberger, 106 U.S. at 311-12.

Despite the limitation of these doctrines to railroad reorganizations, the "necessity of payment" rule, was applied outside of the context of a railroad case by the Second Circuit in Dudley v. Mealey, 147 F.2d 268 (2d Cir.), cert. denied, 325 U.S. 873, 65 S. Ct. 1415, 89 L Ed. 1991 (1945). Dudley purported to use the "six-month rule" to justify why it was paying pre-petition creditors, but the analysis used, which relied upon the fact that the debtor's business would be threatened without making the payments to pre-petition suppliers, is the appropriate analysis under the "necessity of payment" rule. See Id. at 271. Dudley opined that the payment of pre-petition general unsecured claims was necessary in a hotel reorganization where the alternative was cessation of business. 147 F.2d at 271.

The Commission Report, which made recommendations to Congress regarding the contents of the new Bankruptcy Code, recommended that Dudley not be codified in the proposed new Bankruptcy Code. REPORT OF THE COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES, H.R. DOC. NO. 137, 93d Cong., 1st Sess., pt. I, at 219-20 (1973). Therefore, in the

Bankruptcy Code, Congress did not codify Dudley or the "necessity of payment" rule, and instead, only codified the "six-month rule" but limited its application to its original common law purpose - railroad reorganizations.  *See* B & W Enters., Inc. v. Goodman Oil Co., 19 B.R. 421, 425 (Bankr. D. Idaho 1982) ("Congress deliberately limited the application of the [necessity of payment and six-months] equity rules to the area that created and utilized them [through 11 U.S.C. § 1171(b)].  Though there is some case law, primarily of lower federal courts, to the effect that the equity receivership rules are applicable in situations concerning entities other than railroads, especially if public or quasi-public entities, such cases arose under the Act of 1898 and Title 11 as it now exists effectively overrules such judicial extensions."), aff'd 713 F.2d 534 (9th Cir. 1983).

As the Court is aware, the lead bankruptcy case applying this doctrine to a non-railroad case as the "necessity of payment" doctrine is In re Ionosphere Clubs, Inc., 98 B.R. 174 (Bankr. S.D.N.Y. 1989).  Ionosphere eventually denied the payment but held that bankruptcy courts were empowered under 11 U.S.C. § 363(b)(1) to pay pre-petition claims and that authority existed under 11 U.S.C. § 105(a) to issue an order to carry out the provisions of Title 11.  98 B.R. at 175.  The court cited the "necessity of payment" rule as authority to permit payments to selected pre-petition creditors.  Id. at 175-76.  The court reasoned that even if the Ionosphere airline case was not covered by the Railway Act, the doctrine applied to the airline industry because of Judge Learned Hand's analysis in Dudley.  Id. at 176.  The court did not mention, that Dudley was specifically excluded from the 1978 Bankruptcy Act.

Following Ionosphere, the circuit courts overwhelmingly declined to extend the "necessity of payment" rule, that is authorizing such payments to pre-petition creditors, when the on-going business is threatened, beyond railroad reorganization cases.

In Official Comm. of Equity Sec. Holders v. Mabey, the Fourth Circuit held that the bankruptcy courts could not authorize selective payments to unsecured pre-petition creditors under the Bankruptcy Code prior to the allowance of those claims and prior to the confirmation of a plan.  832 F.2d 299, 302 (4th Cir. 1987), cert. denied, 485 U.S. 962, 108 S. Ct. 1228, 99 L. Ed. 2d 428 (1988).  In Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Management), the Fifth Circuit held that the Bankruptcy Code does not authorize a bankruptcy judge to use post-petition funds to pay pre-petition claims and ruled that the bankruptcy court acted beyond its 11 U.S.C. § 105(a) equitable powers by approving such a payment.  4 F.3d 1329, 1334 (5th Cir. 1993).  In Crowe & Assocs, Inc. v. Bricklayers and Masons Union Local No. 2 (In re Crowe & Assocs., Inc.), the Sixth Circuit held that a bankruptcy court did not have the authority to enjoin a union from its strike against the debtor to force the debtor to pay pre-petition claims, even though the strike might force the debtor to liquidate.  713 F.2d 211, 216 (6th Cir. 1983).  The basis for the Crowe & Assocs. decision was not based upon the "doctrine of necessity," but the Sixth Circuit commented in dicta on the authority for bankruptcy courts to use equitable powers even when failure to do so will result in irreparable harm to the reorganization process:

> We recognize that this legal result casts upon Crowe inequities. Even if Crowe desired to make the delinquent payments, the bankruptcy court may not permit it to do so.  Crowe might have to liquidate because of a strike concerning demands over which it has no control.  But Crowe has no control over many economic forces which affect the outcome of its reorganization.

Id. at 273.

In B & W Enters., Inc. v. Goodman Oil Co. (In re B & W Enters., Inc.), the Ninth Circuit stated: "The Necessity of Payment Rule was created for and has been applied only to railroad cases. Absent compelling reasons, we deem it unwise to tamper with the statutory priority scheme devised by Congress in the 1978 Act."  713 F.2d 534, 537 (9th Cir. 1983) See also Southern Ry.

Co. v. Johnson Bronze Co., 758 F.2d 137, 141 (3d Cir. 1985) ("[S]ection 105(a) does not authorize the bankruptcy court to create rights not otherwise available under applicable law.... The court may not by granting a priority which it deems equitable set aside the clear congressional mandate that no such priority shall be accorded." (quotations and citation omitted)).

As Circuit Courts rejected the "necessity of payment" rule and as debtors sought to expand the doctrine more aggressively to non-wage and benefit cases, the doctrine was re-named from "necessity of payment" to "critical vendors" to resell the doctrine to bankruptcy courts. However, again, at least one circuit court has remained skeptical about the doctrine. In In re Kmart Corp., the Seventh Circuit held:

> [Section 105(a)] does not create discretion to set aside the Code's rules about priority and distribution; the power conferred by §105(a) is one to implement rather than override....Every circuit that has considered the question has held that this statute does not authorize a bankruptcy judge to authorize full payment of any unsecured debt, unless all unsecured creditors in the class are paid in full.

359 F.3d 866, 871 (7th Cir. 2004). The Seventh Circuit acknowledged that 11 U.S.C. §363(b)(1) may support the payment of some pre-petition debts but cautioned that Section 363 must be interpreted to do "the least damage possible to priorities established by contract and by other parts of the Bankruptcy Code." *Id.* at 872. Therefore, the Seventh Circuit held that the bankruptcy court had to make the following findings: (1) Disfavored creditors will be as well off with reorganization as with liquidation; and (2) Critical vendors would have ceased deliveries if pre-petition debts were left unpaid. *Id.* at 873.

The recitation of case law history is to note that the doctrine, although extensively used by bankruptcy courts, is an exception rather than a right. Therefore, the Court should not grant

such motions to circumvent what Congress has set forth in the Bankruptcy Code without a sound justification to do so.   In this case, the payment of the pre-petition general unsecured credit card claims is not justified.   The debtors' business is being sold.    The stalking horse bid is significantly less than the secured and super-priority claims held by the DIP Lender and primary secured creditor.  Therefore, the payment of the employee pre-petition unsecured debts ahead of other general unsecured debts will not benefit similarly situated unsecured creditors or benefit a reorganization process.  The debtors' business is not one where the public interest is at stake. The motion does not involve paying for the continuation of critical supplies to the debtors.  , Approving the use of the debtors' operational income to pay the pre-petition debts of the selected employees and officers is unfair to other unsecured creditors and opens up a slippery slope of allowing employees to claim super-priority status for their general unsecured claims in every case.   If such priority should exist, Congress should grant it, not the Bankruptcy Court.

WHEREFORE, the United States Trustee requests that the Court deny the motions and grant such other relief as appropriate.

Dated:  January 8, 2020                     JAMES L. SNYDER
                                            Acting United States Trustee
                                            Region 12

                                            /s/ Sarah J.  Wencil
                                            Sarah J.  Wencil
                                            Trial Attorney Iowa Atty. No. 14014
                                            Office of U.S. Trustee
                                            1015 U.S. Courthouse
                                            300 South Fourth Street
                                            Minneapolis, MN 55415
                                            TELE: (612) 334-1350

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Jointly Administered under |
| Granite City Food & Brewery Ltd. | Case No. 19-43756 |
| Granite City Restaurant Operations, Inc. | Case No. 19-43757 |
| Granite City of Indiana, Inc. | Case No. 19-43758 |
| Granite City of Kansas Ltd. | Case No. 19-43759 |
| Granite City of Maryland, Inc. | Case No. 19-43760 |
| Debtors. | Chapter 11 Cases |

**UNSWORN CERTIFICATE OF SERVICE**

The undersigned hereby certifies under penalty of perjury that on January 8, 2020, she electronically filed the attached: Objection, thereby causing the following parties to be served by CM/ECF at the addresses set forth below:

CM/ECF:

- **Dustin P. Branch**    branchd@ballardspahr.com, carolod@ballardspahr.com;ZarnighianN@ballardspahr.com;simonjm@ballardspahr.com
- **Michael A. DiGiacomo**    digiacomom@ballardspahr.com, phxdocketingbkr@ballardpahr.com;hartt@ballardspahr.com;morganv@ballardspahr.com
- **Kenneth C. Edstrom**    kene@sapientialaw.com, paralegal@sapientialaw.com;kathyl@sapientialaw.com
- **Craig S. Ganz**    ganzc@ballardspahr.com, phxdocketingbkr@ballardpahr.com;hartt@ballardspahr.com;morganv@ballardspahr.com
- **Robert M. Hirsh**    robert.hirsh@arentfox.com, lisa.indelicato@arentfox.com;sean.boren@arentfox.com
- **Karl J. Johnson**    kjjohnson@taftlaw.com, johnsonkj@gmail.com;mkoneczny@briggs.com
- **James M. Jorissen**    jjorissen@briggs.com, vrittenbach@briggs.com;mkoneczny@briggs.com

- **Christopher T. Kalla**    kalla@hnclaw.com, olsson@hnclaw.com
- **Lorie A. Klein**    lorie.klein@fmjlaw.com, sherri.debettignies@fmjlaw.com
- **John R. McDonald**    jmcdonald@briggs.com, mjacobson@briggs.com
- **Ryan Murphy**    rmurphy@fredlaw.com, stimm@fredlaw.com;sstallings@fredlaw.com,autodockets@fredlaw.com
- **Charles E. Nelson**    nelsonc@ballardspahr.com, questd@ballardspahr.com,gopleng@ballardspahr.com
- **Jordana L. Renert**    jordana.renert@arentfox.com, lisa.indelicato@arentfox.com;sean.boren@arentfox.com
- **Michael Rosow**    mrosow@winthrop.com, jflynn@winthrop.com
- **Ian M. Rubenstrunk**    irubenstrunk@winthrop.com, tcooke@winthrop.com
- **David E. Runck**    david.runck@fmjlaw.com, sherri.debettignies@fmjlaw.com
- **Andrew R. Shedlock**    andrew.shedlock@kutakrock.com, mary.flahavan@kutakrock.com
- **Deborah C. Swenson**    debs@lommen.com, swensonlaw@yahoo.com
- **Ronald M. Tucker**    rtucker@simon.com, cmartin@simon.com;jvalentin@simon.com;bankruptcy@simon.com;antimm@simon.com

Executed: January 8, 2020                    **By: /s/ Sarah J. Wencil**
                                    **Sarah J. Wencil**
                                    **Office of the United States Trustee**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Jointly Administered under |
| Granite City Food & Brewery Ltd. | Case No. 19-43756 |
| Granite City Restaurant Operations, Inc. | Case No. 19-43757 |
| Granite City of Indiana, Inc. | Case No. 19-43758 |
| Granite City of Kansas Ltd. | Case No. 19-43759 |
| Granite City of Maryland, Inc. | Case No. 19-43760 |
| Debtors. | Chapter 11 Cases |

## ORDER

St. Paul, Minnesota.

    The motion for an order (I) granting expedited relief; (II) authorizing the debtors to pay pre-petition reimbursable expense obligations; (III) authorizing the debtors to pay pre-petition reimbursable operating expenses; and (IV) authorizing financial institutions to honor and process checks, and transfers related to such relief came before the undersigned. Appearances are noted in the record.

    Based on the pleadings, record of the case and argument of the parties,

    IT IS HEREBY ORDERED: The motion is denied.

Dated: _____

William F. Fisher
U.S. Bankruptcy Judge